**RECEIVED** CM
4/27/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**FILED** RC
4/29/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **VANESSA WEREKO**, in her individual capacity<br>Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) JUDGE ALONSO |
| **HON. LORI ROSEN**, Associate Judge in Cook County, | ) MAGISTRATE JUDGE COLE |
| | ) |
| **HON. DAVID E. HARACZ**, Associate Judge in Cook County, | ) **Case No. 1:22-cv-2177** |
| | ) |
| **HON. RAUL VEGA,** Retired Judge in Cook County, | ) **Hon**. |
| | ) |
| **HON. MARY S. TREW**, Associate Judge in Cook County | ) |
| | ) **Demand for Jury Trial** |
| **HON. GRACE G. DICKLER**, Judge in Cook County, | ) |
| | ) |
| **KATHLEEN P. LIPINSKI**, Licensed Court Reporter, | ) |
| | ) |
| **HON. JOSEPH V. SALVI**, Associate Judge in Lake County, | ) |
| | ) |
| **HON. TERRENCE J. LAVIN**, Appointed Justice in the Appellate Court of Illinois, | ) |
| | ) |
| **HON. MARY ELLEN COGHLAN**, Appointed Justice in the Appellate Court of Illinois, | ) |
| | ) |
| **HON. AURELIA MARIE PUCINSKI**, Elected Justice in the Appellate Court of Illinois, | ) |
| | ) |
| **SARAH E. INGERSOLL**, Assistant Attorney General, | ) |
| | ) |
| **THERESA A. EAGLESON,** Director of the Illinois Department of Healthcare and Family Services, | ) |
| | ) |
| **RICHARD FALEN,** Supervisor of Appeals, Illinois Department of Healthcare and Family Services, | ) |
| | ) |
| **EMILY YU**, Director of Health Information Management, NorthShore University HealthSystem, | ) |

1

**PETER HANNIGAN**, Superintendent of Hawthorn
School District #73,

**PEDRO MARTINEZ,** Superintendent of Chicago Public
Schools,

**RUSSELL CASKEY**, Assistant State Attorney,

**ROBERT CASELLI**, Officer, Vernon Hills Police Dept.

**ADAM BOYD**, Officer, Vernon Hills Police Dept.

**TANIA DIMITROVA**, Attorney,

**BRADLEY R. TROWBRIDGE,** Attorney

**SAFE TRAVELS CHICAGO, LLC,** Supervision Service

**MAXINE WEISS-KUNZ**, Attorney,

**STEWART J. AUSLANDER**, Attorney,

**KAREN A. ALTMAN**, Attorney,

**GARY SCHLESINGER**, Attorney,

**SHAWN D. BERSSON**, Attorney,

**TIFFANY MARIE HUGHES**, Attorney,

**RUSSELL M. REID**, Attorney,

**CANDACE L. MEYERS**, Attorney,

**MICHAEL P. DOMAN**, Attorney,

**STACEY E. PLATT**, Attorney,

**ELIZABETH ULLMAN**, Attorney,

**ANDREA D. RICE**, Attorney,
      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 1:22-cv-2177**

**Hon**.

**Demand for Jury Trial**

2

# VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND COMPENSATORY RELIEF

## I.    INTRODUCTORY STATEMENT / NATURE OF ACTION

1. VANESSA WEREKO ("VANESSA"), an American-born citizen and a minority woman, in her individual capacity and mother of two (2) minor children, GP and JP, ("minority children") has been subjected to and continues to be subjected to racial acts of terror, defamation pursuant to 28 U.S.C.§ 1401, a conspiracy to interfere with her civil rights pursuant to 42 U.S.C. § 1985, with constitutional deprivations by individuals, state officials including judicial officers acting under color of state law. The infringement on her protected rights ensues to insulate a Caucasian "white" man, and his abettors from prosecution and/or conviction of crimes of moral turpitude.

2. Vanessa, in her individual capacity, brings this action for Declaratory Judgment and Permanent Injunction, pursuant to 28 U.S.C. §§ 2201-2202 and, for Damages against several named defendants under 42 U.S.C. § 1983, and for Costs, under 42 U.S.C. § 1988 which allows in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction" (Emphasis Added).

3. Vanessa categorically states that several individuals, state officials including judicial officers acting in excess of their jurisdiction, engaged in a conspiracy with intentional acts of terror, under color of state law, (a) to infringe on her civil rights as protected by the First, Fifth and Fourteenth Amendments of the US Constitution; (b) to retaliate and to defraud her, by obstructing justice and covering-up (quasi-)criminal actions

across state courts, departments and private entities, to her ongoing harm and threat to her safety/well-being and that of her minority children, held hostage by Francesco Potenza ("Francesco"), a citizen of Italy, to insulate himself from prosecution and deportation from the US. Vanessa is lynched in state courts, by a licensed mob, for fabricated offenses with no due process of law on the basis of her race, gender, cultural/ethnic origins, exacerbated by the bias against her as *pro se*, in the courts.

4. According to Fed. Civ. P. Rule 9(b) for Pleading Special Matters:

> **9(b) FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally**.

5. Since several of the named defendants are powerful people with significant clout in judicial circles, including in the federal district court and court of appeals, the allegations including fraud or mistake are provided with supportive facts, as required by Fed. Civ. P. Rule 9(b) accordingly.

6. On March 1, 2021, with an ongoing conspiracy to interfere with her civil rights involving several powerful defendants, Vanessa filed a federal civil complaint and named a primary protagonist in the state case, Associate Judge DAVID E. HARACZ ("HARACZ") whose social ties extend not just to the state courts but to the federal court, where two (2) federal district judges, Hon. Mary M. Roland and Hon. Robert W. Gettleman recused themselves before Hon. Sharon Johnson Coleman ("COLEMAN") was assigned. Vanessa filed her federal complaint with credible evidence of several persons intent to preserve the void/invalid "plenary" orders of protection, which lack a termination date and lack a finding of abuse of the minor children by Vanessa, in violation of statute. The state appellate court's remand for a

new "custody hearing" in a post-judgment case with a divorce decree that incorporates a foreign judgment and an agreed Allocation Judgment, was pretext for more harassment and intimidation of Vanessa, more defacement of the divorce decree, more fiscal extortion of Vanessa and more insulation of named defendants seeking cover after causing the deprivations and insulating Francesco as well from criminal convictions. The traumatized and isolated minority children are used as leverage.

7. Vanessa filed her civil federal complaint, in *forma pauperis*, as suffering from harm caused by relentless attacks and obstructions including threats of incarceration, surveillances at her domiciles, repeat defamation through public state courts' filings that criminalized her and impacted her ability to gain employment commensurate with her skills, training and experience. As a cover-up, fraudulent state orders fabricated and inflated her income, contravening Internal Revenue Services ("IRS") or the plethora of financial institutions subpoenaed, with the intent to defraud her and propagate other attacks and deprivations for Vanessa's abject ruin.

8. On March 10, 2021, COLEMAN *sua sponte* dismissed, without notice, Vanessa's federal complaint and served as a proponent for HARACZ, yet to file an appearance though served, stating *inter alia* that HARACZ acted on "false information", was immune from damages as a judicial officer, overlooking Vanessa's claim was for prospective relief, and pursuant to 42 U.S.C. § 1988 a judicial officer who acts "in excess of their jurisdiction" is not immune from "costs, including attorney's fees". Vanessa was not afforded due process on her first federal complaint and the *sua sponte* dismissal is alleged as due to unpaid filing fee, when her application to proceed in *forma pauperis* was pending adjudication and rendered moot in the dismissal order.

The other alleged reason was lack of subject matter jurisdiction for "ongoing custody proceedings", when custody was already determined in a post-judgment dissolution case which the state court maliciously misrepresented as "ongoing" as pretext to obstructive actions, in lieu of enforcing the *status quo ante* on custody that its invalid and now expired "plenary" orders of protection undermined. The "ongoing" claim defeated the due course of justice for Vanessa in federal court for prospective relief.

9. The state court is not inclined to agree with this court that its judicial officers acted on "false information"; to admit that truth implicates a white man and co-inventors of the fabrications whom they prefer to insulate from prosecution than give Vanessa any actual relief. Racial equality, it would seem, has a long way to go yet in state courts.

10. This Complaint informs what happens to private American citizens, like Vanessa, with good social standing, reputation and educational/professional backgrounds, harmed by relentless and vicious acts of terror on the basis of race, gender and/or cultural/ethnic origins. The goal of the attacks and conspiracies to interfere with their civil rights, is to present them or reduce them, by force, intimidation, or threat, to the contrived and negative societal stereotypes attributed to and oft used to justify (more) abuses of those who share the same race, gender, or cultural/ethnic origins like them.

## II.    JURISDICTION AND VENUE

11. This Court has jurisdiction over Vanessa's claims brought pursuant to 28 U.S.C. §§ 2201-2202, the Declaratory Judgment Act.

12. This Court has jurisdictions for all six (6) claims relative to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. §1986, 42 U.S.C. §1988 and 28 U.S.C.

§§ 1331 and 1343. All six (6) claims are brought under 42 U.S.C. § 1983 to sue for the civil rights violations under color of state law.

13. Venue is proper in this district because:

(a) The Northern District of Illinois is the judicial district in which substantially all the events or omissions or fraud giving rise to Vanessa's claims occurred; and

(b) Defendants are found or are employed, at the time of the incidents giving rise to this suit, in the Northern District of Illinois.

14. The typical bars to jurisdiction from federal complaints arising from state domestic relations proceedings do not apply as Vanessa is seeking prospective relief (declaratory and injunctive) and for costs and damages for the pain, suffering and harm caused by the constitutional deprivations over several years.

15. Absolute judicial immunity does not apply to declaratory relief under 42 U.S.C. § 1983. Absolute immunity also does not apply to injunctive relief under 42 U.S.C. § 1983 when a state judge acts in excess of their jurisdiction or in the clear absence of jurisdiction. Nor does absolute immunity apply to (*ex*) guardian ad *litems* for actions in excess of their quasi-judicial duties or actions taken after discharge from that role.

16. The Rooker-Feldman jurisdictional bar does not apply because Vanessa is not seeking this court's review of any state order or state judgment.

17. The Domestic Relations exception to federal jurisdiction does not apply because Vanessa: (a) is not requesting this court to issue a dissolution of marriage decree, which exists; (b) is not requesting this court to enter/alter a child support order; (c) is not requesting this court to enter/alter a custody order; and (d) is not requesting this court to distribute marital property.

7

18. The Anti-Injunction Act 28 U.S.C § 2283 does not apply because 42 U.S.C. § 1983 expressly authorizes injunctions to protect civil rights, and Vanessa's civil rights have been deliberately and recklessly disregarded and infringed upon. Vanessa seeks this Court's enforcement of affirmative procedural and substantive obligations derived from vested legal rights and her equal rights under the law regardless of her race, gender, cultural/ethnic origins or other identify factors as basis for discrimination.

19. No applicable abstention doctrines bar jurisdiction, including *Younger* because *Younger* only applies to criminal or quasi-criminal proceedings and state dissolution of marriage proceedings are not akin to criminal prosecutions. (See *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584, 591-3 (2013) referencing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 I.Ed.2d 482). Even with *Younger* abstention, the federal court cannot decline to enjoin or decline to decide a case in deference to the state when there is "bad faith, harassment, or a patently invalid state statute" in the underlying state proceedings. *Younger* 401 U.S., at 53-54, 91 S.Ct. 746.

### III.   PARTIES

1. Plaintiff, **VANESSA WEREKO** ("Vanessa"), resides in the village of Vernon Hills in the state of Illinois, since June 30, 2014, upon voluntary relocation from the foreign state of Switzerland with her two (2) minor children, GP and JP, American citizens by birth ("minority children"). Vanessa is a survivor of "domestic violence", as defined under the Illinois Domestic Violence Act (750 ILCS 60/*et. seq.)* at the hands of former spouse, Francesco, a citizen of Italy and a documented immigrant. Vanessa is American citizen by birth, with cultural/ethnic origins in the West African country of Ghana. Vanessa has an undergraduate degree from Dartmouth College, located in

the city of Hanover, in the state of New Hampshire and has a graduate degree from Northwestern University, located in the city of Evanston, in the state of Illinois.

- Vanessa is the named Petitioner in the foreign state of Switzerland's legal separation proceeding, **Case A20 14 9 IV**, in the county court of Arlesheim, Basel-Landschaft region, located at Domplatz 6/7, 4144 Arlesheim, whiles resident in the foreign state at Offenstrasse 52, 4123, Allschwil in Basel.

- Vanessa is the named Petitioner in state dissolution of marriage proceedings in Lake County Circuit Court, Nineteenth District, under **Case 2015 D 560**, dismissed by HON. JOSEPH SALVI whiles assigned to Hon. Raymond Collins, in the Domestic Relations Division of Lake County Circuit Court.

- Vanessa is the named Respondent in state dissolution of marriage proceedings in Cook County Circuit Court's Domestic Relations Division, under **Case 2016 D 9029**, initiated by Francesco on September 28, 2016 and currently assigned to Associate Judge LORI ROSEN, by the presiding judge of Domestic Relations Division, HON. GRACE G. DICKLER, after previous assignment to Associate Judge DAVID E. HARACZ and HON. RAUL VEGA, who both recused for bias against Vanessa.

- Vanessa is the named obligor in the state child support case, **Case C03703043**, under the Illinois Department of Healthcare and Family Services ("HFS") who are represented by the State Attorney's Office of Kimberly Foxx ("SAO") with past/current handling attorneys: Assistant State Attorney SANDI TANOUE ("ASA TANOUE"), Assistant State Attorney SARAH DZURIK ("ASA DZURIK"), ex Assistant State Attorney DENISE PAARLBERG

("ASA PAARLBERG"), Assistant State Attorney ABIGAIL VANZOEREN

("ASA VANZOEREN") and Assistant State Attorney CANDICE SMITH

("ASA SMITH") relative to HFS' efforts for a fraudulent child support order.

2. Defendant, **HONORABLE LORI ROSEN ("ROSEN")**, is an Associate Judge, in Cook County Circuit Court's Domestic Relations Division located in the Richard Daley Center, 50 West Washington Street, Chicago, Illinois, 60602, appointed in 2018. At all relevant times of the actions complained of herein, including when Defendant ROSEN was assigned to and presided over Case 2016 D 9029, *In re Marriage of Potenza*, she was responsible for enforcing Illinois statutes including the Marriage and Dissolution of Marriage Act ("IMDMA"), the Illinois Domestic Violence Act ("IDVA"), other Illinois and Cook County laws, appellate or supreme court orders/rules, within the confines of her judicial role under the US Constitution and code of judicial conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties and children before her.  She is sued in her official capacity.

3. Defendant, **HONORABLE DAVID E. HARACZ ("HARACZ")** is an Associate Judge, in Cook County Circuit Court's Juvenile Division, located at Cook County Juvenile Center, 2245 West Odgen Avenue, Chicago, Illinois 60612, since October 2021, after over ten (10) years appointment in Cook County Circuit Court's Domestic Relations Division. At all relevant times of the actions complained of herein, including when Defendant HARACZ was assigned to and presided over Case 2016 D 9029, *In re Marriage of Potenza,* he was responsible for enforcing Illinois statutes including the Marriage and Dissolution of Marriage Act ("IMDMA"), the Domestic

Violence Act ("IDVA"), Illinois and Cook County laws, appellate or supreme court orders/rules, within the confines of his judicial role under the US constitution and code of judicial conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties and children before her.  He is sued in his official capacity.

4.  Defendant, **HONORABLE RAUL VEGA ("VEGA")** is a former Judge of Cook County Circuit Court's Domestic Violence Division, located at 555 West Harrison Street, Chicago, Illinois, 60607, after several years of appointment in Cook County Circuit Court's Domestic Relations Division. At all relevant times of the actions complained of herein,  including when Defendant VEGA was assigned to and presided over Case 2016 D 9029, *In re Marriage of Potenza,* he was responsible for enforcing Illinois statutes including the Marriage and Dissolution of Marriage Act ("IMDMA"), the Domestic Violence Act ("IDVA"), Illinois and Cook County laws, appellate or supreme court orders/rules, within the confines of his judicial role under the US constitution and code of judicial conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties and children before him.  He is sued in his official capacity.

5.  Defendant, **HONORABLE MARY S. TREW ("TREW")**, is an Associate Judge, in the Cook County Circuit Court's Domestic Relations Division located in the Richard Daley Center, 50 W. Washington Street, Chicago, Illinois, 60602, who was appointed in 2010.  At all relevant times of the actions complained of herein, including when Defendant TREW presided over Case 2016 D 9029, *In re Marriage of Potenza*, she was responsible for enforcing Illinois statutes including the Marriage and Dissolution

of Marriage Act ("IMDMA"), the Illinois Domestic Violence Act ("IDVA"), other Illinois and Cook County laws, appellate or supreme court orders/rules, within the confines of her judicial role under the US Constitution and code of judicial conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties and children before her. She is sued in her official capacity.

6. Defendant, **HONORABLE GRACE G. DICKLER ("DICKLER")**, is the Presiding Judge of Cook County Circuit Court's Domestic Relations Division, located in the Richard Daley Center, 50 W. Washington Street, Chicago, Illinois, 60602, who was appointed in 2010 after over two (2) decades as an appointed associate judge in Cook County Circuit Court's Domestic Relations Division. At all relevant times of the actions complained of herein, including her assignment of judges to Case 2016 D 9029, *In re Marriage of Potenza*, her administrative and supervisory responsibilities included ensuring individual judges in the Domestic Relations Division are protecting individual constitutional rights and take necessary measures then they are not, whiles enforcing Illinois Statutes, including the Marriage and Dissolution of Marriage Act ("IMDMA"), the Domestic Violence Act, other Illinois and Cook County laws, appellate or supreme court orders/rules, within the confines of her judicial role under the US Constitution and judicial code of conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties and children before her. She is sued in her official capacity.

7. Defendant, **KATHLEEN P. LIPINSKI ("LIPINSKI")**, is a licensed shorthand reporter located in Cook County Administration Building's Office of the Official

Court Reporters at 69 West Washington Street, Chicago, Illinois, 60602, which reports into the Office of the Chief Judge, Hon. Timothy C. Evans. At all relevant times of the actions complained of herein, including when LIPINSKI was assigned to transcribe proceedings for Case 2016 D 9029, *In re Marriage of Potenza*, her license requires that she provide a verbatim/accurate account of proceedings, in a certified report, without omitting or altering any part of the proceedings in her report to impede, hinder, obstruct or defeat the due court of justice for any party or to defraud the public of actual happenings during the proceedings. She is sued in her individual capacity.

8.  Defendant, **HONORABLE JOSEPH V. SALVI ("SALVI")**, is an Associate Judge, in the Lake County Circuit Court, Nineteenth Judicial District's Civil Division located in the Lake County Courthouse at 18 North County Street, Waukegan, Illinois, 60065. At all relevant times of the actions complained of herein, including when Defendant SALVI presided over Case 2015 D 560, dissolution of marriage case in Lake County Circuit Court, he was responsible for enforcing Illinois statutes including the Marriage and Dissolution of Marriage Act ("IMDMA"), Illinois Enforcement of Foreign Judgments Act ("IEFJA"), other Illinois and Lake County laws, appellate or supreme court orders/rules, within the confines of his judicial role under the US Constitution and code of judicial conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties and children before him. He is sued in his official capacity.

9.  Defendant, **HONORABLE TERRENCE J. LAVIN ("LAVIN")**, is a justice of the First District Illinois Appellate Court, located in the Michael Bilandic Building at 160 North LaSalle Street, 14th Floor, Chicago, Illinois 60601, who was appointed in 2010

with no prior years of judgeship. At all relevant times of the actions complained of herein, including his assignment to and review of Appellate Cases 1-19-1466, 1-19-1904, 1-21-1544 and 1-21-1583, for Circuit Court Case 2016 D 9029, *In re Marriage of Potenza*, he was responsible for enforcing on review, Illinois statutes including the Marriage and Dissolution of Marriage Act ("IMDMA"), the Domestic Violence Act ("IDVA"), Enforcement of Foreign Judgments Act ("IEFJA"), other Illinois and Cook County laws, state appellate or supreme court rules/orders, legal principles including *stare decisis*, within the confines of his judicial role under the US Constitution and code of judicial conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties appealing circuit court rulings. He is sued in his official capacity.

10. Defendant, **HONORABLE MARY ELLEN COGHLAN ("COGHLAN")**, is a justice of the First District Illinois Appellate Court, located in the Michael Bilandic Building at 160 North LaSalle Street, 14th Floor, Chicago, Illinois 60601, who was appointed in 2019 after 24 years of prior judgeship in Cook County Circuit Court. At all relevant times of the actions complained of herein, including her assignment to and review of appellate Cases 1-19-1466, 1-19-1904 and 1-19-2454, for Case 2016 D 9029, *In re Marriage of Potenza*, she was responsible for enforcing on review Illinois statutes including the Marriage and Dissolution of Marriage Act ("IMDMA"), the Domestic Violence Act ("IDVA"), Enforcement of Foreign Judgments Act ("IEFJA"), other Illinois and Cook County laws, supreme court rules/orders, legal principles, within the confines of her judicial role under the US Constitution and code of judicial conduct and not to conspire to interfere with civil rights or abet the

interference with civil rights or cause constitutional deprivations of parties appealing circuit court rulings. She is sued in her official capacity.

11. Defendant, **HONORABLE AURELIA MARIE PUCINSKI ("PUCINSKI")**, is a justice of the First District Illinois Appellate Court, located in the Michael Bilandic Building at 160 North LaSalle Street, 14th Floor, Chicago, Illinois 60601, who was elected in 2010 after 6 years of prior judgeship in Cook County Circuit Court. At all relevant times of the actions complained of herein, including her assignment and review of appellate Cases 1-19-1466 and 1-19-1904, for Case 2016 D 9029, *In re Marriage of Potenza*, she was responsible for enforcing on review, Illinois statutes including the Marriage and Dissolution of Marriage Act ("IMDMA"), the Domestic Violence Act ("IDVA"), Enforcement of Foreign Judgments Act ("IEFJA"), other Illinois and Cook County laws, supreme court rules/orders, legal principles, within the confines of her judicial role under the US Constitution and code of judicial conduct, and not to conspire to interfere with civil rights or abet the interference with civil rights or cause constitutional deprivations of parties appealing circuit court rulings. She is sued in her official capacity.

12. Defendant **SARAH E. INGERSOLL ("INGERSOLL")** is an Assistant Attorney General of Illinois for the Child Welfare Litigation Bureau, located in the Office of the Illinois Attorney General, Child Welfare Litigation Bureau at 100 West Randolph Street, 11th Floor, Chicago, Illinois, 60601. At all relevant times of the actions complained of herein, including her appearance in Case 2016 D 9029, *In re Marriage of Potenza*, she was acting on behalf of the state's chief legal officer, KWAME RAOUL. Said officer has a constitutional responsibility to protect the public interest

of the state and its people and to ensure state and federal laws are followed and respected, by pursuing appropriate actions, on reasonable cause to believe that any state or official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State is subjecting persons to egregious or flagrant conditions which deprive such persons of any rights, privileges or immunities secured or protected by the Constitution or law of the United States, and/or such deprivation is pursuant to a pattern or practice of resistance to such persons full enjoyment of such rights, privileges or immunities, with "persons" inclusive of juveniles or unemancipated minor children. She is sued in her official capacity.

13. Defendant **THERESA A. EAGLESON ("EAGLESON"),** is the Director of the Illinois Healthcare and Family Services ("HFS"), located in the Prescott Bloom Building at 201 South Grand Avenue, East, Springfield, Illinois 62763 and in HFS' Chicago Office at 401 South Clinton, Chicago, Illinois 60607, who was appointed in 2019. At all relevant times of the actions complained of herein, including for Case C03703043, she was responsible for ensuring HFS is providing healthcare coverage for adults and children who qualify according to federal and state guidelines, HFS is providing Child Support Services in compliance with statute and the basis for denying healthcare coverage or for enforcement activities (or lack thereof) for child support is not discriminatory or for fraud or for harassment to deprive persons of rights or privileges to which they are entitled under the law. She is sued in her official capacity.

14. Defendant **RICHARD FALEN ("FALEN")** is the Appeals Coordinator at the Services Bureau of Administrative Hearings in Cook County, under the Department of Healthcare and Family Services ("HFS"), located in 69 West Washington Street,

4th Floor, Chicago, Illinois 60602. At all relevant times of the actions complained of herein, including for appeals of Case C03703043, he was responsible for ensuring administrative rules are equally applied to progress any appeals of child support orders submitted for enforcement, without impeding, hindering, obstructing or defeating in any manner, due process for any obligor/party in a conspiracy with other persons, to defraud the obligor/party and deny relief to which they are entitled under the child support statute and other operative laws. He is sued in his official capacity.

15. Defendant **EMILY YU** ("**YU**") is the Director for Northshore University HealthSystem's Health Information Management Unit located at 4901 Searle Parkway, Suite 170, Skokie, Illinois, 60077. She is responsible for the activities of a team that manage access to medical information for patients served by Northshore University HealthSystem, including provide hard copies or manage electronic access to the medical information for the patients served by Northshore University HealthSystem. She has a responsibility to ensure she and her team comply with state and federal laws, such as the Health Insurance Portability and Accountability Act ("HIPPA") Privacy Act and the constitutional rights it protects, inclusive of parental rights to access medical records or information of their minor children, without infringing on those rights or engaging in a conspiring with others to impede, hinder, obstruct or defeat, the due course of justice. She is sued in her official capacity.

16. Defendant **PETER HANNIGAN ("HANNIGAN")** is Superintendent of Hawthorn School District #73, administering public schools in the village of Vernon Hills, Illinois, with office located at 841 West End Court, Vernon Hills, Illinois, 60061. He is responsible for ensuring that the schools in District #73 comply with state and

federal laws related to education delivery, such as the Family Education Rights and Privacy Act ("FERPA") and the constitutional rights it protects, inclusive of parental rights to access educational records or other reports relating to their minor children, without infringing on those rights or engaging in a conspiring with others to impede, hinder, obstruct, or defeat, the due course of justice. He is sued in his official capacity.

17. Defendant **PEDRO MARTINEZ ("MARTINEZ")** is the Superintendent of Chicago Public Schools, with office at 42 West Madison Street, Chicago, Illinois, 60602 with a responsibility for administering public schools in the Chicago metropolitan area, inclusive of Ravenswood Elementary located at 4332 North Paulina Street in Chicago and Cruz K-12 located at 7416 North Ridge Boulevard in Chicago. He is responsible for ensuring that the schools in the district comply with state and federal laws related to education delivery, such as the Family Education Rights and Privacy Act ("FERPA") and the constitutional rights it protects, inclusive of parental rights to access educational records or other reports relating to their minor children, without infringing on those rights or engaging in a conspiring with others to impede, hinder, obstruct, or defeat, the due course of justice. He is sued in his official capacity.

18. Defendant **RUSSELL CASKEY**, **("CASKEY")** is an Assistant State Attorney in Lake County State Attorney's Office located at 18 North County Street, 3rd Floor, Waukegan, Illinois, 60085. He is sued in his official capacity.

19. Defendant **ROBERT CASELLI**, **("CASELLI")** is a police officer and Detective in Vernon Hills Police Department located at 740 Lakeview Parkway, Vernon Hills, Illinois 60061. He is sued in his official capacity.

20. Defendant **ADAM BOYD ("BOYD")** is a police officer and Detective in Vernon Hills Police Department located at 740 Lakeview Parkway, Vernon Hills, Illinois 60061. He is sued in his official capacity.

21. Defendant **TANIA DIMITROVA ("DIMITROVA")** is an attorney of The Law Offices of Tania Dimitrova located at 8 South Michigan Avenue, Suite 1300, Chicago, Illinois 60603 with primary practice areas of criminal law and immigration law. From April 2017 to May 2019, and from August 2019 to-date, she represented Francesco in Cook County Circuit Court Case 2016 D 9029, *In re Marriage of Potenza*, as initiated by Francesco in September 2016. She is sued in her individual capacity.

22. Defendant **MAXINE WEISS-KUNZ ("WEISS-KUNZ")** is an attorney and a founding member of Weiss-Kunz & Oliver, LLC, located at 180 North LaSalle Street, Suite 3700, Chicago, Illinois 60601 with other offices in Elmhurst, Illinois and Park Ridge, Illinois, and primary practice area of family law. From April 2015 to September 2015, she represented Francesco in Lake County Circuit Court Case 2015 D 560, a dissolution of marriage case initiated by Vanessa, and represented him again from July 2016 to September 2016. She initiated, on Francesco's behalf, Cook County Circuit Court Case 2016 D 9029, *In re Marriage of Potenza*, in September 2016 and represented Francesco until February 2017. She is sued in her individual capacity.

23. Defendant **KAREN A. ALTMAN ("ALTMAN")** is an attorney and a partner of Collins Family Law, LLC located at 196 E. Westminster Avenue, Lake Forest, Illinois 60045 with primary practice area of family law. From August 2015 to October 2015, when she was an attorney at Riewer & Collins LLC in Lake Forest, Illinois, she

represented Vanessa in Lake County Circuit Court Case 2015 D 560, a dissolution of marriage case initiated by Vanessa. She is sued in her individual capacity.

24. Defendant **STEWART J. AUSLANDER ("AUSLANDER")** is an attorney and owner of the Law Offices of Stewart J. Auslander LLC, located at 211 West Wacker Drive, Suite 1550, Chicago, Illinois 60606 with primary practice area of family law. He was appointed by Lake County Circuit Court, in Case 2015 D 560 to be *guardian ad litem* to minor children GP and JP and he served in that role from August 2015 until discharge in July 2016. He inserted himself in Case 2016 D 9029, *In re Marriage of Potenza*, on April 2017. He is sued in his individual capacity.

25. Defendant **SHAWN D. BERSSON ("BERSSON")** is an attorney and partner of Katz & Stefani, LLC located at 222 North LaSalle Street, Suite 2150, Chicago, Illinois, 60601, with primary practice area of family law. From October 2015 to March 2016, he represented Vanessa in Lake County Circuit Court Case 2015 D 560, a dissolution of marriage case initiated by Vanessa, and represented her again from September 2016 to January 2017. He continued his representation of Vanessa in Cook County Circuit Case 2016 D 9029, *In re Marriage of Potenza*, from February 2017 to August 2017. He is sued in his individual capacity.

26. Defendant **GARY SCHLESINGER ("SCHLESINGER")** is an attorney and partner of Schlesinger & Strauss, LLC located at 1512 Artaius Parkway, Suite 300, Libertyville, Illinois, 60048, with primary practice area of family law. From March 2015 to May 2016, he represented Vanessa in Lake County Circuit Court Case 2015 D 560, a dissolution of marriage case. He is sued in his individual capacity.

27. Defendant **TIFFANY MARIE HUGHES ("HUGHES")** is an attorney and founding partner of The Law Office of Tiffany M. Hughes, located at 22 West Washington Street, Suite 1500, Chicago, Illinois, 60602, with primary practice area of family and matrimonial law. From May 2016 to August 2016, she represented Vanessa in Lake County Circuit Court Case 2015 D 560, a dissolution of marriage case initiated by Vanessa. She is sued in her individual capacity.

28. Defendant **RUSSELL M. REID ("REID")** is an attorney in the law firm, Hoffenberg and Block, LLC located at 230 LaSalle Street, Suite 3250, Chicago, Illinois 60602 with primary practice area of family law. He was assigned by Cook County Circuit Court to be *guardian ad litem* to minor children GP and JP from February 15, 2017 until discharge on December 12, 2018. He is sued in his individual capacity.

29. Defendant **CANDACE L. MEYERS ("MEYERS")** is an attorney and partner of the law firm, Beermann, LLP located at 161 N. Clark Street, Suite 3000, Chicago, Illinois 60601 and 2725 Half Day Road, Suite 350, Bannockburn, Illinois, 60015, with primary practice area of family law. From August 2016 to October 2016, when she was an attorney at Boyle & Feinberg, PC in Chicago, Illinois, she represented Vanessa in Cook County Circuit Case 2016 D 9029, *In re Marriage of Potenza*. She is sued in her individual capacity.

30. Defendant **MICHAEL P. DOMAN ("DOMAN")** is an attorney and founder of The Law Offices of Michael P. Doman, Ltd. located at 555 Skokie Boulevard, Suite 500, Northbrook, Illinois, 60062, with primary practice area of family law. From February 2019 to May 2019, he represented Vanessa in Cook County Circuit Case 2016 D 9029, *In re Marriage of Potenza*. He is sued in his individual capacity.

31. Defendant **STACEY E. PLATT ("PLATT")** is an attorney and associate director of the Civitas ChildLaw Clinic at Loyola University Chicago School of Law, located at 25 East Pearson Street, Chicago, Illinois, 60611. She was assigned by Defendant HARACZ to be a Child Representative of the minor children G.P. and J.P, in Cook County Circuit Court Case 2016 D 9029, *In re Marriage of Potenza*, from January 2019 until her discharge in July 2019. She is sued in her individual capacity.

32. Defendant **ELIZABETH (LIZZY) ULLMAN ("ULLMAN")** is an attorney and a Staff Attorney at Colorado Legal Services located at 1905 Sherman Street, Suite 400, Denver, Colorado, 80203. At all relevant times of the actions complained of herein, she was a Salisbury Clinical Teaching Fellow at Civitas ChildLaw Clinic at Loyola University Chicago School of Law located at 25 East Pearson Street, Chicago, Illinois, 60611. She is sued in her individual capacity.

33. Defendant **ANDREA D. RICE ("RICE")** is an attorney and founder of the World's Happiest Divorce Attorney, located at 79 West Monroe Street, Suite 1300, Chicago, Illinois, 60603, with primary practice area of family law. From August 2019 to October 2019, she represented Vanessa in Cook County Circuit Case 2016 D 9029, *In re Marriage of Potenza*. She is sued in her individual capacity.

34. Defendant **BRADLEY R. TROWBRIDGE ("TROWBRIDGE")** is an attorney with a residential address of 733 West Aldine Avenue, Apartment 2, Chicago, IL 60657 and founder of the Law Offices of Bradley R. Trowbridge, located at 3257 North Sheffield Avenue, Suite 104, Chicago, Illinois 60657, with a primary practice area of family law. He is also the Executive Director of SAFE TRAVELS CHICAGO, LLC located 3257 North Sheffield Avenue, Suite 104, Chicago, Illinois 60657, which

provides parental supervision services in Cook County Circuit Court's Domestic Relations Division. On September 2019, TROWBRIDGE was assigned by Defendant HARACZ in the September 9, 2019 "plenary" orders of protection under Cook County Circuit Court Case 2016 D 9029, *In re Marriage of Potenza*. He is sued in his individual capacity.

35. Defendant **SAFE TRAVELS CHICAGO, LLC ("SAFE TRAVELS")** is a limited liability corporation registered in Illinois since 2018 and located at 3257 North Sheffield Avenue, Suite 104, Chicago, Illinois 60657. SAFE TRAVELS CHICAGO, LLC is a supervised visitation business, which aims to be appointed by state domestic relations judges to supervise parents during parenting time, for profit. Defendant BRADLEY R. TROWBRIDGE is the registered agent for SAFE TRAVELS. It is sued in its individual capacity.

36. All Defendant's actions have caused severe and ongoing irreparable harm to Vanessa. Vanessa relocated to Illinois with a distinguished career in pharmaceuticals focusing on consultative services to global companies, whose employment prospects and income deteriorated because of a pervasive conspiracy to interfere with her civil rights, infringe on her protected constitutional rights, with her reputation riddled by a defamation campaign to cover-up fraud and a corruption scheme of several (un)named conspirators insulating from prosecution or accountability, giving rise to a claim for prospective relief (declaratory and injunctive) and compensatory relief, as to which there is no adequate remedy at law.

## IV. STATEMENT OF FACTS:

### A. TIMELINE – State Dissolution Proceedings - Foreign Judgment

#### 1) Conspiracy to Interfere with Civil Rights - Defendants SALVI, AUSLANDER, WEISS-KUNZ, ALTMAN, BERSSON, SCHLESINGER, HUGHES

37. On March 26, 2014, in the foreign state of Switzerland, Vanessa was legally separated from Francesco after two (2) significant domestic violence incidents, in 2012 and 2013, with the latter her attempted murder by strangulation. An order by the foreign court requested Francesco leave Switzerland within days post his actions, as he had no legal residency since his September 2013 voluntary relocation to Illinois, in the US

38. In the foreign state, social services got involved and Vanessa received supportive services through a Domestic Violence Center, Opferhilfe, located at Steinenring 53, 4051 Basel, which assisted Vanessa with seeking legal relief in the foreign court.

39. The foreign legal separation proceedings commenced January 3, 2014, with the same court order extending the restraining order against Francesco on December 24, 2013.

40. The March 26, 2014 foreign judgment removed the restraining order relative to the minority children to allow Francesco to exercise his allocated regular parenting time therein: the first weekend of every other month. The foreign judgment gave Vanessa until April 30, 2014 to file other pleadings; she pled for child support.

41. On June 13, 2014, the foreign court entered a temporary child support order for the minority children, retroactive to January 1, 2014 and ending on June 30, 2014 relative to the written findings by the foreign court that Vanessa disclosed her intent to relocate to Illinois with the minority children on June 30, 2014 "hence as of that date, Switzerland will no longer have jurisdiction over the parental rights related to the

interests of the children." Jurisdiction over parental rights transferred to the United States with the equal protection of the laws, or equal privileges and immunities under the laws, afforded to Vanessa and her minority children, as American citizens.

42. On June 30, 2014, Vanessa voluntarily relocated to the state of Illinois, with the minority children, five and four years old, with a domicile in the village of Vernon Hills, Illinois, and registered them, immediately and eventually, in a school in Hawthorn School District #73, with office at 841 West End Court in Vernon Hills.

43. Vanessa was not a legal resident of Illinois until ninety (90) days passed. She relocated with no employment opportunity, to facilitate a healthy father-child relationship. Without court intervention, from June 2014 to March 2015, she facilitated parenting time for Francesco with the minority children, with no spousal support, no contributions to child-related expenses and little to no child support, whiles job hunting and unable to afford an attorney when the abusive incidents resumed.

44. On March 25, 2014, via attorney Cynthia Lazar, Vanessa filed a petition for dissolution of marriage, pursuant to the Illinois Marriage and Dissolution of Marriage Act, in Lake County Circuit Court in the Nineteenth Judicial District's Domestic Relations Division ("Lake County Court") to initiate state dissolution case, **Case 2015 D 560**. WEISS-KUNZ filed an appearance to represent Francesco in April 2015.

45. Vanessa's petition for dissolution requested that Lake County Court (a) recognize and enforce the foreign judgment; (b) dissolve the marriage; (c) determine the net income of Vanessa and Francesco to determine child support; and (d) determine and equitably divide any marital property and debt, with both parties individually awarded any non-marital property, pursuant to the Illinois Marriage and Dissolution of Marriage Act.

46. The foreign judgment is subject to recognition in the US under the Full Faith and Credit

Clause of the US Constitution and to enforcement by filing under the Illinois Enforcement of Foreign Judgments Act.

47. Enforcement of a judgment issued out of Illinois, excluding judgments applicable to other rules such as child support or orders of protection, requires a copy of the foreign judgment to be filed in the Office of the Circuit Clerk for any county in Illinois. Once filed with an Illinois circuit court clerk, the foreign judgment becomes enforceable in Illinois as if issued by an Illinois court. The date the foreign judgment is filed in the state of Illinois becomes its effective date; until filed it remains ineffective and unenforced, as if it never was.

48. Attorney Cynthia Lazar elected not to file the foreign judgment pending the outcome of joint mediation efforts, initiated in May 2015, with Beth Wilner, Ph.D., a Licensed Clinical Psychologist, a Collaborative Child and Parenting Specialist, Custody Evaluator and Mediator, who provided her services via Families in Transition Inc., located at 5225 Old Orchard Road, Suite 25C, Skokie, Illinois 60077.

49. After yet another abusive altercation during parenting time and stalled mediation after a hostile encounter, attorney Cynthia Lazar elected to withdraw and recommended other attorneys to replace her for contested divorce proceedings. One of the attorneys she recommended was Kelly Collins of Riewer & Collins, LLC located at 196 East Westminster Avenue, Lake Forest, Illinois, 60045.

50. ALTMAN, an attorney of Riewer & Collins, LLC filed to substitute as Vanessa's attorney on August 4, 2015, the same day AUSLANDER was assigned as guardian *ad litem* ("GAL") of the minority children, upon the proposal of WEISS-KUNZ with no objection by ALTMAN.

51. AUSLANDER operates in Lake County Court and other courts in Illinois, has significant clout in judicial circles, and a known/demonstrated bias for fathers in dissolution cases. Vanessa as a minority woman, had two identity factors used to discriminate against her: her gender and her race. With AUSLANDER at the helm, the conspiracy to impede, hinder, obstruct, or defeat the due course of justice for Vanessa and her minority children in Lake County Court commenced; and succeeded.

52. The necessity of timely filing the foreign judgment was key to establish the marital history, ensure the allocation of state resources to protect and/or provide supportive services to Vanessa and her children and the valuation date of any marital property per state statutes. (ILCS 5/402). Filing also established the existing care and custody arrangement for the minority children, which per the Illinois Marriage and Dissolution of Marriage Act, was not subject to change unless there was a significant change in circumstances. Filing streamlined the dissolution to exclude custody determination.

53. With AUSLANDER's appointment, the matter of registering the foreign judgment for enforcement in Illinois was subject to his recommendations as the court's appointee. He did not want it filed as it gave Vanessa custody and established a *status quo ante* on custody that he could not manipulate, per statute, compared to a blank canvas with no prior ruling. Thus, the foreign judgment was never filed and fostered the acrimony on custody that made him relevant in the case, with the fiscal gains it rendered.

54. On September 21, 2015, after ALTMAN suppressed in court abusive incidents against the minority children during parenting time and suppressed Vanessa from testifying to the same nor addressed with the court the need to file/register the foreign judgment, Vanessa sought other counsel as reprieve from the conspiracy between WEISS-KUNZ, AUSLANDER and ALTMAN to deprive her and her children of the full and

27

equal benefit of all laws necessary for their safety and well-being in Illinois, as provided in Switzerland where they were not citizens.

55. On September 21, 2015, Vanessa signed with BERSSON, who did not disclose his social ties with WEISS-KUNZ, ALTMAN and AUSLANDER, and the conflict of interest his relationship with AUSLANDER presented for Vanessa's request to file to oust him for his discriminatory biases, as harmful, and insulation of Francesco by suppressing reported incidents of harm or risk of harm to the minority children. BERSSON never filed to register the foreign judgment in Lake County Court nor filed to oust AUSLANDER despite Vanessa's requests. The obstructed foreign judgment kept the case going and afforded him fiscal gain through attorneys' fees from Vanessa.

56. On or about November 6, 2015, Vanessa submitted her first complaint to the Attorney Registration and Disciplinary Commission ("ARDC"), against Riewer & Collins, LLC. The ARDC did not proceed with an investigation for the reported misconducts.

57. On or about December 5 2015, the Illinois Department of Children and Family Services ("DCFS") became involved in investigating a series of abusive incidents that occurred on November 18, 2015 and December 2, 2015, including the choking of one minority child and that child's abandonment in a vehicle, per the report of a Highland Park Police Officer. AUSLANDER and BERSSON were informed, with the latter provided a written and dated account by Vanessa of past abusive altercations. To impede, hinder, obstruct or defeat the due course of justice, after the assigned DCFS investigator met with the minority children and directed an immediate stop to parenting time and the minority children's therapist also did not support further releases for visitations, AUSLANDER arrived at Vanessa's domicile in Vernon Hills on December 11, 2015 to intimidate her to force her children to go or "lose custody",

rather than bring the reported incidents to the attention of the court for address. The well-being of the minority children was immaterial in the bid to insulate Francesco and discredit the abuse reports as false, whiles AUSLANDER and the other attorneys in the case were benefitting fiscally from the harmful mayhem.

58. BERSSON, as Vanessa's attorney, refused to file a request for an order of protection or to request supervised visitation alleging such requests will be obstructed by AUSLANDER. Vanessa was instead intimidated to go with an "agreed" order, on December 15, 2015 to continue visitations, if she did not want to "lose custody"; an order, which stated *inter alia* neither she nor Francesco will physically, mentally or emotionally abuse the minority children, to cover up the fact of who the actual perpetrator was of the reported abusive incidents against those children.

59. When the December 2015 agreed order was violated, BERSSON neglected Vanessa's requests to file pleadings to bring to the attention of the court, which ensured the violations of the "agreed" order, to the harm of the minority children and Vanessa escaped the attention of the court for appropriate address, under the law.

60. The Highland Park Metra station, as a parenting time exchange location, was selected by AUSLANDER without regard for the need for safety for parties with a history of domestic violence and a foreign restraining order ineffective in Illinois; he selected as convenient for Francesco. When altercations occurred at the Highland Park Metra station and police officers in Highland Park Police Department got involved and recommended an immediate change of the exchange location as too isolated, unsafe and exchanges required facilitation by a neutral third-party, AUSLANDER failed to act. To act would undermine his contrived position that Francesco posed no threat or risk of harm, all reported incidents by mandated reporters were false or influenced by

Vanessa and there was never a history of domestic violence. The exchange location never changed and persisted for entry, in the agreed Allocation Judgment.

61. On February 17, 2016, BERSSON got around to file Vanessa's request for temporary child support; it never got calendared for adjudication and then got slated for trial.

62. By March 24, 2016, DCFS initiated yet another investigation against Francesco after receiving a report from another mandated reporter. BERSSON who previously stated he was withdrawing as Vanessa's attorney, after Vanessa questioned him about his undisclosed relationship with AUSLANDER, asked to be let back in the case; on information and belief, AUSLANDER called BERSSON to inform of the latest abuse or neglect investigation of Francesco, deemed "not helpful". In a bid to address or quash the same, BERSSON wanted back in the case as Vanessa's attorney.

63. On March 24, 2016, Vanessa sought and retained SCHLESINGER to represent her in Lake County Court for her petition for dissolution and she shared the same dated timeline of abusive altercations prior shared with BERSSON. SCHLESINGER did not file the foreign judgment and a pre-trial set to occur on May 5, 2016, right after another reported abusive incident during parenting time, was canceled, precluding address with the court during a scheduled pre-trial to conclude the case.

64. On May 10, 2016, SCHLESINGER emailed Vanessa a scanned 20-page document, with a cover letter that states: "Enclosed is a draft allocation judgment concerning parental responsibilities and parenting time. Please read carefully. if you wish to make any changes, mark this one up and send it back to me. Ultimately, I need you to initial each page and sign the last page. I will then send it to Stewart and John Merel." The referenced attorney, Jonathan ("John") Merel, of the Law Offices of Jonathan Merel, P.C. located at 180 North Stetson Avenue, Suite 1300, Chicago, Illinois 60601, was

representing Francesco and, on information, drafting a Marital Settlement Agreement to compliment the drafted allocation judgment.

65. Vanessa engaged the consultative services of another attorney to help her review and edit the shared draft of the allocation judgment, in alignment with provisions of the law to protect her and her children. On May 11, 2016, Vanessa and said consultative attorney found the last two (2) pages of the scanned document from SCHLESINGER was not part of the draft allocation judgment, but an inadvertent scan of a May 10, 2016 letter, to AUSLANDER from and signed by SCHLESINGER which stated in relevant part:

> "I know you object to Vanessa taking the children to a therapist in Wheaton***. I suggested to you Alan Heigert. He is at Counseling Connections his address is 31480 U.S. Highway 45, Libertyville, Illinois.***As I explained to you, Alan had been my therapist on and off for years. I have not seen him for therapy in at least 15 years. He does an excellent job in divorce cases with parents and children.
>
> Another person I can recommend to you is Dr. Mark Goldstein. According to Google, he is at 1893 Sheridan Rd. Suite 215 in Highland Park. He also have an office in Buffalo Grove. ***I have known Mark for many years. He is also on the 604(b) list in several counties. He has published articles. He has spoken at seminars that I have attended. <u>Generally his reputation is he at leans to fathers</u>.
> Either one of these gentlemen would be a good therapist for the [] Potenza children. Feel free to check them out. <u>I am not sending a copy of this letter to Vanessa</u>." (Emphasis Added)

66. Vanessa had no prior knowledge of the existing social ties between the attorneys and the conspiracy for wrongful acts it enabled. On information, the therapist AUSLANDER wanted replaced, was the one who made a report to DCFS in March 2016 leading to an investigation of Francesco; said investigation did not proceed or was impeded as, on information in the report, when AUSLANDER was contacted by the DCFS investigator, as guardian *ad litem*, he stated the incident of abuse reported

31

by the mandated reporter is false. To close off all loose ends in the ongoing obstruction of anyone who may testify freely, fully and truthfully to the abusive incidents, AUSLANDER insisted the Allocation Judgment, entered by agreement on July 18, 2016, include a term that the mandated reporter will be ousted as the minor children's therapist, within thirty (30) days of entry in Lake County Court. In compliance, said therapist and mandated reporter was ousted as the children's therapist within thirty (30) days of entry of the Allocation Judgment in Lake County Court.

67. On May 11, 2016, Vanessa filed her second complaint with the ARDC; this time against AUSLANDER, and named his co-conspirators SCHLESINGER, BERSSON, ALTMAN, all of whom were attorneys Vanessa retained to represent her in Lake County Court. In the Complaint, Vanessa concluded with the following words:

> "Vanessa no longer believes, with the prevailing evidence and facts to-date, that she and her minor children will have a fair chance in any divorce trial or settlement in Lake County Court with Stewart Auslander as the assigned guardian ad litem. The prevailing evidence of this case to-date and the protracted nature, which has been [bordering] on criminal misconduct for over a year, has been perpetuated by association with top-notch attorneys who do and should know better and who though required to represent Vanessa, as a client, represented her only in part or not at all whiles pursuing goals that appear to support the bias of the GAL including their own.
> The Supreme Court, through this investigative body of the ARDC or other, is humbly requested to investigate and take corrective measures immediately for this case."

68. AUSLANDER stated, in open court thereafter, that he did not bother to respond to the ARDC Complaint. Since AUSLANDER can seemingly perpetuate any crime with impunity based on his clout in judicial circles in Illinois, the ARDC dismissed Vanessa's complaint without his response and no action taken against him nor his present or past co-conspirators ALTMAN, WEISS-KUNZ, BERSON and

SCHELSINGER all interfering with Vanessa's civil rights and criminally insulating or covering-up reported/suspected incidents of abuse against the minority children.

69. On May 26, 2016, Vanessa retained HUGHES of The Law Offices of Tiffany M. Hughes, who asserted no social ties with any of Vanessa's prior attorneys; that would turn out to be a fraudulent claim as HUGHES and BERSSON have and know each other through a shared mentor, a juggernaut in Illinois family and matrimonial law.

70. SCHLESSINGER refused to release Vanessa's legal file to HUGHES to impede her ability to proceed in Lake County Court, claiming unpaid legal fees; HUGHES informed SCHLESSINGER that "[t]here is no case law that states that you can hold a file due to payment." Vanessa had to pay all of the fraudulent amount claimed by SCHLESSINGER to get her legal file. HUGHES will soon copy the same tactic.

71. By July 18, 2016, HUGHES had taken the drafted Allocation Judgment of Parental Responsibilities that Vanessa paid the consultative attorney to edit, reformatted paragraphs and added some content changes to slap her name on it, as her end product. The Allocation Judgment was entered by the agreement of Vanessa and Francesco, both of whom signed every page, including page two (2) with a term entered pursuant to the prior ruling of Hon. Raymond Collins ("Judge Collins"), the assigned judge:

> "A Judgment of Legal Separation was entered by the Court in Basel, Switzerland on March 26, 2014, which also contains a sole custody judgment awarding VANESSA sole custody of the children is hereby enforced and registered by this Honorable Court and attached hereto and incorporated herein as Exhibit "A"

72. AUSLANDER was responsible for attaching the foreign judgment, in his possession since his appointment in August 2015, as Exhibit "A" of the agreed Allocation Judgment. He intentionally omitted it and never filed it anytime thereafter.

73. By August 2016, a week to trial on the financial matters of child support, child-related expenses and allocation of (any) marital property and debt, HUGHES alleged circa $60,000 in attorneys' fees and costs for slightly over two (2) months of representing Vanessa, to require an additional $15,000 before to proceed to trial. When that extortion tactic failed, she withdrew and withheld Vanessa's legal file from her.

74. By September 2016, obstructed from pursuing her petition for dissolution and within days to trial, Vanessa in desperation went back to BERSSON to request assistance with completing the draft Marital Settlement Agreement, as an antidote to trial without her legal file. WEISS-KUNZ had prior returned to the case to represent Francesco.

75. Vanessa agreed with all the "recommendations" of the trial judge, SALVI, including being defrauded of a substantial portion of the retroactive child support owed by Francesco, whom he gave four (4) years to pay Vanessa the remainder, interest-free. Vanessa, however, refused to be intimidated, or coerced to relinquish her right to pursue future claims that may criminally prosecute Francesco for attempted murder.

76. In recognition that the Marital Settlement Agreement was falling apart, with Francesco's refusal to agree to pay even the reduced retroactive child support amount he owed Vanessa, SALVI acted in concert with HUGHES and WEISS-KUNZ to respectively impede and obstruct Vanessa's due course of justice to a trial by ordering (a) Vanessa's withheld legal file be released a week after trial; (b) dismissal of the proceedings on September 28, 2016 right after trial was continued by a month.

77. On September 28, 2016, prior to the dismissal, with no executed Marital Settlement Agreement, no legal file on belief still withheld by HUGHES, a denied trial continuance on Vanessa's petition for dissolution, the relentless interference with

Vanessa's civil rights to proceed on her petition for dissolution in Lake County Court culminated when BERSSON, unilaterally, filed for its dismissal which SALVI promptly granted. This set the stage for WEISS-KUNZ to follow, minutes after, with an un-noticed request for dismissal of the entire case, which SALVI promptly granted on Francesco's counter-petition, after he had continued trial by a month on the same.

78. Two hours after getting Case 2015 D 560 dismissed by Lake County Court, WEISS-KUNZ, initiated Cook County Circuit Court Case 2016 D 9029, *In re Marriage of Potenza*, by filing of a petition for dissolution of marriage, on behalf of Francesco, with a cover sheet which states the parties have not been involved in any prior dissolution proceedings nor mentioned the foreign judgment.

79. On information, for WEISS-KUNZ, one realized goal of obstructing Vanessa's bid for dissolution in Lake County Court was resetting Francesco's child support obligation to zero and defrauding Vanessa of the child support to which she is entitled, per the Child Support Statute, since her relocation to Illinois with her children in 2014.

80. Vanessa caused BERSSON to file a timely motion to vacate the dismissal of her petition for dissolution; on information he received Vanessa's legal file from HUGHES, conveniently after SALVI's dismissal order on September 28, 2016, without Vanessa paying HUGHES any of the fraudulent amount she requested before to release Vanessa's legal file. The goal by conspirators to obstruct Vanessa from any due process on her petition for dissolution in Lake County Court had been achieved.

81. With intent to impede any future bid by Vanessa for damages, from the conspiracy that interfered with her civil rights in Case 2015 D 560, HUGHES proceeded to file a lawsuit against Vanessa in Cook County Circuit Court's Municipal Division, under Case 2017 M1 113865, alleging breach of contract and requesting payment of alleged

fees and costs she charged after she stopped representing Vanessa; fees and costs prior dismissed by Lake County Court. Hon. H. Yvonne Coleman is assigned to HUGHES' lawsuit, in Cook County Circuit Court, who facilitated the reversal of the dismissed fees by granting HUGHES the same, relying on a fraudulent claim with no support in the record. Vanessa's appeal, under Case 1-19-0428 was similarly thwarted.

82. Whiles Vanessa's timely request to vacate the dismissal of her petition languished unaddressed in Lake County Court, on January 13, 2017, an order of protection is entered against Francesco, under **Case 2017 OP 77**, by the Domestic Violence Unit of Lake County Court relative to the minority children and another DCFS investigation. Case 2017 OP 77 is consolidated with the dissolution case, Case 2015 D 560, up on January 19, 2017 for SALVI's adjudication of Vanessa's motion to vacate his September 28, 2016 dismissal order.

83. On January 19, 2017, SALVI entered a *sua sponte* order to vacate Case 2017 OP 77 consolidation with Case 2015 D 560, to have it returned to the Domestic Violence Unit, then ruled to deny Vanessa's motion to vacate his September 28, 2016 dismissal of her petition stating that to grant Vanessa's motion would be to reward her for being difficult, specifically her refusal to cede over her rights, on his request. On notice from BERSSON that his denial tossed out eighteen (18) months of proceedings after an agreed Allocation Judgment is entered, SALVI ruled the Lake County Allocation Judgment of Parental Responsibilities, survived, as a final and appealable judgment, and should be entered and/or enrolled in Case 2016 D 9029, *In re Marriage of Potenza*, pending in Cook County Circuit Court.

84. On February 15, 2017, SALVI and Judge Collins inserted themselves into Case 2017 OP 77, with neither a judge in the Domestic Violence Unit, with intent to impede the

order of protection against Francesco, which they did; BERSSON elected not to represent Vanessa on 2017 OP 77. On March 9, 2017, DCFS concluded its investigation of the incident reported in January 2017 that led to the Order of Protection under Case 2017 OP 77, and indicated Francesco for abuse or neglect, finding the minority children interviewed, whiles in school, with neither Francesco or Vanessa present, were credible in their account of incidents of abuse and/or neglect.

85. By February 2017, after circa $115,000 paid in attorneys' fees and costs, Vanessa's effort for the foreign judgment to be filed and enforced in Lake County Court, to dissolve the marriage with Francesco, to get statutory child support and to equitably divide any marital property and debt, and award any non-marital property, pursuant to the Illinois Marriage and Dissolution of Marriage Act was defeated by a pervasive conspiracy of several attorneys and a judicial officer to interfere with Vanessa's civil rights and insulate Francesco and others abetting him, from prosecution.

**B. TIMELINE – State Dissolution Proceedings – Agreed Allocation Judgment**

**2) Conspiracy to Interfere with Civil Rights – Defendants VEGA, AUSLANDER, DIMITROVA, REID, BERSSON, MEYERS**

86. From the January 19, 2017 to December 7, 2017, VEGA presided over Case 2016 D 9029, *In re Marriage of Potenza*, on hiatus from September 2016 pending SALVI's ruling on whether or not to vacate his dismissal order in Lake County Court.

87. BERSSON filed an appearance for Vanessa and WEISS-KUNZ continued her representation and fraudulent bid for Francesco until she withdrew February 15, 2017.

88. BERSSON never filed to enroll the Allocation Judgment from Lake County Court to cede jurisdiction to Cook County for enforcement alleging SALVI acted in excess of his jurisdiction with his January 19, 2017 order. On information, VEGA was not

inclined to have another judge dictate what occurs in his courtroom and directed that unless Vanessa and Francesco re-agree to the same Allocation Judgment in Cook County Circuit Court, it will not be entered/enrolled in Case 2016 D 9029.

89. As with the foreign judgment, Vanessa retained attorneys to request they file a motion to enroll/enter the agreed Allocation Judgment so VEGA's alleged bias for denying enforcement is on record. None did. BERSSON, after representing Vanessa to get basic child support in June 2017, with VEGA *sua sponte* reserving the matter of retroactive child support owed and Francesco's contributions to child-related expenses, withdrew with no withdrawal reason. The *sua sponte* reserved matters in the June 2017 child support order were never adjudicated. Vanessa was defrauded in Cook County Circuit Court as well, relative to the Child Support Statute.

90. MEYERS, retained from August 2017 to October 2017, as Vanessa's attorney, also refused to file a motion to enroll/enter the Allocation Judgment and the foreign judgment it referenced, preferring to draft a new Allocation Judgment and stripping out any mention of the foreign judgment to cover-up the failings of AUSLANDER and other named defendants in Lake County Court, whiles currying to the biases of newcomer, guardian *ad litem* REID, an attorney in Hoffenberg & Block, that has a partner with social ties to MEYERS. MEYERS did not proceed on any of Vanessa's requests, including a deposition of Francesco for undisclosed domiciles being used for parenting time and aligned with the conspiracy to interfere with the civil rights of Vanessa to thwart long-overdue relief, for her fiscal gain and that of other defendants.

91. With REID coalescing the efforts of the conspiracy to interfere with Vanessa's civil rights in Cook County Circuit Court, in concert with DIMITROVA, an immigration and criminal law attorney, retained by Francesco, the agreed Allocation Judgment is

positioned as not valid. This set the stage for re-litigation to change custody, insulate Francesco from prosecution for abusive incidents and violations of the agreed Allocation Judgment, with temporary orders also undermining the same.

92. On the morning of the hearing of AUSLANDER's petition for VEGA to grant him the remainder of dismissed fees as GAL in Lake County Court, MEYERS filed and instantly withdrew, rather than represent Vanessa to prevent another fraudulent bid for fees by AUSLANDER, following his (in)actions in Lake County Court. Vanessa was forced to proceed *pro se* before VEGA on October 23, 2017.

93. AUSLANDER, in April 2017, found a way to insert himself into Case 2016 D 9029, *In re Marriage of Potenza*, with no filed appearance and lacking standing, in an alleged bid to re-claim the remainder of GAL fees from Lake County Court, dismissed by the same court that appointed and discharged him in July 2016. From April 2017 until November 2017, before VEGA recused himself for bias against Vanessa, two attorneys loitered in the case influencing proceedings – a discharged GAL from Lake County Court and an appointed GAL by Cook County Circuit Court – both striving for dominance and perpetuating their discriminatory biases against Vanessa and her children and both conspiring with a judicial officer to interfere with her civil rights.

94. By December 7, 2017, Vanessa *pro se* filed a motion to enroll/enter the Lake County Allocation Judgment, enclosing the agreed Allocation Judgment and the January 19, 2017 order; prior to that she filed *pro se* a motion to enroll the foreign judgment, enclosing the foreign judgment, after MEYERS withdrew without doing so.

95. On March 7, 2018, on the record, both motions for the agreed Allocation Judgment and the foreign judgment were orally granted by HARACZ; the order drafted by

DIMITROVA willfully omitted the ruling on the foreign judgment and HARACZ entered the drafted order by Defendant DIMITROVA as-is.

96. With the obstructions repeating in yet another state court, Vanessa *pro se* filed to register the foreign judgment under a separate case, **Case 2018 D 1978**, in Cook County Circuit Court and motioned for the March 7, 2018 order be modified; said motion was continued *ad nauseum* then stricken by HARACZ. In further defacement of the foreign judgment, DIMITROVA followed her omission on March 7, 2018, by filing her fabricated "foreign judgment" – a private mediation document of the parties, after the 2012 domestic violence incident, to posit disposition of marital property was ruled on by the foreign court on March 26, 2014.

97. On the eve of the dissolution trial on May 22, 2018, HARACZ grants Vanessa's trial attorney, Kamerlink Stark Powers & McNicholas, LLC (previously located at 135 South La Salle Street, Chicago, Illinois) leave to withdraw after Vanessa already fully paid them a trial retainer, in a conspiracy to interfere with Vanessa's ability to proceed to trial and dissolve the marriage in Cook County Circuit Court.

98. In May 2018, HARACZ, on information, with knowledge of Francesco's (planned) move to Florida, *sua sponte* bifurcates the dissolution proceedings. On June 21, 2018, after Francesco is at an undisclosed address in Florida without filing a petition for relocation nor informing Vanessa of his relocation, HARACZ entered a bifurcated dissolution of marriage judgment, incorporating by reference the Allocation Judgment, the foreign judgment, and set financials including retroactive child support, contributions to child-related expenses, and other defaults of Francesco, for later trial.

99. The later trial commenced on August 27, 2018, on the record, and on August 29, 2018, HARACZ *sua sponte* indefinitely suspended trial to order mediation, in deliberate and

reckless disregard of local court rules, the history of failed mediations and violence and with knowledge that Vanessa cannot otherwise pursue a claim against Francesco for the multi-year default on child support whiles he is ensconced in Florida. HARACZ' acted with intent to defraud Vanessa whiles insulating Francesco, living at an undisclosed domicile in Florida. All that remained was to transfer the children into his custody and make Vanessa, resident in Illinois, liable for child support to him.

100.   From July 2018 to November 2018, Vanessa filed and noticed Verified Petitions alleging Francesco's abuse of the parenting time in the Allocation Judgment, pursuant to 750 ILCS 5/607.5, with specified dates prior to and after his undisclosed relocation, as a pattern of behavior. After continued hearings, the pleadings were stricken on December 3, 2019, by HARACZ, with no due process hearing on any of them.

101.   On July 16, 2018, Vanessa filed a motion for parenting time for a few select ceremonial family events, pursuant to the Allocation Judgment, to enable the minority children spend time with their elderly maternal grandparents and extended family outside of the US, for the first time, in December 2018.  HARACZ continued the calendared hearings on July 23, 2018, October 15, 2018 and November 26, 2018.  On July 15, 2019, a non-court date, HARACZ denied with no evidentiary hearing.

102.   In July 2018, HARACZ granted Francesco, still owing child support and not contributing to child-related expenses, leave to take the minor children out-of-the-country for vacation, from July 2018 to August 2018, by stripping Vanessa of her allotted vacation time with the minority children, per the Allocation Judgment.

103.   By October 29, 2018, Francesco filed, through DIMITROVA, a motion to modify the Allocation Judgment to request sole custody of the minority children in Florida

claiming he is denied scheduled visits with no dates/times provided, in disregard the Allocation Judgment's scheduled parenting time is in Illinois, not in Florida.

104.  By November 5, 2018, Vanessa is forced to file a Verified Petition for Substitution of Judge for Cause, after HARACZ gave DIMITROVA *carte blanche* to violate the Mental Health and Development Disabilities Confidentiality Act (740 ILCS 110) to get mental health records of the minority children to exploit any information therein to transfer custody. Vanessa's petition informed of HARACZ' disregard of the best interests of the minority children, his use of racial slurs and biased statements about her in front of attorneys, his repeat interferences with her civil rights, artificially protracted proceedings which denied or subverted remedies afforded to her by law. Vanessa's petition informed of her oral request for HARACZ' voluntary recusal prior to the filing of her petition and her complaint to the Judicial Inquiry Board of Illinois.

105.  On November 16, 2018, DICKLER in her capacity as presiding judge of Domestic Relations Division, assigned Vanessa's petition for substitution to Hon. John T. Carr ("Judge Carr"), an associate judge and crony of HARACZ. Judge Carr swiftly denied Vanessa's petition for substitution with ill-concealed and demonstrated disdain.

106.  On November 30, 2018, Vanessa filed a memorandum detailing the sordid history of interferences with her civil rights, deprivations, abuse incidents cover-ups, fiscal harm across two (2) state cases after the trauma of domestic violence. With the same, she gave notice to HARACZ, DIMITROVA and REID that she is extricating herself and her children from further proceedings, as harmful and not in their best interests.

### C. TIMELINE – State Dissolution Proceedings – Acts of Terror - Abductions

### 3) Conspiracy to Interfere with Civil Rights – Defendants HARACZ, DICKLER, DIMITROVA, DOMAN, PLATT, ULLMAN, CASKEY, HANNIGAN, CASELLI, BOYD, RICE

107.   Vanessa's request for substitution, complaint to the Judicial Inquiry Board and filed memorandum that told of the seditious swamp she and her minor children had been subjected to, with named conspirators, was impetus for HARACZ' retaliatory and murderous campaign against Vanessa with intent to punish and silence her and cover-up for himself and the named conspirators for their actions.

108.   On December 3, 2018, the same date of receipt of Vanessa's memo (see ¶106), HARACZ entered an *ex parte* order granting Francesco "parenting time" in Florida with no antecedent motion, no hearing and no domicile address for Francesco in Florida disclosed, as required by law, and it requested "Vernon Hills Police Department assist in enforcement of this order." HARACZ ordered transfer of the minority children to a non-resident parent with an undisclosed address outside of the jurisdiction of Illinois and requests conspirators, Vernon Hills Police Department, to assist with the abduction/kidnapping.

109.   By December 12, 2018, HARACZ *sua sponte* discharged guardian *ad litem*, REID, with no request that he be discharged without first testifying under oath or submitting a written report in the case, as required by law

110.   With the court's appointee removed to avert culpability for willful actions to be taken against the minority children, DIMITROVA got an *ex parte* order from Judge Carr, on December 31, 2018, for Vanessa to turnover the minority children to Francesco to exercise "parenting time" with no disclosure of Francesco's out-of-state domicile, as required by law. The order requested conspirators, Vernon Hills Police

43

Department, to assist Francesco "in obtaining physical possession of [the] minor children" to exercise "his parenting time pursuant to the [*ex parte*] Dec. 3 2018 Court Order and the Allocation Agreement allocation of parenting time and parental responsibilities". As aforementioned, the agreed Allocation Judgment has no defined agreed "parenting time" in the state of Florida.

111. The *ex parte* December 31, 2018 order is, on information, shared with Vernon Hills Police Department, already in receipt of the agreed Allocation Judgment from Vanessa since 2016. Vernon Hills Police Department do not obtain Francesco's Florida address; rather several officers, including Commander Andrew Gillespie, paid multiple visits to Vanessa's known domicile in Vernon Hills with intent to enforce the *ex parte* December 31, 2018 order and interrogated Vanessa's neighbors, whiles she was vacationing with the minority children in neighboring Wisconsin. On information, the multiple visits to Vanessa's domicile and interrogation of her neighbors were instigated by Francesco allegations that he had not heard from the minority children at all and that Vanessa relocated to Switzerland or Ghana with them; as a "white" man his account went unquestioned and the hunt for Vanessa ensued.

112. On information, the Federal Bureau of Investigation ("FBI"), Sheriff's Offices in Lake and Cook County, were all sent to hunt down Vanessa under the pretext that she absconded out of the US with the minority children and Francesco has received no calls from them nor able to reach them or confirm that they are in the US.

113. On January 3, 2019, Vanessa and the minority children meet with Commander Andrew Gillespie in Vernon Hills' Hawthorn Shopping Mall located at 122 Hawthorn Center, Vernon Hills, Illinois, 60061, after Vanessa contacted him and agreed to a face-to-face with the minority children. Commander Andrew Gillespie conversed

with the minority children and queried what they did and got as presents during the holidays, then requested they call Francesco in his presence. The minority children did as directed and Francesco does not respond to the call; after Commander Andrew Gillespie inspected the phone used by the minority children and noted the multiple phone call entries to Francesco's phone number, the meeting concluded. The incident is reported under Vernon Hills Police Department Report # 2018-30942.

114.   By January 11, 2018, HARACZ entered the next *ex parte* order: for the immediate relocation of the minority children to Florida, with no domicile address of Francesco indicated, no period or end date for the relocation and no parenting time defined for Vanessa. With intent to deter Vanessa, by force, intimidation or threat, from stopping the abduction of the minority children in her care, a warrant for Vanessa's arrest is attached to the immediate relocation order, with her Vernon Hills address, for her alleged contempt of the *ex parte* orders on December 3, 2018 and December 31, 2018, without a due process hearing and her purge being turnover of the minority children.

115.   On January 11, 2019, Commander Andrew Gillespie informed he received a voice message from DIMITROVA who advised him that she received a "body attachment" or arrest warrant through Cook County Circuit Court for Vanessa and *inter alia* sought the assistance of Vernon Hills Police Department to execute the arrest and transfer the minority children to Francesco. In a later conversation with Commander Andrew Gillespie, DIMITROVA on information, stated that she already reached out to the Hawthorn School District #73 school that the minority children were attending, to arrange their pickup on Monday, January 14, 2019.

116.  On January 11, 2019 and January 14, 2019, no one in Hawthorn School District #73 contacted Vanessa, as the custodial parent, to inform of any contact with DIMITROVA, a non-parent, arranging pickup of the minority children from school.

117.  Per the case record, DIMITROVA filed a certificate of service that states on Saturday January 12, 2019 via United States Postal Service, she sent to Vanessa's Vernon Hills address the January 11, 2019 *ex parte* immediate relocation order. DIMITROVA acted with deliberate intent to impede Vanessa's timely receipt of the *ex parte* relocation order, by the January 14, 2019 kidnapping, to obstruct any timely legal remedy Vanessa could have sought and to infringe on her parental rights after her false allegations that Vanessa relocated to Switzerland or Ghana with the minority children in 2018 whiles she conspired with Vernon Hills Police Department and the Hawthorn School District #73, all based in Illinois, for the kidnapping of her children.

118.  On Monday January 14, 2019, on information, Commander Andrew Gillespie contacted Georgina Escalante of Lake County Circuit Court's Civil Division on noting several anomalies with the *ex parte* January 11, 2019 relocation order to query her about its validity. On information, Georgia Escalante confirmed that it appeared valid and Commander Andrew Gillespie then advised officers who would be available on January 14, 2019 that the *ex parte* January 11, 2019 relocation order "was valid and as long as the School [of the minority children] is legally obligated to release the minor children", they are to enforce the minor children's transfer into Francesco's custody. Commander Andrew Gillespie directly updated Vanessa of the foregoing on January 15, 2019, post-incident, and confirmed the incident was duly reported by him.

119.  On or about January 14, 2019, Hawthorn School District #73 had no legal obligation or right to transfer the minor children into the custody of Francesco, a non-

custodial parent, and chose to act in concert with HARACZ, DIMITROVA and Francesco to facilitate the kidnapping out of the state of Illinois to an undisclosed address in Florida, without notice to Vanessa, the custodial parent per the agreed Allocation Judgment, that they were also in receipt of for the enrolled children.

120. On January 14, 2019, Vernon Hills Police Officers (Retired) Commander Vince Utter and (Retired) Officer Jon Paret, who later spoke to Vanessa, informed of his efforts to determine the validity of the *ex parte* January 11, 2019 relocation order, given his direct interactions with the minor children, as a school resource officer for Hawthorn School District #73, his knowledge from them about the relationship with Francesco to be concerned about the *ex parte* relocation order. On information, Officer Jon Paret asked a Sergeant in the Vernon Hills Police Department to contact Lake County State Attorney's Office, CASKEY, to assess the validity of the *ex parte* January 11, 2019 relocation order; on information, CASKEY stated it is valid.

121. Consequently, on Monday January 14, 2019, the minority children were abducted by Francesco with the assistance of four police officers from the Vernon Hills Police Department, whiles attending their elementary school, in Hawthorn School District #73. The incident is reported under Vernon Hills Police Department's Incident No. 19-00001154 which *inter alia* informed the minority children barricaded access to themselves with school room furniture, seemingly waiting for Vanessa to intervene.

122. On January 14, 2019, Vanessa was impeded from intervening on improper notice of a warrant for her arrest, which allows Vernon Hills Police Officers to arrest her on sight, to impede any attempt of hers to stop her children's kidnapping from Illinois.

123. On January 28, 2019, to finish off the kidnapping of the minority children, HARACZ granted, in another *ex parte* order, Francesco's Emergency Motion to

Allocate Significant Decision-Making and Temporarily Cease Child Support Payments, filed by DIMITROVA. HARACZ's order gave Francesco "the authority to enroll the children [in a school] in Tampa" and states his order "takes precedence over the Allocation Judgment enroll[ed] 3/7/2018" with no end date, consequently not "temporary". The order shows discharged guardian *ad litem*, REID, as the drafter, who continued in cahoots with DIMITROVA and HARACZ even after his discharge.

124. On January 29, 2019, after law firm Anderson & Boback (located at 20 North Clark Street, Suite 3300, Chicago, Illinois 60602) elected to file a limited scope appearance due to Vanessa's fiscal lack and got a quash order, Vanessa appeared *pro se* before HARACZ to present two filed, served and noticed motions: (1) a January 25, 2019 filed Two-Count Emergency Motion to Vacate or Reconsider the January 11, 2019 interlocutory order relocating her children out of Illinois and, (2) a January 28, 2019 filed Emergency Motion to Vacate or Reconsider the January 28, 2019 interlocutory order, which also *sua sponte* abated or displaced the Allocation Judgment.

125. On January 29, 2019, HARACZ entered an order giving Francesco 28 days to respond to Vanessa's emergency motions and ordered Vanessa to "travel to Florida to pick up the minor children on February 3, 2019" and return them to Illinois, with no pickup location in Florida specified. HARACZ ordered Vanessa to determine from Francesco a pickup location in Florida, with Francesco's domicile still undisclosed.

126. On January 29, 2019, HARACZ *sua sponte* appointed a Child Representative, PLATT and set case status for February 5, 2019.

127. On February 1, 2019, Vanessa signed on with DOMAN, for legal representation in the state case, whiles off to find her children in Florida and return them to Illinois.

128.  On February 3, 2019, Francesco did not turnover the minority children to Vanessa in Florida.

129.  On February 4, 2019, Vanessa filed in the Circuit Court of Hillsborough County, in the city of Tampa, Florida, **Case No.19-DR-001760**, to domesticate the January 29, 2019 Illinois order and get local law enforcement assistance to find her children.

130.  On February 5, 2019, Vanessa caused DOMAN to file a petition for rule to show cause against Francesco in Illinois, for violating the January 29, 2019 turnover order and concealing the minority children.  On July 15, 2019, a non-court date, HARACZ *sua sponte* denied said petition for rule, without an evidentiary hearing.

131.  On February 8, 2019, Vanessa returned back to Illinois upon picking up her children from Florida with the assistance of local law enforcement and subsequently re-enrolled them in the same district school in Vernon Hills, Illinois that they were attending at the time of their abduction, in Hawthorn School District #73.

132.  On February 8, 2019, in open court, with DOMAN, PLATT, DIMITROVA and Vanessa present, HARACZ proceeded to blame Vanessa for the kidnapping in January 2019. DOMAN did not proceed on a filed motion for Illinois 137 sanctions against DIMITROVA, for her willful obstructions to the return of the minority children to Illinois; the conspiracy was to divert focus from Francesco and his actions to perpetuate Vanessa as the criminal, the flight risk using her race and cultural/ethnic origins against her to insulate Francesco, committing crimes of moral turpitude, from prosecution, aided and abetted by several "white" defendants, including HARACZ.

133.  The first act of the conspiracy to divert from Francesco was the February 5, 2019 order drafted by DOMAN and entered by HARACZ. On February 5, 2019, Vanessa exchanged communications with DOMAN of her location in Florida at the minor

children's Florida school to retrieve them, per order of the Florida Court. DOMAN obscured this by drafting an order that directed Francesco to put the minority children on a plane to return them to Vanessa in Illinois. When Vanessa, with the help of Florida law enforcement returned with the minority children to Illinois, the return is falsely credited to Francesco complying, to cover up the repeat trauma the minority children endured with police involvement to return to Illinois and defeat any claims by Vanessa for reimbursement for days of travel costs and court costs in Florida, and the counseling support costs she solely footed for the minority children upon return.

134. The next act to divert focus from Francesco was the February 8, 2019 order, drafted by DOMAN and entered by HARACZ that *sua sponte* orders Vanessa give to PLATT the minor children's American passports, with no antecedent motion nor hearing nor finding for the *sua sponte* modification of the agreed Allocation Judgment. The Allocation Judgment provides that Vanessa, as a parent and primary caregiver, holds onto her children's passports. Vanessa's request for DOMAN to address the lack of due process and the infringement on her parental right to mispresent her as a flight risk is refused. He preferred to assist HARACZ frame Vanessa, after acts of terror with a kidnapping, arrest warrant and lynching – castigating her for a crime she did not commit or rather Francesco's crime – than address the deprivations of Vanessa.

135. In March 2019, Vanessa requested DOMAN issue a subpoena to Francesco's Florida employer to determine the veracity of claims he was receiving no employment income as an excuse for his ongoing defaults in child support; DOMAN refused to do so and drafted an order, that is entered, that states in relevant part, "if Francesco is unemployed, he shall immediately apply for unemployment." On the day that pre-trial recommendations were due back to HARACZ who ordered "parties' attorneys and

child representative to meet***to discuss the possibility of implementing this court's pretrial recommendations" for Francesco's Motion to Modify the Allocation Judgment that was still pending a Demand for Bill of Particulars for the allegations against Vanessa therein, DOMAN filed to withdraw as Vanessa's attorney.

136.   The *sua sponte* appointment of PLATT, as Child Representative instead of as guardian *ad litem*, was with demonstrated intent to ensure any and all incidents of abuse shared by the minority children with PLATT could be obscured and was obscured by PLATT, on the basis of attorney-client privilege, enabling the conspiracy that Francesco poses no threat or risk of harm to the minority children, that all reported abusive incidents are made-up, to insulate him and others abetting the cover-ups from prosecution relying on PLATT to keep a lid on all those abuse reports.

137.   On June 7, 2019, PLATT filed a motion, calendared by the state's electronic filing system for July 1, 2019; PLATT decided to proceed on the same date of filing, without proper notice to Vanessa nor was Vanessa given an opportunity to respond. PLATT procured an *ex parte* order from HARACZ that secured Vanessa as a flight risk. Though the order states neither Vanessa nor Francesco may take the minority children outside of the US or arrange for the children to travel outside the US, it is Vanessa, the American, whose name is provided to US Immigration Services with a log in their databases to ensure that when/if she travels, as she did a year later, she is detained and questioned by immigration officers as a suspicious person, though not a criminal.

138.   On June 10, 2019, Vanessa filed a motion to vacate and/or reconsider the *ex parte* order entered on June 7, 2019, calendared for July 1, 2019 by the state's electronic filing system. It was never adjudicated by HARACZ and Vanessa remains listed as a suspicious person in US Immigration systems to-date on account of PLATT's actions.

139.  With PLATT in possession of the minority children's passports, Vanessa was devoid of one of the main pieces of evidence of no travel to Switzerland or Ghana at any time prior to or after their kidnapping in January 2019; PLATT as their representative could perpetuate and contributed to perpetuating the conspiracy that Vanessa is a flight risk, in deliberate disregard of Vanessa's American citizenship, her family in the US and the fact that Vanessa *voluntarily* relocated from Switzerland to Illinois; all suppressed in a deliberate effort to criminalize Vanessa and infringe on her parental rights to change/transfer custody to Francesco, to insulate him and others.

140.  After Vanessa and the minority children first met with PLATT in her office, located at 25 East Pearson Street, Chicago, Illinois, 60611, on February 18, 2019, and Vanessa shared an envelope of several documents, which she believed included the minority children's American passports, PLATT later claimed she could not find the passports, to assert Vanessa willfully withheld the same for nefarious reasons.

141.  On May 22, 2019, with DOMAN granted leave to withdraw in-chambers by HARACZ, another *ex parte* order of HARACZ requested VANESSA provide the minority children's passports to him, on July 1, 2019, a calendared court date.

142.  On May 29, 2019, DIMITROVA withdrew as counsel of Francesco alleging irreconcilable differences; on belief, she was taking cover as the mayhem spiralled.

143.  On June 18, 2019, in the second and final meetup with PLATT, after Francesco called the police on the minority children during *ad hoc* parenting time in Illinois, PLATT made photocopies of all the pages of the minority children's passports and gave the passports to Vanessa. Before July 1, 2019, PLATT and Civitas ChildLaw Clinic were in possession of photocopies of all pages of the minor children's passports

52

with no evidence of any travel to Switzerland or Ghana at any time prior to or after their kidnapping by Francesco on January 14, 2019.

144. Prior to the final meetup with PLATT, Vanessa filed and served a Petition Seeking Permission to Relocate with the Minor Children Pursuant to 750 ILCS 5/609.2 and stated a desired relocation date of July 31, 2019 to pursue an employment opportunity in the state of Massachusetts, which was contingent on her ability to relocate. Vanessa relocated to Illinois in 2014 from Switzerland, with no employment opportunity at the time, so the minority children could be close to Francesco. Vanessa's immediate family lives in Massachusetts since before her 2014 relocation to Illinois. When Francesco relocated to Florida, there was little reason for her to stay in Illinois unemployed with no basic child support nor contributions to child-related expenses.

145. On July 1, 2019, PLATT elected not to appear in court and sent another attorney from Civitas ChildLaw Clinic, ULLMAN who falsely asserted, on the record, that Vanessa took the minority children out of the country without notifying Francesco. ULLMAN does not state a date nor produced any copies of the minority children's passport pages or any other evidence to support her fabrications and Vanessa is effectively lynched with no due process of law for the false oral charges.

146. Vanessa was entitled to a hearing of her Petition Seeking Permission to Relocate, calendared for July 1, 2019, same as her Motion to Vacate and/or Reconsider the May 22, 2019 *ex parte* order, entered right after DOMAN's in-chamber withdrawal, and the Motion to Vacate and/or Reconsider the June 7, 2019 *ex parte* order that led to Vanessa being listing as a suspicious person with US Immigration Services.

147. On July 1, 2019, HARACZ incarcerated Vanessa, with no evidentiary hearing on any of her pending pleadings, claiming she failed to comply with his *ex parte* order

of May 22, 2019. Vanessa brought her children's passports to court but wanted to be heard on her motions to vacate and allow facts on record that she is not a flight risk.

148.  On July 1, 2019, HARACZ ordered turnover of the minority children to Francesco, in his first appearance in state court since 2018. The turnover was until further order of court; on belief until Vanessa expired in jail to render her children's return moot.

149.  On July 1, 2019, a third-party in possession of Vanessa's belongings in court provided the passports of the minority children to ULLMAN, who on information, transferred them to HARACZ after Vanessa is incarcerated. Vanessa was not released from Cook County jail until the evening of July 1, 2019 and a subsequent order turned over the minority children to her. On information, HARACZ has the American passports of the minority children, months after his recusal for bias from the state dissolution case and his re-allocation out of the Domestic Relations Division.

150.  On July 2, 2019, Vanessa filed an Emergency Motion to Vacate the July 1, 2019 Contempt Order and to expunge the arrest, which tarnished her once pristine record, calendared for hearing on July 12, 2019. On July 12, 2019, on the record, HARACZ stated he read Vanessa's Emergency Motion to Vacate the July 1, 2019 Contempt Order and *sua sponte* chose to deny it without an evidentiary hearing.

151.  On July 2, 2019, Vanessa submitted an ARDC Complaint against ULLMAN for her fabrications that led to Vanessa's incarceration and tarnished Vanessa's prior clean record, to criminalize her. The ARDC closed the compliant with no investigation conducted on ULLMAN nor repercussions for the damage to Vanessa.

152.  On July 3, 2019, Vanessa went back to Cook County Circuit Court to retrieve her personal effects seized from her, on incarceration, and delivered a July 3, 2019 dated

letter to the Office of Presiding Judge of Domestic Relations Division, DICKLER. In

Vanessa's July 3, 2019 dated letter, she wrote in relevant part as follows:

> "My goal is not to replicate the complaints [to the Judicial Inquiry Board].
> My goal is to bring to your attention that recent conduct by Judge Haracz on
> July 1, 2019, has had an adverse psychological impact that precludes further
> participation under this judge. No attorney wants to do this case nor do I have
> funds to persuade anyone to take a case characterized as a "horror story". The
> attorneys that came swiftly withdrew. Friends and family support systems are
> fearful of appearing in court with me; Judge Haracz's recent conduct pulled
> one of them [in] without a subpoena and as non-parties, into the case to cross-
> examine them. I am not equipped to continue alone under such an abusive
> onslaught with such abuse of judicial power***[On January 14, 2019] Judge
> Haracz effectively changed custody without following due process; there was
> no hearing on the merits or any basis established."

153.   A Domestic Relations Division attorney responded to Vanessa's July 3, 2019 dated

letter to DICKLER, which suggested Vanessa look into getting free legal help and

appeal rulings that she may consider unfavorable to her; in effect Vanessa was on her

own with no action to be taken by the Office of the Presiding Judge of Domestic

Relations Divisions on notice of ongoing acts of terror and deprivations by HARACZ.

154.   On July 12, 2019, on the record, PLATT, elected to show up in court, recommended

a custody evaluation for Francesco's Motion to Modify the Allocation Judgment, still

pending a Demand for Bill of Particulars, and is then discharged by HARACZ

155.   On July 15, 2019, a non-court date, HARACZ entered an order denying several of

Vanessa's pending pleadings in the case, including her request for an injunction,

misrepresenting that on July 12, 2019 a "case management conference" occurred

antecedent to his order, when there was none. On July 17, 2019, Vanessa filed her

first interlocutory appeal under Illinois Supreme Court Rule 307, **Case 1-19-1466**,

and properly served Francesco, who was *pro se*, via the state's electronic filing system

156. Prior to July 23, 2019, HARACZ ruled on an unfiled motion by Francesco and requested an in-camera interview with the minority children; Vanessa filed a motion to vacate and to request the allocation of a legal representative for the minority children before an in-camera ensued. The attorney Vanessa found to appear with her on July 23, 2019, pulled out after an alleged call to HARACZ' courtroom rendered no filed motion by Francesco. Vanessa arrived in the courthouse with the minority children and a caregiver, and entered HARACZ's courtroom to address him, flanked by two (2) court marshals, one of whom incarcerated her on July 1, 2019. Vanessa, on the record, presented her motion and HARACZ orally denied Vanessa's request.

157. On July 23, 2019, on the record, HARACZ insisted the minority children be produced, denied Vanessa's oral request to consult legal counsel and demeaned her expressed concern for the well-being of her children, as a "soliloquy". On arrival at his courtroom with the minority children and their caregiver, Vanessa is met by one of the court marshals, who informed HARACZ left and not returning. Vanessa is hand served the court order of HARACZ, by his still-present courtroom coordinator. Per the record and order, HARACZ assumed Vanessa left to get legal counsel and decided to revert on his oral ruling and vacated his order on the unfiled motion of Francesco.

158. On July 29, 2019, Vanessa obtained a service contract in Illinois working on-site to provide consultative services to a prior employer in the pharmaceutical industry, earning significantly lower after the long months of unemployment in Illinois.

159. On August 1, 2019, two weeks after the minority children lost legal representation again, HARACZ entered an Emergency Order of Protection against Vanessa. HARACZ granted Francesco's *pro se* Emergency Petition for an Order of Protection,

with no statutorily required affidavit attached, no specific allegations of abuse, neglect, abandonment or concealment by Vanessa, and no notice to Vanessa.

160.  On August 3, 2019, Officer CASELLI of the Vernon Hills Police Department contacted Vanessa's immediate family in the state of Massachusetts using, on information details provided by Francesco, to inquire if Vanessa is in Massachusetts. On information, CASELLI was informed by Vanessa's family that she still resides in Vernon Hills, Illinois with no plans to relocate to or be in Massachusetts.

161.  On August 3, 2019, CASELLI contacted Vanessa in a text message, to her phone number which states: "Vanessa, this is Det. Caselli with the Vernon Hills Police Department can you please give me a call back as soon as possible."

162.  On August 3, 2019 circa 21:44, Vanessa sent a response to the text that identified the sender as CASELLI which states in relevant part:

"Det. Caselli, the only reason why any police officer gets in touch with me, calls my family, friends and anyone who may know me is not for anything good but because Mr. [Francesco] Potenza is doing what he does best – sowing lies and using the police as a tool of harassment, as he has done for many years. At some point, it has to stop. No human being can live with this constant assault on their lives and general liberties. I am in the process of procuring an attorney to deal with matters in the court. In the meantime, please leave me and my family and my friends alone. They have had enough of this circus, as I have. The children are well; they called their father this week and when he chose not to respond, they left voice messages. Did he share that with you? Doubtful."

163.  Francesco's *pro se* Emergency Petition for an Order of Protection falsely alleged Vanessa was concealing the minority children outside Illinois and had denied him unspecified visits pursuant to the Allocation Judgment and unspecified orders entered by HARACZ.  Francesco requested "permanent" custody of the minority children in a *pro se* emergency petition for order of protection. On information, on August 3,

2019, the *ex parte* emergency order of protection was shared by Francesco with Vernon Hills Police Department, specifically with CASELLI.

164. Per CASELLI's report on the incident (Report # 2019-00017750), he allegedly got permission from the Lake County State Attorney's Office for a phone geolocation ping on Vanessa's cell phone number and geolocated Vanessa "in a field south of Townline Road and east of St. Mary's Road in Mettawa, IL." A Vernon Hills Police Officer arrived at Vanessa's apartment in The Mil'ton located at 1155 Museum Boulevard, Vernon Hills, Illinois, 60061 banging on her door and Vanessa, with her terrified minority children, refused entry. Said visit by Vernon Hills Police at Vanessa's Vernon Hills domicile and the conversations with Vanessa's family are omitted from any incident report in the Vernon Hills Police Department.

165. By August 22, 2019, the minority children are kidnapped again by Francesco, with the assistance of Officer BOYD, of Vernon Hills Police Department, from their school in Hawthorn School District #73, after an alleged directive from CASELLI. On information, attorney Tamir Tommaleih, assisting RICE who filed an appearance for Vanessa, was served the August 1, 2019 ex *parte* emergency order of protection, after the minority children's kidnapping from their school, as described in Vernon Hills Police Department Incident No. 2019-00015855, shared with RICE.

166. BOYD, as the assigned school resource officer for Hawthorn School District #73 after Officer Jon Paret retired, proceeded to enforce the August 1, 2019 *ex parte* emergency order without regard for its invalidity, did not question the minor children as to why they were so terrified and fought removal, but complied with the directive of CASELLI, on information, directed by HARACZ on August 22, 2019, that Vernon

Hills Police Department had to make sure to remove the minor children from their Vernon Hills school that day and transfer them into Francesco's custody.

167.   On August 29, 2019, DIMITROVA re-entered the dissolution case as Francesco's attorney. RICE and attorney Tamir Tommaleih are present for Vanessa, on a Motion to Dismiss the Emergency Order of Protection and a Demand for Bill of Particulars, which argues the Domestic Violence Act is the wrong statute to address alleged visitation issues and Francesco's petition lacks facts related to any abuse by Vanessa. HARACZ stated, on the record, "I find it specific enough. The motion to dismiss is denied"; and RICE passed on arguing for the Demand for Bill of Particulars. Vanessa was consequently without notice what she was to defend against – a planned lynching.

168.   On August 29, 2019, HARACZ conducted an in-chamber discussion with DIMITROVA, RICE and attorney Tamir Tommaleih which lasted longer than the five (5) minutes Vanessa and Francesco were asked to agree to; influenced or coerced by the undisclosed discourse in-chambers with HARACZ, RICE asked Vanessa if she will agree to supervised visitation, in essence agree for her parental rights to be infringed on as HARACZ allegedly knew the Order of Protection was being misused to change custody. Vanessa said no, as she could not go into agreement with those committing acts of terror against her and her children hoping to survive or get in their good graces, by consenting to more deprivations of or infringements on her rights.

169.   On August 29, 2019, Francesco, through Defendant DIMITROVA, defined the start date of the "visitation issues" underpinning his request for a plenary order of protection as July 1, 2019, his alleged relocation date back to Illinois. HARACZ *sua sponte* informed, on the record, that the start period is December 2018, when he and

Judge Carr entered the *ex parte* orders for the minor children's kidnapping to Florida. This was to be a punishment hearing with a foregone conclusion against Vanessa.

170.   Per the case record, HARACZ extended the expired Emergency Order of Protection on August 22, 2019 to August 29, 2019, and then to September 3, 2019 and then to September 9, 2019 in violation of 750 ILCS 60/220. By operation of Illinois statute, 750 ILCS 60/*et. seq.*, the emergency order of protection expired after 21 days. *A.L. v. D.M. (in re A.M.)*, 2013 IL App (3d) 120809, ¶41 By the same Illinois statute, plenary orders of protection expire after two (2) years.

**D.  TIMELINE – State Dissolution Proceedings – "Plenary" Order of Protection**

**4)  Constitutional Deprivations – Defendants HARACZ, DIMITROVA, TROWBRDIGE, SAFE TRAVELS, LAVIN, COGHLAN, PUCINSKI**

171.   On September 9, 2019, on the record, HARACZ entered a "plenary" order of protection against Vanessa, using Cook County Circuit Court's "Interim/Plenary Order of Protection" template form (Rev. 08/05/15 CCG N805A) with box "4652 Civil" under "Plenary" selected, in addition to "vacated by court order" despite the Domestic Violence Act specifically states plenary orders must have an end date, not to exceed two years. HARACZ orally ruled, in relevant part as follows:

> "Since the inception of this litigation in Illinois starting in Lake County, there have been three separate children's representatives involved in this case, St[ewart] Auslander in the Lake County litigation, Russell Reid and Stacy Platt, as I mentioned. All of them are outstanding seasoned veterans, respected child reps. None of them have brought forth a motion regarding [Francesco] or asked that this Court find [Francesco] at a serious danger to the minor children. There has never [been] a motion filed by them on behalf of their clients that this Court restrict [Francesco's] parenting time in any way. ***
> [Vanessa's] actions or inactions with regard to preventing Mr. [Francesco] Potenza from having parenting time is harassments, as defined by the Illinois Domestic Violence Act. I find her testimony less credible and certainly evasive at times. Even after many second chances, [Vanessa] has failed to

comply with the Allocation Judgment and has denied [Francesco] his time with his children. Under 750 ILCS 60 slash 103, subparagraph 7, of the Illinois Domestic Violence Act, harassment means the knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances, would cause a reasonable person emotional distress and does cause emotional distress to the Petitioner. Unless the resumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress.

Therefore I go to subparagraph 5, "improperly concealing a minor child from the Petitioner; repeatedly threatening to improperly remove a minor child of Petitioner from the jurisdiction or from the physical care of Petitioner." [Vanessa] has violated that section of the statute. I find that she has harassed [Francesco] as defined by that Act. And without this Court's immediate intervention at this point, that type of harassment will continue. Therefore, I will grant a plenary Order of Protection which will last until further order of court in conjunction with the continued proceedings in this matter."

172. The "plenary" order of HARACZ used an address for Francesco different from that in the Expired Emergency Order of Protection; witness testimony disclosed Francesco was not domiciled at the address in the expired order, corroborated by returned mail to Vanessa who sent to the same address her recent filings in the Florida Court; information shared and known to RICE and assisting attorney Tamir Tommalieh.

173. The "plenary" order of HARACZ (a) *sua sponte* restricts Vanessa's parenting time to "weekly" supervised visitation subject to definition and provision by SAFE TRAVELS, unilaterally selected; (b) *sua sponte* denies Vanessa access to "school and/or any other records of the minor child/ren and [] prohibited from inspecting, obtaining, or attempting to inspect or obtain such records; and (c) *sua sponte* restricts Vanessa from contacting her minor children by telephone calls, mail, e-mail, faxes, written notes, and communication through third parties. Francesco's petition for order of protection did not request any of these restrictions.

174. On September 9, 2019, HARACZ entered a typed supplemental order, replicating the same terms in his September 9, 2019 "plenary" order that used the Circuit Court's template, pursuant to the Illinois Domestic Violence Act.

175. The September 9, 2019 "plenary" orders indefinitely abated Vanessa's parental responsibilities, per the agreed Allocation Judgment part of the divorce decree, with no finding she abused, neglected or endangered the minority children. By not immediately notifying Francesco of her first domicile change in Vernon Hills on August 1, 2019, to one two minutes' walk away from the previous just to seek legal counsel after repeat acts of terror at her domicile, HARACZ ruled it "concealment" with no intent to address the harassments and acts of terror he was abetting against Vanessa, a single, minority woman in a predominantly "white" suburb of Illinois.

176. The same day HARACZ entered his "plenary" orders to transfer custody to Francesco, he ordered another financial affidavit from Vanessa, the 9th of several submissions she has made in the proceedings. The next phase, to extort money from Vanessa using her minority children as pawns, commenced right after Vanessa was handed a non-terminating conviction with no finding that she abused her children.

177. On September 13, 2019, TROWBRIDGE provided Vanessa with a unilateral adhesion contract of SAFE TRAVELS, with no termination date or exit clause, for her to "agree" to supervised visitation before any supervised parenting time ensued, stating he got a referral order from HARACZ. Though SAFE TRAVELS' contract requires both parents' signature, only Vanessa is requested to sign the same.

178. SAFE TRAVELS "Agreement" is mandatory for supervised parenting time, with terms exceeding and incongruent to the restrictions in the September 9, 2019 "plenary" orders. Those terms include requiring Vanessa, as signatory, to "agree" to

pay all costs, "agree" to attend parenting time with no third-party witnesses, "agree" to non-confidential conversations and restrictions on topics that Vanessa can discuss with her children, "agree" to speak "loud" so a supervisor (of unstated qualification therein) can hear. There is no mention of telephonic visitation services. The SAFE TRAVELS supervisor would write a report directly to HARACZ and opposing counsel for each session, disclosing what Vanessa and the minority children allegedly discussed. Moreover, the adhesion contract states that the SAFE TRAVELS supervisor cannot be called to testify as a witness in the dissolution case, even after submitting *ex parte* communication directly to HARACZ and opposing counsel in an ongoing state proceeding. *See* Exhibit A.

179. By September 20, 2019, RICE informed she will not file a motion to reconsider the September 9, 2019 "plenary" orders of HARACZ, as requested by Vanessa and supported by attorney Tamir Tommaleih, informing HARACZ will not reconsider nor vacate an order entered to "punish" Vanessa and alleged fears of judicial retaliation against her, as a single, minority woman and attorney, defending Vanessa.

180. On September 23, 2019 Vanessa sought relief outside of Cook County Circuit Court with a *pro se* petition for leave to appeal the September 9, 2019 "plenary" orders at the state appellate court, pursuant to Illinois Supreme Court Rule 306 (a)(5), a permissive interlocutory appeal, for interlocutory orders affecting the care and custody of or the allocation of parental responsibilities for unemancipated minors.

181. Vanessa served her petition for leave to appeal pursuant to Illinois Supreme Court Rules, including to Francesco via U.S mail and personal service to Francesco and DIMITROVA in open court before HARACZ, already served by U.S. mail. RICE was not representing Vanessa in the state appellate court.

182. DIMITROVA did not file an appearance for Francesco in the state appellate court after she was served nor a filed response to the served petition for leave to appeal.

183. On September 24, 2019, less than two (2) months after Vanessa started wage contract work with the Illinois-based pharmaceutical company, she provided the updated financial affidavit ordered and excluded the name of her employer to protect herself from harassment and potential loss of the employment opportunity.

184. By September 27, 2019, on the record, HARACZ abated the June 2017 child support order with reservations on retroactive child support and child-related expenses owed by Francesco. The abatement is in response to Francesco's motion for abatement, through DIMITROVA, with Vanessa's counsel, RICE, not given an opportunity to respond nor served a file-stamped copy of the motion prior to ruling.

185. On September 27, 2019, on the record, Vanessa informed HARACZ of the restrictions imposed by SAFE TRAVELS' adhesion contract, incongruent to his "plenary" orders and impeding parenting time. HARACZ elected not to address SAFE TRAVELS' adhesion contract, nor did SAFE TRAVELS ever waive the requirement of its adhesion contract to allow Vanessa to have parenting time with her children.

186. On October 8, 2019, the state appellate court granted Vanessa's petition for leave to appeal, under **Case 1-19-1904**, in an order signed by HON. JAMES FITZGERALD SMITH of the Appellate Court of Illinois, First District, which states:

   "Upon consideration of Defendant-Appellant Vanessa Wereko's Emergency Petition for Leave to Appeal September 9, 2019 Orders Affecting the Care and Custody of Unemancipated Minors Pursuant to Illinois Supreme Court Rule 306(a)(5), no response having been timely filed,

   IT IS HEREBY ORDERED THAT:
   Defendant-Appellant Vanessa Wereko's Emergency Petition for Leave to Appeal pursuant to Illinois Supreme Court Rule 306(a)(5) is GRANTED."
   (Emphasis added)

187.  The same day the state appellate court granted Vanessa's request for a review of the September 9, 2019 "plenary" orders; RICE filed a motion to withdraw. RICE made no more appearances, on behalf of Vanessa, before HARACZ until she was granted leave to withdraw as Vanessa's attorney.

188.  On October 9, 2019, Vanessa filed and served a Petition to Stay Enforcement of the September 9, 2019 "plenary" orders, using the state's electronic filing system. DIMITROVA did not bother to show up in court and HARACZ *sua sponte* denied the Petition to Stay Enforcement on October 16, 2019.

189.  On October 29, 2019, Vanessa *pro se* filed and properly served on Francesco her appellant brief for Case 1-19-1904 to appeal the "plenary" orders in the Illinois Appellate Court, First District, using the state's electronic filing system.

190.  HARACZ set trial to resume on December 3, 2019 for a final dissolution judgment, after transferring custody to Francesco, whiles Vanessa's interlocutory appeal on his "plenary" orders was pending in the state appellate court. With her procedural due process rights at risk of interference/infringement by HARACZ, Vanessa petitioned the state appellate court twice (2) under Case 1-19-1904:

- On October 24, 2019, she requested to expedite the briefing schedule for Case 1-19-1904 to complete by December 3, 2019 stating, "the basis to expedite the briefing schedule is the interlocutory basis of the appeal is invalidated upon the entry of a final judgment by the trial court in December 2019 incorporating the September 9, 2019 orders, on appeal."

- On November 12, 2019, she requested a stay order for proceedings in the Circuit Court stating "the basis to stay the trial at the trial court is to allow for

the review by this [appellate] court of the September 9, 2019 orders, on appeal, to complete without the trial court entering further orders that undermine and overlook the review process by this court."

191. For both of Vanessa's request to the state appellate court to procedurally intervene to protect her rights to appeal the "plenary" orders, without interference, LAVIN denied both of Vanessa's requests, with intent to abet HARACZ's efforts to impede, hinder or defeat Vanessa's appeals in the state appellate court.

192. On December 3, 2019, HARACZ entered a final judgment, whiles Vanessa's interlocutory appeals (Case 1-19-1904 and 1-19-1466) were pending in the state appellate court. Relying on the "plenary" orders on appeal, he struck all of Vanessa's pending pleadings in the case including those related to parenting time and Francesco's abuses of the agreed Allocation Judgment; he struck all of Vanessa's financial pleadings including those on Francesco's unpaid child support obligations and the abated June 2017 child support order with reservations on retroactive child support and contributions to child-related expenses; he barred all of Vanessa's trial exhibits served before trial started in May 2018 and supplemented thereafter, and he barred Vanessa from testifying. The above-listed obstructions by HARACZ were pursuant to him granting Francesco's improper motion in *limine*, filed by DIMITROVA, a day prior to the trial resuming on December 3, 2019.

193. DIMITROVA's motion in *limine* alleged Vanessa refused to share an updated financial affidavit with her employer's name and did not serve her any trial exhibits, in contravention of a May 11, 2018 order that informed Vanessa, through counsel, served DIMITROVA trial exhibits in open court. DIMITROVA requested sanctions for her fabrication of non-receipt of trial exhibits and HARACZ granted (*see* ¶ 192).

194. On December 3, 2019, with Vanessa silenced, DIMITROVA asserted her income upon rejecting income information in Vanessa's most recent financial affidavit submission on September 24, 2019, as low. DIMITROVA, on the record, asserted no response yet to the subpoena she served on the alleged employer for Vanessa, but nevertheless asserted they are Vanessa's employer and then she inflated Vanessa's actual employment income in 2019 by 600%. HARACZ who computed the child support amount, also bumps up the amount further and the payout to Francesco is maximized by using the zero-parenting time or zero overnights allocation for Vanessa in the "plenary" orders of protection, on appeal, for a Uniform Order of Support ("Child Support Order") in favor of Francesco.

195. On December 3, 2019, to take the case off call, any remaining pleadings of Francesco had to be dealt with so, HARACZ, on the record, queried Francesco if they should just strike his remaining pleadings to take the case off call and DIMITROVA affirms. The remaining pleadings of Francesco included his October 29, 2018 filed Motion to Modify the Allocation Judgment when in Florida. With custody transferred to him using the "plenary" orders of protection with no termination date, his Motion to Modify the Allocation Judgment was irrelevant and orally stricken by HARACZ.

196. On December 3, 2019, HARACZ takes Case 2016 D 9029, *In re Marriage of Potenza*, off-call with no pleadings pending for Vanessa or Francesco.

197. On December 4, 2019, Vanessa filed a Notice of Appeal of the final judgment and other prior orders in the case under a new appeal, **Case 1-19-2454**, pursuant to Illinois Supreme Court Rules 303 and 301 which allow appeals as of right after final judgment.

198.  Six (6) days after the final judgment, on December 9, 2019, the state appellate court

addressed Vanessa's undermined interlocutory appeals by *sua sponte* dismissing them

both, with the entry of an order which states in relevant part as follows:

> "This cause comes before us <u>on the court's own motion</u>, having <u>observed</u> the
> following:
> (1) Respondent's pleadings filed in appeal No. 1-19-1904, including her
> petition for leave to appeal, were <u>not properly served on plaintiff's counsel</u>
> of record, as required by Illinois Supreme Court Rule 306(a)(5)(eff. Nov. 1,
> 2017) and Illinois Supreme Court Rule 11 (eff. July 1, 2017);
> (2) Respondent's pleadings filed in appeal No. 1-19-1466, including her
> notice of appeal, similarly <u>were not properly served on plaintiff's counsel of</u>
> <u>record</u>;
> IT IS HEREBY ORDERED THAT appeal Nos. 1-19-1904 and 1-19-1466
> are dismissed." (Emphasis added)

199.  The December 9, 2019 *sua sponte* dismissal order of the state appellate court is

signed by LAVIN, COGHLAN and PUCINSKI and omits mention of the appellant

brief Vanessa filed on October 29, 2019 under Case 1-19-1904. The omission was

with intent to obscure that the brief existed, that the state appellate court had

knowledge of the deliberate constitutional deprivations of Vanessa and her minority

children and willfully neglected to act, after refusing to stay trial proceedings with

notice by Vanessa that HARACZ was acting with intent to obstruct her appeals.

200.  LAVIN, COGHLAN and PUCINSKI, do not preside over any lower court

proceedings and Vanessa used a supporting record for her appellant brief in Case 1-

19-1904; the alleged observation relative to "plaintiff's counsel of record" in their

order was synonymous to extrajudicial sources or *ex parte* communications with

HARACZ to defeat the course of justice for Vanessa in the state appellate court.

201.  On December 9, 2019, Vanessa respectfully requested the state appellate court

clarify or specifically state the name of "plaintiff's counsel of record" referenced for

both Case 1-19-1904 and 1-19-1466 in its order, as absent in the appellate record.

202. On December 17, 2019, LAVIN denied the request for clarification.

203. On December 19, 2019, Vanessa requested reconsideration of the *sua sponte* dismissal, with notarized affidavits attached, and brought to the state appellate court's attention that (a) For Appeal Case 1-19-1904, DIMITROVA representing Francesco in the underlying state dissolution case, was served a copy of the Petition for Leave to Appeal in open court, on the record, but failed to file a response or an appearance in the state appellate court so subsequent filings in Case 1-19-1904, including Vanessa's appellant brief, were properly served on Francesco via the state's electronic filing system, with evidence he opened them; (b) For Appeal Case 19-1466, initiated on July 17, 2019, Francesco was *pro se* with no attorney in the underlying state dissolution case after HARACZ granted DIMITROVA leave to withdrawal on May 29, 2019, thus Francesco was *pro se* and was properly served all filings via the state's electronic filing system, with evidence he opened them

204. On December 23, 2019, two weeks after the *sua sponte* dismissal order, DIMITROVA filed an appearance in Case 1-19-1904 and then on January 3, 2020, she filed an appearance in Case 1-19-1466 in the state appellate court for Francesco.

205. On January 8, 2020, LAVIN, COGHLAN and PUCINSKI double-down on the obstruction of Vanessa's due process rights in the state appellate court and denied reconsideration, for both cases 1-19-1904 and 1-19-1466.

206. On January 13, 2020, Vanessa timely filed a Petition for Leave to Appeal in the state supreme court, under **Case 125651**, for the dismissal of Cases 1-19-1904 and 1-19-1466 by the state appellate court. The same day of filing, the state appellate court clerk restricted access to Case 1-19-1904 with intent to obstruct public access to the related appellate record, including Vanessa's filed appellant brief.

207.   On March 3, 2020, Vanessa mailed in a complaint to Office of the Illinois Attorney General's Civil Rights Bureau's located at 100 West Randolph Street, 11th Floor, Chicago, Illinois 60601 and on March 7, 2020 followed with a fax copy that informed *inter alia* of the ongoing deprivation of legal representation for the minority children by HARACZ, since their removal, including a prior complaint, in 2019, after the kidnapping of the minority children to Florida that was swept under the rug; the March 2020 complaint suffered the same fate at the Civil Rights Bureau.

208.   On March 9, 2020, the Illinois Supreme Court denied Vanessa's petition for leave to appeal the "plenary" orders, under Case 125651, with no supervisory order, in lieu.

209.   On April 3, 2020, Vanessa filed her appellant brief for Case 1-19-2454, challenging the statutory validity of the "plenary" orders of protection and Child Support Order, as steps in the procedural progression to the final judgment on appeal, to warrant review. As the mandate for Case 1-19-1904 had not issued back, Vanessa requested review of her brief under that appeal, as HARACZ entered a final dissolution judgment, pursuant to the Marriage and Dissolution of Marriage Act, relying on temporary "parenting time" pursuant to the Domestic Violence Act, where the two statutes are not interchangeable on custody/parental responsibilities nor is the former statute ambiguous on mandating best interests consideration for children, deemed irrelevant by HARACZ for the minority children in the case.

210.   On April 20, 2020, after DIMITROVA is in receipt of Vanessa's appellant brief, she unilaterally resurrected and amended the stricken pleading of Francesco before the case was taken off-call − his Motion to Modify the Allocation Judgment when he was in Florida − to make the same allegations that led to the "plenary" orders and

to request the agreed Allocation Judgment be modified to reflect the restrictions on Vanessa per the "plenary" orders of protection, on appeal.

211.  On May 26, 2020, Vanessa filed her reply brief for appeal Case 1-19-2454, to conclude the briefing schedule.

212.  On or about June 16, 2020, when the Circuit Court was shut down due to the Covid-19 emergency and without notice to Vanessa, HARACZ entered further orders denying Vanessa's pending motions to vacate his orders entered after the notice of appeal was filed, including her request regarding the improperly resurrected pleading of Francesco and to stay enforcement of the Child Support Order, on appeal.

213.  On or about June 16, 2020, HARACZ issued an *ex parte* body attachment – a warrant for Vanessa's arrest - effective in all counties of Illinois.

214.  On or about June 16, 2020 HARACZ gave *carte blanche* to DIMITROVA to subpoena a plethora of financial institutions for information on Vanessa. The subpoenas were with intent to find some basis, any basis, to justify the fraudulently inflated income in the Child Support Order, and extort the fraudulent support amount. On information, it was also to root out and retaliate against any attorney assisting Vanessa, as allegedly implausible to HARACZ and DIMITROVA that Vanessa could progress an appeal, *pro se*, without some attorney assisting her to expose their fraud.

215.  On June 25, 2020, Vanessa *pro se* filed an Emergency Motion for a Supervisory Order pursuant to Rule 383 to the Illinois Supreme Court, **Case 126124**, for address of HARACZ orders affecting the disposition of matters on appeal, the impropriety of LAVIN's social ties with HARACZ enabling infringement of Vanessa's due process rights and intentional delay of an appeal subject to expedited disposition, as it related to custody of minor children (Il. S. Ct. Rule 311(a)).

216.  On July 9, 2020, the Illinois Supreme Court denied Vanessa's Emergency Motion for a Supervisory Order.

217.  Prior, on July 6, 2020, Vanessa filed and served a Motion to Vacate or Modify the December 3, 2019 Child Support Order and for Sanctions, against DIMITROVA and Francesco, informing *inter alia* that the Child Support Order is willfully fraudulent.

218.  On July 13, 2020, Vanessa filed a Motion to Quash The Writ of Body Attachment and Vacate Default Judgements in June 2020.  HARACZ never adjudicated prior to his recusal, for bias, on August 3, 2021.

219.  On July 30, 2020, HARACZ was set to proceed on Francesco's resurrected and amended Motion to Modify the Allocation Judgment and DIMITROVA served him a modified Allocation Judgment with the restrictions of his "plenary" orders, ready for his signature. The filed appearance of Vanessa's next legal counsel, Hunsinger, Boyd Odom & Gross Law Group, LLP, led to a continuance and temporarily deterred the fraudulent bid to improperly modify the agreed Allocation Judgment to give Francesco custody and restrict Vanessa to supervised visitation *ad infinitum*.

220.  On September 4, 2020, Vanessa, through counsel, filed for a stay of proceedings arguing the dissolution case was on appeal, under Case 1-19-2454, with review of several orders including the "plenary" orders of protection, that Francesco's resurrected and amended motion to modify the Allocation Judgment, relied on.

221.  On September 11, 2020, HARACZ conducted the hearing on Vanessa's Motion to Stay Proceedings, and on September 13, 2020 entered an order stating he is continuing it, with no future court date defined. He never entered an order with a ruling on Vanessa's Motion to Stay Proceedings prior to his recusal in 2021, for bias.

222.  By November 4, 2020, Vanessa's Motion to Stay Proceedings was no longer referenced or dropped off HARACZ's continuation orders in the case.

223.  By January 6, 2021, Vanessa's Motion to Quash The Writ of Body Attachment and Vacate Default Judgments of June 2020 also dropped off HARACZ's continuation orders and his successor, ROSEN chose not to adjudicate it or include in the list of pending pleadings for Vanessa requiring adjudication in the state dissolution case.

### 5) Constitutional Violations – Defendants ROSEN, HARACZ, TREW, DICKLER, DIMITROVA, HANNIGAN, MARTINEZ, YU

224.  On December 31, 2020, the Illinois Appellate Court entered a Memorandum Opinion and Order, after denying Vanessa's request for oral argument for Case 1-19-2454.  The judicial panel comprised of Hon. Carl Anthony Walker, Hon. Michael B. Hyman, and COGHLAN from the prior panel that *sua sponte* dismissed Vanessa's appeal of the "plenary" orders, under Case 1-19-1904. In the December 31, 2020 Memorandum Opinion and Order, the *sua sponte* dismissal of Case 1-19-1904 is re-branded as Vanessa's failure to properly serve a "notice of appeal" on DIMITROVA, when a permissive interlocutory appeal under Rule 306(a)(5) is not initiated by filing a notice of appeal, as under Rule 303 for final judgments. *In re Marriage of Potenza*, 2016 D 009029, 2020 IL App (1st) 192454-U.

225.  The relevant portions of the Illinois Appellate Court's Memorandum Opinion and Order stated as follows (with references to the paragraphs therein):

"We reverse the transfer of custody because Potenza did not follow statutory procedures for transfer of custody" (¶1)

"Following *Radke*, we <u>reverse</u> the order of September 9, 2019 <u>in part</u>. We note the potential difficulties with uprooting the children once again. Therefore, we <u>uphold the part of the trial court's order making the father the</u>

temporary custodial parent and we order the trial court to expeditiously conduct a hearing pursuant to the Marriage Act to determine the children's best interest." (¶57) (Emphasis Added)

"Because the record appears void of evidence supporting supervised visitation, we also order the trial court to immediately review whether the requirement of supervised visitation with the mother should be modified pending final resolution of the custody issue." (¶ 57)

"We follow the decision of *Reddit v. Reddig*, 12 Ill.App. 3d 1009, 1011 (1973) where the appellate court stated, 'we deem it to be in the best interests of such children that the trial court conduct a further hearing regarding their removal from [their mother's custody]. A change of circumstances has ensued, and further evidence should be adduced as to the present situation of the children as to housing, education, financial well-being, health, moral atmosphere and as to the preference of the children.' We remand for further custody proceedings pursuant to the Marriage Act in accord with this order." (¶ 58) (Emphasis Added)

*In re Marriage of Potenza*, 2016 D 009029, 2020 IL App (1st) 192454-U.

226.   The Illinois Appellate Court cited Illinois case law to inform its ruling aligned with *stare decisis*: however in *Radke*, the non-custodial parent subject to the plenary order was got instant relief with a full reversal to the *status quo ante* ; *Reddit v. Reddig* is not related to plenary orders nor the Domestic Violence Act, but to relocation of children outside of Illinois, a "change of circumstances" to require a custody hearing.

227.   The Illinois Appellate Court found "misuse" of the Illinois Domestic Violence Act, 750 ILCS 60/, to transfer custody to Francesco, stating he should have petitioned under the Marriage and Dissolution of Marriage Act. He did, when he was in Florida; however, it was easier for HARACZ to transfer custody to Francesco misusing the Domestic Violence Act to intentionally disregard the best interests of the minority children than follow the proper statute which requires him to consider their best interests, with knowledge Francesco could not prevail. HARACZ' statutory misuse was intentional with intent to secure a favorable and biased outcome for Francesco.

74

228.  The Illinois Appellate Court does not justify its deviations to *stare decisis* for Vanessa denied instant relief nor the basis for a "change in circumstances"; it posits "potential difficulties" to reverse to the *status quo ante* on custody that *stare decisis* requires following the prolonged deprivations of Vanessa it caused with the *sua sponte* dismissal of her appeal of the "plenary" orders of protection.

229.  The Illinois Appellate Court's remand for a new custody hearing and for HARACZ to determine whether to lift the *sua sponte* restrictions he imposed on Vanessa, is also not in alignment with Illinois law where misuse of the Domestic Violence Act has never led to the requirement the injured parent justify why they deserve to have what they already had before their rights were infringed on via statutory misuse; for Vanessa custody. Nevertheless, for Vanessa, the Illinois Appellate Court made an exception leaving her susceptible to more deprivations by HARACZ and uncertainty on how the "new" custody hearing will procedurally occur in a post-judgment case. Vacating the order of protection reverts the case to the allocation of parental responsibilities in the divorce decree, that gave Vanessa custody.

230.  The Illinois Appellate Court omitted to opine on HARACZ's fraudulent Child Support Order and its reliance on the (vacated) "plenary" order of protection nor addressed the lack of evidence for Vanessa's asserted income and employer therein.

231.  Vanessa sought clarifications with her January 15, 2021 Petition for Leave to Appeal to the Illinois Supreme Court, **Case 126866**. On March 17, 2021, the Illinois Supreme Court declined to review and did not provide a supervisory order, in lieu.

232.  On April 21, 2021, the Illinois Supreme Court mandate issued back to the Illinois Appellate Court for Case 126866, the same day Vanessa's appellant brief submission, to address the federal district court's *sua sponte* dismissal of her first federal

complaint, was accepted by the US Court of Appeals.

233.  On April 22, 2022, the Illinois Appellate Court mandate issued to the Circuit Court for Case 1-19-2454, with the December 31, 2020 Memorandum Opinion and Order.

234.  By August 3, 2021, HARACZ, on the record, recused himself for bias against Vanessa after yet another *ex parte* order of his terminated upcoming temporary parenting time for Vanessa, alleging the minority children are at risk of harm, based on *ex parte* allegations by Francesco, through DIMITROVA, less than twenty-four hours to the start of the upcoming and unrestricted temporary parenting time.

235.  On August 3, 2021, HARACZ *sua sponte* discharged the recently appointed child representative requested by Vanessa, who had yet to meet the minority children to address any alleged harm and/or alleged incidents of abuse brought to HARACZ' attention. The discharge was with intent to obstruct discovery of any evidence that may substantiate reports of abuse of the minority children, after the "plenary" order transferred them into Francesco's care without any best interests' consideration.

236.  By August 4, 2021, ROSEN is assigned to replace HARACZ and HARACZ entered a *sua sponte* order denying Vanessa's emergency request for relief on his *ex parte* order that terminated her upcoming temporary parenting time. He acted with intent to keep his order scapegoating Vanessa, who has not been with her children in years, as the one harming or at risk of harming her children, to posthumously fill in the deficiency of his invalid and vacated "plenary" orders – the absence of any finding Vanessa abused or is an endangerment to her children. He did so post-recusal.

237.  On August 9, 2021, Vanessa motioned for reversal of HARACZ' August 4, 2021 *sua sponte* ruling on her motion, as he did so in excess of his jurisdiction after he

recused himself for bias against Vanessa, and for reconsideration of his *ex parte* order that terminated her temporary parenting time. Vanessa amended her filing on August 10, 2021 and served courtesy copies and the Appellate Mandate to ROSEN electronically and with hard copies through Certified United States Post mail.

238.   On August 9, 2021, ROSEN, via her courtroom coordinator/clerk, informed Vanessa the case could not be expedited for address; the earliest time for address of any case matter was in five (5) weeks, September 17, 2021. By then, HARACZ' *ex parte* communications with ROSEN had, on information and belief, recruited her to abet the conspiracy to interfere with Vanessa's civil rights with intent to insulate him and others from culpability for their actions. It is also on September 17, 2021 when the US Court of Appeals, coincidentally, chose to dismiss Vanessa's appeal of the *sua sponte* dismissal of her federal complaint against HARACZ and TROWBRIDGE.

239.   On September 9, 2021, pursuant to the Domestic Violence Act, the "plenary" orders expired two (2) years after entry along with the temporary custodial arrangement it afforded Francesco, with no extension requested prior to expiration. The valid custody arrangement in the case reverted to the divorce decree with a foreign judgment and agreed Allocation Judgment which gave Vanessa custody of her children.

240.   On September 17, 2021, on the record, DIMITROVA initiated the next phase of the fabrications to continue the conspiracy to interfere with Vanessa's civil rights and stated, *inter alia*: HARACZ found Vanessa abused her minority children; the "plenary" orders of protection against Vanessa are not vacated; Vanessa has simply refused to see her children for two (2) years and sued several judges in the Domestic Relations Division; three (3) representatives of the children left the case and PLATT

77

found Vanessa absconded and concealed her minority children out-of-the-country.

241. On September 17, 2021 ROSEN's response to DIMITROVA's fabrications was to deny Vanessa an opportunity to respond/correct the fabrications; she alleged non-receipt of Vanessa's served copies of the two (2) file-stamped pleadings noticed and calendared for that court date, to preclude adjudication. With the proceedings over Zoom, ROSEN muted and interrupted Vanessa then disabled her ability to un-mute the audio to address the court with her objections/corrections, with intent to: continue the obstructions of Vanessa's civil rights, blame the premediated outcome of the "new" custody hearing on her incompetence as *pro se*, allege "mental issues" to repeatedly undermine her mental capacity and credibility and ensure what gets on the record is what she and DIMITROVA fabricate, with no objections by Vanessa.

242. On September 17, 2021, ROSEN ruled to continue all pending pleadings, including Vanessa's request to address HARACZ' *ex parte* order termination her temporary parenting time and for (re-) allocation of a legal representative for the minor children, with intent to continue to perpetuate the ongoing harm and deprivations caused by the expired "plenary" orders with the best interests of the minority children irrelevant.

243. By September 27, 2021, Vanessa was forced to file a Motion to Require Clerk of Court to Send a Copy of Court Orders Entered by Court In Th[e] Matter, with an affidavit attached, to state the basis of the emergency is the ongoing failure of the Circuit Court to serve her with orders entered in the case, will cause her to be unable to comply or delay or obstruct timely exercise of legal remedies available to her.

244. On September 28, 2021, ROSEN denied Vanessa's request to be served court orders entered in the case and had a clerk of the Circuit Court serve Vanessa her denial order but not any other case orders. The obstruction of Vanessa's access to orders

entered in the dissolution case continues, as of this filing, is with intent to maliciously interfere with her civil rights and obstruct any justice or protections she is entitled to.

245.   On October 19, 2021, Vanessa sent signed consent forms for release of information, for a DCFS investigation report involving the minority children in August 2021. She sent to: (a) State Central Registrar at 406 East Monroe, Station 30, Springfield, Illinois, 62701; (b) DCFS Central Registry located at 2200 Churchill Road, Building B, Springfield, Illinois, 62702. A day after, she sent to (c) DCFS FOIA Officers, located at 100 West Randolph Street, Chicago, Illinois, 60601 to request a copy of the report, alleged as unfounded, which per FOIA, is due in five (5) days. Vanessa was not provided with the incident report in five (5) days nor before the December 16, 2021 hearing, with intent to obstruct the information therein regarding yet another report of (suspected) abuse or neglect of the minority children swept under a rug with an alleged video of the minority children being made to recant ever being abused or subjected to abusive incidents by the alleged perpetrator.

246.   Ahead of the December 16, 2021 hearing, Vanessa served witness disclosures to DIMITROVA and issued subpoenas for testimony and/or documentary evidence to school personnel, including Hawthorn School District #73 and two (2) Chicago Public Schools; police officers from Vernon Hills Police Department; DCFS for reported incidents of abuse or neglect since the minor children's transfer to Francesco; and therapists and social workers who interacted with the minority children.

247.   On November 15, 2021, DIMITROVA filed an emergency motion, with referenced but unattached exhibits, requesting ROSEN immediately quash the subpoenas issued by Vanessa claiming they are not relevant to the upcoming "new" custody hearing.

248.  On November 16, 2021, Vanessa filed and served a responsive motion requesting dismissal of DIMITROVA's emergency motion to quash subpoenas, arguing it is not an emergency and a willful attempt to obstruct testimonial and documentary evidence relevant in considering the best interests of the minority children pursuant to Section 5/602.5 of the Illinois Marriage and Dissolution of Marriage Act and in accord with the Appellate Order, for "further evidence" to be "adduced as to the present situation of the children as to housing, education, financial well-being, health, moral atmosphere and as to the preference of the children". (*see* ¶ 225)

249.  On November 16, 2021, on the record, ROSEN denied Vanessa's responsive motion to dismiss, and stated HARACZ "plenary" orders are not vacated. Like HARACZ, ROSEN's order for a hearing on December 16, 2021, omitted Vanessa's Motion to Quash The Writ of Body Attachment and Vacate Default Judgments in June 2020, when the case was on appeal, with intent to allow Francesco's improperly resurrected and amended Motion to Modify the Allocation Judgment, to proceed to a hearing and prosecute Vanessa, twice, for the same allegations therein that led to the "plenary" orders of protection, under the Domestic Violence Act, in violation of the Double Jeopardy Clause of the Fifth Amendment of the US Constitution.

250.  On November 16, 2021, on the record, ROSEN granted DIMITROVA's emergency request to quash Vanessa's subpoenas for testimonial and documentary evidence with intent to hinder or obstruct any evidence that undermines the same alleged and fabricated offenses to be used to prosecute Vanessa, twice, during the "new" custody hearing with intent to defeat the due course of justice for Vanessa and enforce the

same contrived outcome, under the Marriage and Dissolution of Marriage Act, as occurred under the Domestic Violence Act over two (2) years ago.

251. On November 17, 2021, with evidence of HARACZ and ROSEN's willful neglect to enter an order in compliance with the Appellate Mandate that issued on April 22, 2021, Vanessa filed to request immediate compliance. Though the "plenary" orders had expired, per statute, the absence of a Circuit Court order clearly stating the same was being used by DIMITROVA to cause third parties to continue to infringe on Vanessa's parental rights, including her abilities to access her children's records.

252. On November 18, 2021, ROSEN was not available; Vanessa's November 17, 2021 filed motion was assigned to TREW, an associate judge in the Domestic Relations Division of the Cook County Circuit Court.

253. Before to address Vanessa's motion, TREW asked any of Vanessa's witnesses or observers on the Zoom proceedings to provide their names and discharged them stating to each, "you need to come off the zoom." When Vanessa queried TREW why observers of public court proceedings are asked to leave, TREW stated non-parties cannot be present for the proceedings. In effect, TREW was operating under her self-constituted policy to unilaterally convert the public court proceedings into private proceedings with intent to impede observations of her judicial (mis)conduct.

254. On November 18, 2021, Defendant TREW states in relevant part as follows:

> "This is Judge Rosen's case. It was filed as an emergency. Judge Rosen reviewed [] this motion and indicated to me that while she is denying it as an emergency, she is granting you leave to file it as a regular motion, which you need to do. So you can file this as a regular motion and give notice to the other side, but she said she is denying you emergency relief." (Emphasis Added)

255.  On November 18, 2021, an email from a Circuit Court clerk has an "order" attached that states no emergency exists for Vanessa's request for the Circuit Court to comply with the Appellate Order entered on December 31, 2020 and Vanessa is granted leave to re-file and re-notice her November 17, 2021 filing as a non-emergency. The "order" has no judge name or judge number, nor date entered and the court-stamp is whited out in part for the date of entry; in effect, an invalid order with intent to obscure which judge actually ruled on Vanessa's emergency motion and denied the same.

256.  With the bad faith, harassment, and self-constituted rules of several judges operative against Vanessa, she returned to the state appellate court, under Supreme Court Rule 308, **Case 1-21-1544**, to ask leave for clarification of the December 31, 2020 Memorandum Opinion and Order based on ROSEN's position the "plenary" orders were not vacated, months after they expired after being vacated "in part". On December 23, 2021, Vanessa is served an appellate order by a clerk where LAVIN denied Vanessa's request, in concert with Hon. James Fitzgerald Smith (*see* ¶ 186) and Hon Nathaniel Howse Jr. with no directive to ROSEN to stop the insanity and harassment; LAVIN and his state appellate court colleagues appeared to be in league with ROSEN bent on abrogation of Vanessa's constitutionally protected rights.

257.  The conspiracy to interfere with or infringe on Vanessa's constitutional rights included other third parties and Vanessa was forced to proceed with filing motions to compel compliance to state law and federal law by each of the related third parties.

258.  On November 22, 2021, Vanessa filed a motion to compel Northshore University HealthSystem ("Northshore") to reinstate her access or provide her copies, as a parent, to medical records or information of her minority children in compliance to the Health

Insurance Portability and Accountability Act ("HIPPA") Privacy Act. Vanessa attached exhibits to her motion to compel, including the Appellate Mandate.

259.  The motion to compel Northshore was served by electronic mail from Vanessa's email account and from the states electronic filing system to: YU, Shivani Bautista who is General Counsel of Northshore, and DIMITROVA. Vanessa is contacted by law firm Baker, Castro, Kuban & Steinback located at 303 West Madison Street, Suite 700, Chicago, Illinois, 60601 as legal counsels for Northshore, with assigned/handling attorney Patrick S. Viktora served by electronic mail, with service via the state's electronic filing system for subsequent filings.

260.  Vanessa filed motions to compel Hawthorn School District #73 and the two (2) Chicago Public Schools allegedly attended by the minority children, to release their educational records to her, as a parent, in compliance to the Family Education Rights and Privacy Act ("FERPA") and attached several exhibits to each of her motions including the Appellate Mandate

261.  The November 19, 2021 filed motion to compel for Hawthorn School District #73 was served by electronic mail from Vanessa's email account and from the state's electronic filing system to: HANNIGAN; Jennifer Haack who is the Principal of the Vernon Hills Elementary School located at 810 North Aspen Drive, Vernon Hills; and law firm, Robbins Schwartz located at 55 West Monroe Street, Suite 800, Chicago, Illinois 60603, as legal counsels of Hawthorn School District #73, with assigned/handling attorney Michelle L. Weber served.

262.  The December 2, 2021 filed motion to compel for Chicago Public School's Ravenswood Elementary, was served by electronic mail from Vanessa's email

account and from the state's electronic filing system to: Nicholas Guerrero, the Principal of Ravenswood Elementary located at 4332 North Paulina Street, Chicago, Illinois, 60613 and to DIMITROVA. Vanessa served by fax to Chicago Public School's Legal Department at 1 North Dearborn Street, Suite 900, Chicago, Illinois 6062 with assigned/handling attorney Mara Warman and legal assistant Gwendolyn Broughton-Morgan served by electronic mail on contacting Vanessa.

263. The November 19, 2021 filed motion to compel for Chicago Public School, Cruz K-12, was served by electronic mail from Vanessa's email account and from the state's electronic filing system to: Alyssa Dons, the principal of Cruz K-12 located at 7416 North Ridge Boulevard, Chicago, Illinois, 60645; educational records administrator Agueda Vasquez and to DIMITROVA.

264. On December 6, 2021, on the record, attorneys representing Northshore, Hawthorn School District #73 and the two (2) Chicago Public Schools appeared before ROSEN for the Zoom proceedings. ROSEN resumed her characteristic block of Vanessa over Zoom, so Vanessa could not speak to or present her own motions, to allow DIMITROVA's unilateral assertions on the record. ROSEN, with notice from Vanessa's served filings that the "plenary" orders per the Domestic Violence Act expired and conspirators in schools and healthcare providers were denying Vanessa information on her children, denied all of the motions to compel.

265. On December 6, 2021, on the record, ROSEN requested each attorney opine on whether or not Vanessa's requests to be provided copies of her children's records and stop the infringement of her protected parental rights, constitutes an emergency for them; each intoned that it is not. To-date, Vanessa has no access to and continues to

be denied copies of her children's health and education records by third parties acting in concert with ROSEN to block any information of the minority children to Vanessa, with intent to impede, hinder, obstruct or defeat the due course of justice, relative to the culpability of any of those third parties and/or defendants in regard to actions they refused or neglected to take on information they had concerning the minority children.

266. From December 7, 2021 to December 8, 2021, Vanessa electronically served 265 exhibits to ROSEN ahead of the December 16, 2021 hearing, using her designated electronic service address, CCC.DomRelcr3001@cookcountyil.gov, with DIMITROVA, ASA PAARLBERG and ASA SMITH copied on the electronic transmissions. On December 8, 2021 Vanessa also directly served, electronically and via Certified United States Post Mail, a sensitive report of a disclosed Expert Witness.

267. At the December 16, 2021 hearing, ROSEN insisted Vanessa's private court reporter who was present to transcribe the proceedings and scheduled since October 2021, could not do so based on her self-constituted policy that only her court reporter, Kathleen Lipinski (LIPINSKI) can transcribe proceedings in her courtroom and threatened that if she finds out that anyone recorded the proceedings, she will prosecute them herself, with premeditated intent to corrupt the record and impede, hinder, obstruct or defeat the due course of justice, by any means possible.

268. ROSEN did not enter and/or cause to be issued an entered order for her November 16, 2021 ruling on DIMITROVA's emergency motion to quash subpoenas; consequently, all of Vanessa's subpoenaed witnesses appeared in court, over the Zoom proceedings, except for Commander Andrew Gillespie of the Vernon Hills Police Department. In attendance was INGERSOLL, in lieu of State Attorney General

Kwame Raoul, to request a quash of Vanessa's subpoena for testimonial evidence by the case worker for an incident report circa March 2020 relative to alleged bruising of the minority children, which DCFS allegedly did not pursue because they were obstructed from seeing the minority children.

269.   On December 16, 2021, INGERSOLL argued Illinois Statute, 325 ILCS 5/7.14 bars DCFS, the sole agency in Illinois allowed to investigate reports of alleged abuse or neglect, from testifying in state dissolution cases because the bespoke statute only allows DCFS to testify in cases under the Juvenile Court Act of 1987. In other words, 325 ILCS 5/7.14 permits the Office of the Attorney General to discriminate between juveniles on the basis of which statute is operative for a case involving them, where any case under the Illinois Marriage and Dissolution of Marriage Act precludes testimonial evidence for DCFS' investigations involving the related juveniles regardless the proceedings are for best interests' considerations of those juveniles.

270.   On December 16, 2021, ROSEN granted INGERSOLL's request to obstruct the testimonial evidence of the DCFS investigator assigned for the alleged incident in March 2020. As aforementioned, Vanessa was obstructed from getting a report for another incident/investigation in August 2021 (see ¶ 245).

271.   On December 16, 2021, ASA PAARLBERG appeared for HFS' Petition to Modify the fraudulent Child Support Order and addressed ROSEN to inform the State will proceed after address of other case pleadings, which included Vanessa's request to modify or vacate the same Child Support Order. Other disclosed, present, and identified witnesses of Vanessa were family, friends including a former work colleague and the CEO of the alleged employer in the Child Support Order. All witnesses identified themselves to ROSEN; the transcript by LIPINSKI omitted

several identified witnesses and misrepresented that neither ASA PAARLBERG nor anyone from the State Attorney's Office of Kimberly Foxx was present.

272.   On December 16, 2021, ROSEN discharged all identified and present witnesses of Vanessa except for Officer BOYD  and some of Vanessa's family and friends alleging they were observers at prior dissolution proceedings and so, per her self-constituted policy, barred from testifying at the December 16, 2021 hearing.

273.   On December 16, 2021, ROSEN proceeded to deter, by force, intimidation and threats, the remaining witnesses, from testifying freely, fully and truthfully in concert with DIMITROVA who objected, with no basis, to stop witnesses in mid-sentence or to strike their responses when either ROSEN and/or DIMITROVA found them unfavorable or undermining the fabricated offenses against Vanessa. ROSEN pressed witnesses for alternate responses if their responses implicated HARACZ, SAFE TRAVELS, DIMITROVA or Francesco in the deprivations of Vanessa and her minority children related to the "plenary" orders. ROSEN's conduct was abusive, biased, and subversive causing some observers to leave. Vanessa, as *pro se*, had no choice but to remain and take the abuses whiles being bullied during her self-defense.

274.   On December 16, 2021, DIMITROVA had one undisclosed witness, Francesco; on cross-examination, Francesco could not specify any instance when Vanessa abused, neglected, maltreated or abandoned the minority children. The basis for his request for supervised visitation *ad infinitum* is Vanessa's cultural/ethnic origins in Ghana and his uncorroborated fear that she may relocate to Ghana with the minority children. In effect, Francesco was requesting the state court to continue to restrict Vanessa from being with her children to address his unsubstantiated fears and for a discriminatory ruling on the basis of her cultural/ethnic origins which she can never change.

275.   On December 16, 2021, DIMITROVA interrogated Vanessa's witnesses outside the scope of direct examination, including coercing for Vanessa's current domicile in Vernon Hills after DIMITROVA's self-professed surveillances of Vanessa at her domicile, as on record. The illicit surveillance of Vanessa and repeat acts of terror at every one of her disclosed domicile was excused by HARACZ (see ¶320), and ignored by ROSEN in disregard of Vanessa's testimony concerning her safety with the lack of address by those with knowledge of the misconducts against Vanessa.

276.   On December 16, 2021, ROSEN continued the hearing to January 5, 2022 and Vanessa and her minority children went through another holiday period with no parenting time, in a continuation of the deprivations since 2019.

277.   On January 5, 2022, only one of Vanessa's identified and present witnesses is allowed to testify and said witness is similarly subjected to bullying/intimidation tactics by ROSEN including being forced to divulge the color of or neighboring street to Vanessa's Vernon Hills domicile, being accused of influencing Vanessa to violate court orders in hindrance of the witness' testimony regarding SAFE TRAVELS adhesion contract and the recommendation for Vanessa not to sign following the terror tactics used to remove the minority children from her care and custody.

278.   On January 5, 2022, ROSEN permitted DIMITROVA to make a closing statement, who *inter alia* asked for custody for Francesco as Vanessa will not disclose her domicile in Vernon Hills and Francesco is owed child support of an unsubstantiated amount per the Child Support Order. ROSEN blocked Vanessa from responding via Zoom and Vanessa is not allowed to make a closing statement, per the record. ROSEN orally set her ruling for the concluded hearing to occur February 25, 2022 at 11:00AM.

279.   On or about February 7, 2022, Vanessa submitted a compliant to the Illinois

Department of Financial and Professional Regulation, specifically its Division of Professional Regulation against LIPINSKI, upon receipt of the transcript for the December 16, 2021 proceedings, for violating Illinois Statute 225 ILCS 415/23 with unethical conduct of producing a transcript with significant omissions and alterations, as already stated herein, on December 16, 2021. The Illinois Department of Financial and Professional Regulation has not responded to the complaint against LIPINSKI.

280.   On February 25, 2022, seven weeks after the hearing concluded, ROSEN continued her oral ruling to March 3, 2022 at 1:45 PM alleging recent receipt of a transcript that she needed to review before to deliver her ruling.

281.   On March 3, 2022, ROSEN continued her ruling to March 10, 2022 at 1:00PM alleging recent receipt of the transcript for the January 5, 2022 proceedings and informed there will be no more continuances as the December 16, 2021 hearing occurred over two (2) days and she is in receipt of two (2) transcripts.

282.   On March 10, 2022, ROSEN continued her ruling to 2:15PM of the same day, alleging she had a pre-trial and wanted to clear her case docket before to proceed; it was with intent to clear the courtroom of other public observers or witnesses prior to delivering her oral ruling.

283.   On March 10, 2022 at 2:15PM, ROSEN orally ruled on Francesco's resurrected and amended Motion to modify the Allocation Judgment that relied on the same fabrications from 2018 to 2019 that led to the invalid and expired "plenary" orders of protection and stated *inter alia* Vanessa simply "refused" to have parenting time for two and a half years to "beat the system". For Vanessa's Motion to Modify or Vacate the Child Support Order, she alleged she already ruled, with no order issued or a court date when said ruling occurred.  ROSEN stated her written order will issue to the

parties by March 11, 2022 or latest by March 14, 2022. No written order has issued.

284.  On March 10, 2022, ROSEN was proceeding on an oral petition of Francesco, for the fraudulent Child Support Order, with DIMITROVA requesting ROSEN force Vanessa to sell pre-marital asset – already subject to another extortion scheme by other third parties in concert with other judicial officers - to satisfy the unsubstantiated amount she claimed is owed, when Vanessa was kicked off the Zoom. Circa 5:30PM, Vanessa received a proposed continuation order from DIMITROVA, sent to ROSEN's electronic service address, that stated another court date on March 15, 2022 at 11:00AM for the "court's ruling on pending Child Support Financial Pleadings."

285.  On March 11, 2022, Vanessa filed a complaint against ROSEN with the Judicial Inquiry Board of Illinois; by April 12, 2022 the same board informed of its decision to close the complaint against ROSEN unable to disclose what, if anything, was done.

286.  On March 15, 2022, Vanessa contacted Circuit Court Clerk, Iris Martinez and Deputy Chief Clerks for Domestic Relations Division to request a copy of any orders entered on or after March 10, 2022 by ROSEN. After a month, a Circuit Court clerk responded to Vanessa's request with nothing on or since March 10, 2022 except a March 15, 2022 continuation order drafted by DIMITROVA for Francesco's unfiled petition, not part of the concluded hearing, and ROSEN's March 28, 2022 order denying Vanessa's request for issuance of a written order for the concluded December 16, 2021 hearing.

287.  ROSEN's March 28, 2022 order was on account of Vanessa's filed motion to request issuance of an order to permit her timely pursue legal remedies to which she is entitled, by law after years of deprivations. On March 28, 2022, DIMITROVA did not appear and after Vanessa is left waiting for over two (2) hours, ROSEN then ruled

there is no emergency for her to issue a written order for a hearing that concluded three (3) months prior and was conducted twelve (12) months after the Appellate Order mandated an "expeditious" hearing by the Circuit Court (see ¶ 225).

288. As of the filing of this federal complaint, Vanessa is not in receipt of a written order by ROSEN for the concluded hearing and her obstruction is with demonstrated intent to interfere with Vanessa's civil rights, to which there is no adequate remedy at law.

## V.     TIMELINE – State Child Support Proceedings – State Child Support Statute

### 6) Constitutional Violations – Defendants ROSEN, HARACZ, DIMITROVA, FALEN, EAGLESON

289. Vanessa incorporates paragraphs 192 to 197, as if fully set forth herein.

290. On December 7, 2019, DIMITROVA forwarded to Vanessa the alleged subpoena response of the CEO of the alleged employer company in the Child Support Order. The email states in relevant part: "We are not Vanessa's employer" with attachments that inform the alleged employer company was contracted by the Illinois pharmaceutical company to provide payment services to Vanessa's company. The total gross payout to Vanessa's company from the Illinois pharmaceutical company is one-third of what DIMITROVA asserted on December 3, 2019 and HARACZ used in the Child Support Order. Vanessa's gross income in 2019 is one-sixth of what DIMITROVA asserted, and HARACZ used in the Child Support Order.

291. The mistake in the Child Support Order was intentional to defraud and extort money from Vanessa; DIMITROVA never filed to correct. Instead, she coerced the alleged employer company to withhold the fraudulent Child Support Order amount from gross company-to-company payout to Vanessa's company. On information, the alleged employer company refused to participate in the fraudulent scheme.

292.  By December 13, 2019, Vanessa's contract for services terminated, after extension in October 2019, the original end date. The pharmaceutical company did not extend with knowledge their payment services provider, was being coerced into fraudulent and criminal activities by state court representatives.

293.  On December 16, 2019, Vanessa filed and served a motion to stay (enforcement of) the fraudulent Child Support Order informing *inter alia* of her lack of employment income, the fraudulent basis of the Child Support Order, part of the final judgment, on appeal under **Case 1-19-2454**. Said motion to stay was one of several dismissed by HARACZ in June 2020 during the Circuit Court Covid-19 shutdown, without notice to Vanessa. (see ¶ 212).

294.  Vanessa filed an ARDC complaint against DIMITROVA for the fabrication of her income and her extortion activities that repelled a well-established source of work for Vanessa. Consistent with all complaints Vanessa submits to the ARDC, the complaint against DIMITROVA was not investigated and closed.

295.  DIMITROVA went to the Illinois Department of Healthcare and Family Services ("HFS") and submitted the fraudulent Child Support Order for enforcement activities, under **Case 03703043** and there found an accommodating conspirator for her fraud.

296.  In Vanessa's March 2020 letter to HFS' Data Gathering Unit, she puts HFS on notice that it has improperly reduced the arrearage amount owed to her by Francesco, under the June 2017 child support order abated by HARACZ. For **Case 03703043**, Vanessa also put HFS on notice that the underlying Child Support Order is on appeal, fraudulent, and enclosed supportive documents including IRS documents.

297.  On March 4, 2020, Vanessa wrote to the Aurora CSS Regional Office, located at 280 East Indian Trial, Aurora, Illinois, 60505, assigned to manage **Case 03703043**,

and attached her 2019 W-2 statement, with several other attachments. In her letter, she states in relevant part:

> "The falsification of information in the child support of 2019 is why, amongst others, docket no. 2016D0009029 is currently on appeal and why the December 3, 2019 Uniform Order of Support is not enforceable, as based on intentional falsified information by the other parent's attorney to increase the child support payout to her client. I cannot afford an attorney. My request for some state aid in 2020 is pending as I am currently not employed or earning income."

298.   After the transmission to Aurora CSS Regional Office, Vanessa received a "Notice of Right to Request Modification Review" and consequently, on March 16, 2020, Vanessa wrote to HFS' Division of Child Support Services ("DCSS") Modification Review Team with mailing address PO Box 64900, Chicago, Illinois 60664 to request modification of the Child Support Order being enforced against her. Vanessa reiterated that the other parent's attorney, DIMITROVA, intentionally falsified income and employer data therein to defraud her, in concert with HARACZ.

299.   On April 4, 2020, the Aurora CSS Regional Office re-directed Vanessa to submit the same enclosures sent to them, to the Appeals Offset Unit, Data Gathering Unit with mailing address PO Box 19152, Springfield, Illinois, as their office will no longer be managing **Case 03703043**. Vanessa re-submitted, as directed, with her 2019 W-2 statement and other enclosures to request review of the Child Support Order.

300.   From April 2020, HFS was enforcing the Child Support Order with repeated information or knowledge it is fraudulent. Vanessa corresponded with HFS' Appeals Office to progress her appeal; at the same time, DIMITROVA filed motions in the Circuit Court for HARACZ to enforce the same fraudulent Child Support Order against Vanessa. Vanessa is simultaneously harassed by HFS and HARACZ.

301.   From December 2019, Vanessa's bid for employment is sabotaged by a public order

of protection against her, that defamed her as a criminal, soon joined in June 2020, by a warrant for her arrest that destroyed her background reports, as a minority woman of objectionable conduct/character, impeding her employment prospects.

302.  By July 2020, Vanessa is relying on unemployment benefits from the Illinois Department of Employment Security ("IDES") to help her survive. In the same time, DIMITROVA's subpoena to every bank across Illinois, including the one that services Vanessa's company yields nothing except: Vanessa's average monthly wage, in her September 24, 2019 financial affidavit, was overly optimistic relative to her actual earnings and Vanessa was fiscally destroyed/destitute.

303.  Nevertheless, in November 2020, DIMITROVA filed a motion to request HARACZ add suspension of Vanessa's driver's license, to his arrest warrant from months prior, to further harass Vanessa, alleging she is intentionally delinquent on the fraudulent Child Support Order. On January 6, 2021, HARACZ was set to proceed on suspending Vanessa's driver's license when her counsels (see ¶219) withdrew, without proper notice, seemingly dissatisfied that indigent Vanessa was not paying more attorneys' fees whiles they refused to file a motion to request the Circuit Court make Francesco pay Vanessa's legal fees. The conspiracy to misrepresent Vanessa as fiscally sound continued with counsels and Vanessa was left with no legal representation to defend against HARACZ' unhinged deprivations and abuses of her.

304.  By November 2020, HFS' Medical Management Unit informed it has denied Vanessa's request for medical coverage, through HealthCare.gov which redirected for state resources based on her lack of income from IRS sources. HFS' denial reason, despite access to IDES data and other data sources, is "<u>household income is more than the limit for this individual for this program</u>" to protect the criminal enforcement of

94

the fraudulent Child Support Order based on DIMITROVA's fraudulent assertion of Vanessa's income, rather than acknowledge other unbiased data sources informing of Vanessa's need for state assistance. HFS refused to reconsider, upon request, to continue the targeted discrimination and intentional deprivations of Vanessa.

305.   As aforementioned, on December 31, 2020, when the Illinois Appellate Court released its Memorandum Opinion and Order, it avoided the fraudulent Child Support Order, fabricated Vanessa was not present at the final dissolution proceedings and she never served exhibits to DIMITROVA, with intent to omit or divert from HARACZ ruling on the improper motion in *limine* that barred Vanessa's testimony and exhibits as pretext for the fraudulent and unilateral assertions of DIMITROVA.

306.   On December 19, 2020, Vanessa sent documentation in support of her second modification request to the HFS' DCSS Modification Team informing she is still unemployed; by December 31, 2020 HFS was in receipt and followed with a notice that Vanessa's driver's license will be suspended by January 18, 2021 if she did not immediately pay an unsubstantiated amount of owed support indicated therein.

307.   On February 25, 2021, Vanessa submitted a Freedom of Information Act ("FOIA") request to HFS' FOIA Officers after another HFS Appeals Hearing for **Case 03703043,** led by FALEN, stalled. Vanessa asked FALEN what it would take for HFS' to stop harassing her about the fraudulent Child Support Order; he informed Vanessa that the only way the harassments stops is for Vanessa to accept and pay the fraudulent child support amount. The only way it stops is to give in to the extortion.

308.   Pursuant to FOIA, Vanessa was entitled to a response to her FOIA request within five (5) days; HFS chose to involve its Assistant General Counsel, Sharon Shapiro, to impede the same and Vanessa did not receive the requested information for six (6)

weeks, and then on the morning of the next scheduled appeals hearing, on April 5, 2021, a partial submission with several of the information she requested omitted.

309. With no opportunity to get or review the (missing) information, HFS dismissed Vanessa's appeal of **Case 03703043**. Vanessa's request for reconsideration referencing the FOIA violations and her pending (second) request to HFS for modification of the fraudulent Child Support Order, was denied, in the same targeted and ongoing hinderance of any due process for Vanessa with HFS since March 2020.

310. Impeded in HFS and in the state appellate and Circuit Court by HARACZ and co-conspirators, Vanessa filed a verified petition for substitution of judge for cause ("Verified Petition for SOJ"), after the Appellate Court Mandate issued.

311. On May 10, 2021, Vanessa presented her Verified Petition for SOJ and gave HARACZ the opportunity to voluntarily recuse himself; HARACZ informed that recusing himself from the dissolution case will never happen.

312. Pursuant to local court rules in the Circuit Court, a Verified Petition for SOJ is heard the same day of presentment. For Vanessa, DICKLER did not enter the assignment order until days after the request for assignment and the hearing is set for May 20, 2021 before Hon. Matthew Link ("Judge Link"), on information also a former protégé of Ed Burke, spouse of Chief Justice of the state supreme court. In other words, with social links to HARACZ.

313. On May 20, 2021, on the record, with several observers present, Judge Link confirmed receipt of Vanessa's courtesy copies sent days prior and informed he read Vanessa's Verified Petition for SOJ several times. After oral arguments, he chose not to rule, alleging a need to review the pleading; on belief, for further *ex parte* communications with conspirators, including HARACZ.

314. For the May 20, 2021 hearing, Vanessa subpoenaed HANNIGAN and BOYD for testimonial evidence relative to one of several of the extrajudicial acts of HARACZ stated in Vanessa's Verified Petition for SOJ. HANNIGAN and BOYD, albeit served subpoenas, with an affidavit of service filed for both in the case docket, chose not to appear with intent to obstruct evidence corroborating the specified extrajudicial act.

315. On May 20, 2021, a Circuit Court clerk sent an email with an order attached, with no court stamp, stating Judge Link's findings: that Vanessa "failed to meet the burden to establish [HARACZ] demonstrated actual prejudice" and "failed to meet the burden to establish the probability of the risk of actual bias on the part of [HARACZ]" to deny her "motion to reconsider". No order was entered for the case to transfer back.

316. On May 25, 2021, the State Attorney's Office of Kimberly Foxx ("SAO") under assigned/handling attorney, Sandi Tanoue ("ASA TANOUE"), filed an appearance in the dissolution case for HFS with a Petition to Modify the Child Support Order ("State's Petition") requesting child support be reduced to the statutory $40 per minor child based on Vanessa's "change in circumstances". Said State Petition omitted the modification should be retroactive to March 2020, when HFS was first notified of the fraudulent order and "change in circumstances" to request review and modification.

317. On May 29, 2021, Vanessa filed and served a motion for Judge Link to modify his (unstamped) order to reflect his ruling was for her Verified Petition for SOJ, not a "motion to reconsider" and calendared for June 11, 2021. Vanessa re-noticed her motion to modify or vacate the Child Support Order, for the same date and served on Judge Link courtesy copies with several exhibits inclusive of her IRS Tax Return Transcripts, 2019 W-2 Statement, IDES unemployment statements, and concurrently served DIMITROVA and the SAO through the state's electronic filing system.

318. On June 11, 2021, Judge Link had knowledge of the fraud being perpetuated through the Child Support Order against Vanessa and did nothing. He informed the case must transfer back to HARACZ and ruled to modify his (unstamped) order to reflect he denied Vanessa's Verified Petition for SOJ so that the case transfers.

319. On June 16, 2021, Vanessa filed a Petition for Unrestricted Temporary Parenting Time (with the Appellate Mandate attached), calendared for June 30, 2021 and re-noticed her Motion to Quash The Writ of Body Attachment and Vacate Default Judgements (see ¶223), so her children are not used as bait to arrest her during parenting time. HARACZ did not rule; he continued Vanessa's Petition for Unrestricted Temporary Parenting Time to July 13, 2021 and the Motion to Quash the Writ of Body Attachment and Vacate Default Judgment, to two (2) months later, after he requested and Vanessa provided her domicile address.

320. Immediately after the June 30, 2021 court date, the surveillance started at Vanessa's disclosed domicile and later, on record, DIMITROVA boldly professed to spearheading several and recited Vanessa's vehicle license plate number. Her stalking/surveillance of Vanessa is excused by HARACZ as "necessary" without informing why it is necessary for the attorney of a former (abusive) spouse to be stalk and surveil a single, minority woman at her domicile. DIMITROVA's unwarranted and disturbing behavior is excused by HARACZ and overlooked by ROSEN, as is the risk to Vanessa's safety. For ROSEN, Vanessa's refusal to share her domicile, in open court with DIMITROVA and Francesco present is "for no reason."

321. On June 28, 2021, Vanessa issued a subpoena for testimonial evidence from the CEO of the alleged employer in the fraudulent Child Support Order. In a conspiracy to obstruct the hearing to modify or vacate the Child Support Order, DIMITROVA

did not appear, and HARACZ defends her absence claiming he is sure she has other things to do. The CEO of the alleged employer company is not allowed to testify, and the hearing is continued to August 20, 2021, never to occur. HARACZ recused for bias, on August 3, 2021, and apologized to DIMITROVA and Francesco for leaving.

322.   On June 30, 2021, ASA TANOUE, ASA SMITH and ASA DZURIK appeared before HARACZ over Zoom proceedings and the State's Petition is also continued to August 20, 2021, never to occur.

323.   On August 16, 2021, after HARACZ's recusal, Vanessa re-noticed her request to modify or vacate the Child Support Order to September 17, 2021, the alleged earliest availability of ROSEN. Vanessa served the same courtesy copies and exhibits prior sent to Judge Link, to ROSEN, with ASA TANOUE and DIMITROVA copied. As aforementioned (in ¶241), on September 17, 2021, ROSEN misrepresented she was not in receipt of any file-stamped motions, with intent to obstruct the hearing and pretend no knowledge of the clear fraud being perpetuated with the Child Support Order.

324.   On August 20, 2021, ASA TANOUE informed Vanessa need not to appear in court as the State's Petition is continued to October 25, 2021. Vanessa found from an officer in the Office of the Secretary of State of Illinois that her driver's license was set for suspension on October 26, 2021, a day *after* the continued court date, informing of the premeditated outcome of the State's Petition on the continued court date.

325.   Ahead of October 25, 2021, Vanessa detailed in writing to ASA TANOUE, HFS' duplicitous efforts, with a petition to modify the fraudulent Child Support Order whiles acting to harass and extort the fraudulent amount from her. ASA TANOUE informed SAO only represents HFS with no power to stop their harassments of Vanessa.

326. From January 2021 to November 2021, Vanessa received notices of more criminal enforcement activities by HFS of the fraudulent Child Support Order, with ensuing damages to her. Some notable ones are as follows:

- On June 3, 2021, after the State's Petition is filed, HFS' Collection and Asset Recovery Unit issued a <u>Notice of Child Support Lien</u> with an unsubstantiated five-figure amount informing in relevant part that, "in accordance with Section 10-25.5 of the Illinois Public Aid Code (305 ILCS 5/10-25.5) and 89 Illinois Administrative Code 160.70*** the Illinois Department of Healthcare and Family Services claims a lien on monies that are or will be in [Vanessa's] possession as a result of any lawsuits, settlements or awards payable to the non-custodial parent", specifically Vanessa still subject to an invalid and vacated "plenary" order will still be extorted of any benefits from any lawsuit.

- By August 20, 2021, Vanessa is denied issuance of her renewed American passport by the United States Department of State informing that the Department of Health and Human Services ("HHS") was notified by the Office of the Secretary of State of Illinois, under 42 U.S.C. 652 (k) that she is "in arrears of child support in an amount <u>determined by the statute.</u>" Thus, until the arrearage is satisfied, "Section 51.60(a)(2) of the Title 22 of the Code of Federal Regulations" allows the United States Department of State not to issue Vanessa her renewed American passport, with accumulating damages caused by her inability unable to travel because of a fraudulent child support amount "determined by [violating] the statute" and her due process rights.

- On August 27, 2021, ASA TANOUE caused to be entered a continuance

order for the State's Petition to October 28, 2021. The same day, the Office of the Secretary of State issued a <u>Notice of Suspension</u> of Vanessa's driver's license, effective on October 26, 2021, two (2) days prior to the continued court date, that informed of the premeditated outcome on the State's Petition.

- On September 15, 2021, the US Department of Treasury, informed that all of Vanessa's meager tax refund was applied to her "child support debt" communicated by HFS' Data Gathering Unit; the same HFS unit Vanessa mailed several documents to in 2020 (see ¶299 herein) including her 2019 W-2 statement, and thus with knowledge the Child Support Order is fraudulent.

- By September 30, 2021, the same HFS' Data Gathering Unit sent a <u>Notice of Intent to Pursue Collection Remedies</u>, alleging the past due child support amount stands at an unsubstantiated amount per the Child Support Order.

- On October 14, 2021, the Office of the Secretary of State of Illinois issued a <u>Notice/Order to Rescind</u>, its August 27, 2021 notice to suspend Vanessa's license, on information following Vanessa's disclosures (see ¶325)

- By November 19, 2021, ahead of the December 16, 2021 hearing, the Office of the Secretary of State of Illinois issued another <u>Notice of Suspension</u> of Vanessa's driver's license, effective on January 18, 2022. Since January 18, 2022, Vanessa cannot drive with accumulating damages for the deprivation based on the fraudulent Child Support Order obstructed from modification.

327. The State's Petition is also continued to the December 16, 2021 hearing, at the October 28, 2021 continued court date with ASA TANOUE, ASA SMITH, DIMITROVA and Vanessa present. No hearing occurred on December 16, 2021

though ASA PAARLBERG was present (see ¶ 271); by January 5, 2022 ROSEN pretends there is no State Petition pending nor the State Attorney's Office in the case.

328.    By the March 15, 2022 court date (see ¶ 284), ASA VANZOEREN appeared before ROSEN over Zoom proceedings for the SAO and is queried by ROSEN if there is any pending State Petition in the case. ASA VANZOEREN informed there is not; no order exists that addressed the State Petition continued to the December 16, 2021 hearing.

329.    After the March 15, 2022 proceedings, Vanessa is informed by ASA SMITH that ASA PAARLBERG, the previous handling attorney, "is no longer with" the State Attorney's Office, ASA VANZOEREN was only temporarily covering the call for ROSEN's court room. Consequently, in a reversal of ASA VANZOEREN's previous assertion (see ¶ 328), the State's Petition is still pending, and the State Attorney's Office will not proceed until in receipt of a written order from ROSEN on Vanessa's motion to modify or vacate the Child Support Order.

330.    As aforementioned (see ¶ 288), no written order of ROSEN has issued for her oral ruling for the concluded hearing, with malicious intent to impede, hinder, obstruct or defeat, by any manner possible, the due course of justice on the fraudulent Child Support Order and the ongoing deprivations of Vanessa's familial rights, not just with parenting time with her minority children but with other family members ex-US.

331.    The State Attorney's Office appears obstructed and powerless against ROSEN and the state appellate court and supreme court appear to be in league with ROSEN bent upon abrogation of Vanessa's protected rights, as with HARACZ. There is no adequate remedy at law to stop the ongoing and deliberate constitutional deprivations under color of state law with accumulating damages to Vanessa, to force for her utter ruin.

## VI.    CLAIMS FOR RELIEF

332.    According to the 42 U.S.C. §1983 Causation Doctrine:

> "An official causes a constitutional violation if he sets into motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights (internal citation omitted). Therefore, "[an] official satisfies the personal responsibility required of § 1983 if he acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [his] discretion or with [his] knowledge or consent (internal citation omitted)." *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000) (Emphasis Added)

333.    According to the prevailing opinion on absolute immunity:

> "[S]tate judges have absolute immunity with respect to damages, [] not with respect to prospective relief" *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970 (1984)

> Guardian *ad litems* do not have absolute immunity for conduct that is <u>not</u> closely related to or outside of their [quasi-judicial] guardian *ad litem* duties.

**A.    <u>COUNT I</u>:  PROSPECTIVE DECLATORY RELIEF THAT VANESSA HAS SUFFERED AND CONTINUES TO SUFFER FROM RACIAL ACTS OF TERROR AND A CONSPIRACY TO INTEFERE WITH HER CIVIL RIGHTS THAT DEPRIVES HER OF SUBSTANTIVE DUE PROCESS RIGHTS TO FAMILIAL ASSOCIATION, PRIVACY, INTEGRITY, AND AUTONOMY PROTECTED BY THE I, V and XIV AMENDMENTS OF THE UNITED STATES CONSTITUTION**

334.    Vanessa incorporates paragraphs 1 through 333 as if fully set forth herein.

335.    Vanessa brings this count pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985 against all named defendants hereunder.

336.    The government of the United States exists to serve its citizens, not to misuse the powers vested in it by its citizens to harass, abuse, terrorize or deprive them of protected rights, in violation of the US Constitution, and then insulate itself from accountability.

337.    Freedom, a protected ideal of the US Constitution, cannot flourish when those with the greatest power face the least or no accountability when they misuse their powers.

338.    Vanessa has been subjected to and continues to be subject to racial acts of terror, as defined under the Anti-Lynching Bill, under color of state law, in the conspiracy to interfere with her civil rights, with each act violating her constitutional rights. Vanessa, as the single, minority woman referenced hereafter, sets forth these claims:

- Multiple police visits to the domicile of a single, minority woman in a predominantly white suburb based on multiple false allegations of white actors, including a former spouse, is a racial act of terror.

- Repeat surveillance of a single, minority woman at known domiciles, by white actors, including a former spouse, for no legal reason, is a racial act of terror.

- A warrant to arrest a single, minority woman for her elimination by white actors, including a former spouse, to kidnap or cause the kidnapping of her minority children, subject to her legal custody and care, is a racial act of terror.

- The recruitment of white actors, a mob, against a single, minority woman, by white official(s) endorsing instrument(s) of terror, is a racial act of terror.

- A warrant to arrest a single, minority woman, for no crime, to jail her and to extort money/property from her to compensate white actors who kidnapped or caused the kidnapping of her minority children, is a racial act of terror.

- The incarceration of a single, minority woman, by white actors, to deprive her of her legal right to possess or hold on to the US passports of her minority children, subject to her legal custody and care, is a racial act of terror.

- The incarceration of or hunt to incarcerate a single, minority woman, by white actors, to deprive her of due process, in a court of law, is a racial act of terror.

- The incarceration of or hunt to incarcerate a single, minority woman, by white

actors, on fabricated offenses she absconded with her minority children, subject to her legal custody and care and resident at her known domicile, is a racial act of terror.

- The labeling of a single, minority woman, by white actors, as a delinquent with US Immigration Services, to criminalize her, is a racial act of terror.

- The withholding of the US passport of a single, minority woman framed as a delinquent with US Immigration Services and US Department of State, is a racial act of terror.

- The repeat kidnapping of the minority children of a single, minority woman, for punishment and retaliation for disclosing (a history of) abuse at the hands of white actors, including a former spouse, is a racial act of terror.

- An interminable conviction of a single, minority woman with an invalid Order of Protection by white actors working in concert with a white man, a former spouse, based on fabricated offenses, is a racial act of terror.

- The repeat prosecution of a single, minority woman for the same fabricated offenses by white actors, conspiring to deny her due process of law, in a court of law, is a racial act of terror.

- The repeat deprivation of a single, minority woman of her minority children, her parental rights, by white actors, for no legal reason, is a racial act of terror.

- The repeat obstruction of justice for a single, minority woman by white actors conspiring to insulate themselves and a white man, a former spouse, from prosecution of crimes done against her and her children is a racial act of terror.

- The repeat silencing and/or intimidation of those who know and/or attempt to

105

prevent the commission of one or more racial acts of terror against the single, minority woman and her minority children is a racial act of terror.

339.    The defendants who stand accused and sued under this count for **directly** causing and/or acting in concert with other (un)named defendants to directly cause one or more of the foregoing deliberate racial acts of terror against Vanessa, under color of state law, with the deprivations of her constitutionally protected rights occurring at their discretion and/or with their knowledge:

- Defendant **HARACZ**
- Defendant **ROSEN**
- Defendant **TREW**
- Defendant **DIMITROVA**
- Defendants **TROWBRIDGE** and **SAFE TRAVELS**
- Defendant **REID**
- Defendant **PLATT**
- Defendant **DOMAN**
- Defendant **ULLMAN**
- Defendant **CASKEY**
- Defendant **CASELLI**
- Defendant **BOYD**
- Defendant **FALEN**
- Defendant **HANNIGAN**
- Defendant **YU**
- Defendants **LAVIN**, **COGHLAN** and **PUCINSKI**

340.    The defendants who stand accused and sued under this count for **indirectly** causing and/or acting in concert with other named defendants who cause(d) one or more of the foregoing racial acts of terror against Vanessa, under color of state law, with the deprivations of her constitutionally protected rights occurring with their knowledge:

- Defendant **DICKLER**

- Defendant **AUSLANDER**

- Defendant **BERSSON**

- Defendant **SALVI**

- Defendant **WEISS-KUNZ**

- Defendant **ALTMAN**

- Defendant **HUGHES**

- Defendant **SCHLESINGER**

- Defendant **MEYERS**

- Defendant **LIPINSKI**

341.    This count seeks the following relief as authorized under 28 U.S.C. §§ 2201-2202:

- Prospective declaratory relief that Vanessa has suffered from and continues to suffer from a conspiracy to interfere with her civil rights by named defendants that subjected her to racial acts of terror, under color of state law.

- Prospective declaratory relief that Vanessa has been deprived of and continues to be deprived of her substantive due process rights and her liberty interests to familial association, privacy, integrity and autonomy as protected under the United States Constitution.

- The actions and conduct of the named defendants caused injury to Vanessa.

**B. COUNT II: PROSPECTIVE DECLATORY RELIEF THAT VANESSA HAS SUFFERED AND CONTINUES TO SUFFER FROM THE CONSPIRACY TO INTENTIONALLY INTEFERE WITH HER CIVIL RIGHTS TO DEPRIVE HER OF THE MERITS OF THE FOREIGN JUDGMENT AND THE AGREED ALLOCATION JUDGMENT, PROTECTED UNDER STATE AND FEDERAL LAWS**

342.    Vanessa incorporates paragraphs 1 through 341 as if fully set forth herein.

343.    Vanessa brings this count pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985 to sue all named defendants hereunder.

344.    The foreign judgment, from Switzerland, is subject (a) to recognition in the US under the Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters; and (b) to enforcement in Illinois by filing under the Illinois Enforcement of Foreign Judgments Act.

345.    The agreed Allocation Judgment, entered pursuant to the Illinois Marriage and Dissolution of Marriage Act is subject (a) to recognition in the US under 42 U.S.C. §1981 which grants all persons within the jurisdiction of the United States the same right in every state to make and enforce contracts/agreements, to sue and to the full and equal benefit of all laws as is enjoyed by white citizens; and (b) to enforcement in state cases by filing per the Illinois Code of Civil Procedure.

346.    In this count, Vanessa is suing:

- Defendants who knew of the existence of the foreign judgment and knew enforcement in Illinois required filing, which they intentionally impeded, by coercion, threats and/or acts of omission, in interference with Vanessa's civil rights to deprive her of the merits of the same.

- Defendants who knew of the existence of the Allocation Judgment and knew enforcement in a state case required a filing, which they intentionally impeded,

by coercion, threats and/or acts of omission, in interference with Vanessa's civil rights to deprive her of the merits of the same.

347. Defendant **SALVI**:

- Knew of the foreign judgment, during his assignment in Lake County.

- Acted in excess of his jurisdiction to conspire with other defendants to impede, hinder, obstruct or defeat the due course of justice for Vanessa relative to the filing of the foreign judgment and its enforcement.

- Deprived Vanessa of protections and privileges afforded to her by the foreign judgment.

- Interfered with Vanessa's civil rights under contrived and protracted proceedings at the expense of her prolonged suffering and that of her children.

348. Defendant **AUSLANDER**:

- Knew of the foreign judgment, from August 2015 to July 2016, the period of appointment as guardian *ad litem* in Lake County.

- Acted in excess of his [quasi-judicial] duties to prevent by coercion and intentional omission the filing of the foreign judgment.

- Deprived Vanessa of protections and privileges afforded to her by the foreign judgment, whiles impeding/suppressing reported incidents of abuse.

- Injured Vanessa and her minority children under contrived and protracted state proceedings, in concert with other defendants, for his fiscal gain at the expense of her and her minority children's prolonged pain and suffering.

349. Defendant **ALTMAN**:

- Knew of the foreign judgment, from August 2015 to October 2015, the period

of representation of Vanessa in Lake County.

- Failed to file the foreign judgment for enforcement in Lake County.

- Deprived Vanessa of protections and privileges afforded to her by the foreign judgment, whiles impeding/suppressing reported incidents of abuse.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for her fiscal gain at the expense of their pain and suffering.

350. Defendant **BERSSON**:

- Knew of the foreign judgment, from October 2015 to March 2016, the period of representation of Vanessa in Lake County.

- Knew of the (agreed) Allocation Judgment, from September 2016 to August 2017, the period of (resumed) representation in Lake and Cook County.

- Failed to file the foreign judgment for enforcement in Lake and Cook County.

- Failed to file the Allocation Judgment for enforcement in Cook County.

- Deprived Vanessa of protections and privileges afforded to her by the foreign judgment and the Allocation Judgment, whiles impeding/suppressing reported incidents of abuse.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for his fiscal gain at the expense of their pain and suffering.

351. Defendant **WEISS-KUNZ**:

- Knew of the existence of the foreign judgment, from April 2015 to September 2015, the period of representation of Francesco in Lake County.

- Knew of the (agreed) Allocation Judgment, from July 2016 to February 2017, the period of (resumed) representation of Francesco in Lake and Cook County.

- Acted in concert with other defendants to impede the filings for enforcement of the foreign judgment and Allocation Judgment, whiles impeding or suppressing reported incidents of abuse.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for her fiscal gain at the expense of their pain and suffering.

352.   Defendant **SCHLESINGER**:

- Knew of the foreign judgment, from March 2016 to May 2016, the period of representation of Vanessa in Lake County.

- Failed to file the foreign judgment for enforcement in Lake County.

- Deprived Vanessa of protections and privileges afforded to her by the foreign judgment whiles impeding/suppressing reported incidents of abuse.

- Acted in concert with AUSLANDER to silence and oust a mandated reporter.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for his fiscal gain at the expense of their pain and suffering.

353.   Defendant **HUGHES**:

- Knew of the existence of the foreign judgment, from May 2016 to August 2016, the period of representation of Vanessa in Lake County.

- Failed to file the foreign judgment for enforcement in Lake County.

- Deprived Vanessa of protections and privileges afforded to her by the foreign

judgment whiles impeding/suppressing reported incidents of abuse.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for her fiscal gain at the expense of their pain and suffering.

354. Defendant **VEGA**:

- Knew of the foreign judgment and the (agreed) Allocation Judgment, during the period of his assignment in Cook County, under Case 2016 D 9029.

- Acted in excess of his jurisdiction in a conspiracy with other defendants to impede, hinder, obstruct or defeat the due course of justice for Vanessa relative to the filing of the agreed Allocation Judgment.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa under contrived and protracted proceedings at the expense of her prolonged suffering and that of her children, for fiscal gain.

355. Defendant **REID**:

- Knew of the foreign judgment and (agreed) Allocation Judgment, from February 2017 to December 2018, the period of his appointment as guardian *ad litem* in Cook County.

- Acted in excess of his [quasi-judicial] duties to prevent by coercion and intentional omission the filings of the foreign judgment and agreed Allocation Judgment.

- Deprived Vanessa of protections and privileges afforded to her by the foreign judgment, in concert with other defendants.

- Injured Vanessa and her minority children under contrived and protracted state

proceedings for his fiscal gain at the expense of her and her minority children's prolonged pain and suffering.

356.    Defendant **MEYERS**:

- Knew of the foreign judgment and (agreed) Allocation Judgment, from August 2017 to October 2017, the period of representation of Vanessa in Cook County

- Failed to file the foreign judgment and Allocation Judgment in Cook County.

- Deprived Vanessa of protections and privileges afforded to her by the foreign judgment and the Allocation Judgment, whiles impeding/suppressing reported incidents of abuse.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for her fiscal gain at the expense of their pain and suffering.

357.    Vanessa is also suing those who intentionally deprived her of the equal protection and privileges afforded to her by the foreign judgment and the agreed Allocation Judgment, even after filing and incorporation into the divorce decree.

358.    Defendant **HARACZ**:

- Knew of the foreign judgment and the (agreed) Allocation Judgment, during the period of his assignment in Cook County, under Case 2016 D 9029.

- Acted in excess of his jurisdiction in a conspiracy with other defendants to undermine the filed Allocation Judgment with an invalid "plenary" order of protection, and to impede/suppress/cover-up reported incidents of abuse.

- Acted in reckless, deliberate disregard of Vanessa's constitutional rights protected under the agreed Allocation Judgment and in concert with others

impeded "like punishment, pains, penalties" to Francesco when he violated the same.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa under contrived and protracted proceedings at the expense of her prolonged suffering and that of her children, for fiscal gain.

359.   Defendant **AUSLANDER**:

- Knew that he was acting in his individual capacity, from April 2017 onwards, when he inserted himself into the proceedings in Cook County.

- Was an imposter who lacked standing with intent to interfere and did interfere with Vanessa's civil rights to undermine the Allocation Judgment.

- Injured Vanessa and her minority children again under another contrived and protracted state case in pursuit of fiscal gain and dominance.

360.   Defendant **REID**:

- Knew that he was acting in his individual capacity, from December 12, 2018 onwards, when he inserted himself into state proceedings in Cook County.

- Was an imposter who lacked standing with intent to interfere and did interfere with Vanessa's civil rights to undermine the Allocation Judgment.

- Injured Vanessa and her minority children under contrived and protracted state proceedings for fiscal gain and dominance.

361.   Defendant **DIMITROVA**:

- Knew of the foreign judgment and the (agreed) Allocation Judgment, from April 2017 to May 2019 and from August 2019 to-date, the period of (resumed) representation of Francesco in Cook County.

114

- Acted in concert with other defendants to impede the filings for enforcement of the foreign judgment and agreed Allocation Judgment, whiles impeding/suppressing reported incidents of abuse and then proceeded to tamper with and alter the foreign judgment, once ruled as enrolled in the case.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for her fiscal gain at the expense of their pain and suffering.

362. Defendant **PLATT**:

- Knew of the foreign judgment and (agreed) Allocation Judgment, both filed in Cook County prior to her appointment as Child Representative from January 2019 – July 2019.

- Acted in concert with other defendants to undermine the Allocation Judgment, and to suppress or cover-up reported incidents of abuse.

- Acted in deliberate disregard for Vanessa's constitutional rights as protected under the agreed Allocation Judgment and in concert with others to impede "like punishment, pains, penalties" to Francesco when he violated the same.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings.

363. Defendant **ULLMAN**:

- Knew that she was acting in her individual capacity, from May 2019 when she inserted herself into state proceedings in Cook County.

- Lacked standing and jurisdiction acted with intent to interfere and did interfere

115

with Vanessa's protected rights under the (agreed) Allocation Judgment.

- Intentionally injured Vanessa, in concert with Francesco and other defendants for fabricated offences that led to her incarceration and stripped her of her minority children's US passports in violation of the Allocation Judgment.

364. Defendant **DOMAN**:

- Knew of the filed foreign judgment and (agreed) Allocation Judgment, from February 2019 to May 2019, the period of representation of Vanessa in Cook County.

- Acted in concert with other defendants to undermine the Allocation Judgment, and to suppress or cover-up reported incidents of abuse.

- Acted in deliberate disregard for Vanessa's constitutional rights as protected under the agreed Allocation Judgment and in concert with others to impede "like punishment, pains, penalties" to Francesco when he violated the same.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa and her children subjected to contrived and protracted proceedings, for his fiscal gain at the expense of their pain and suffering.

365. Defendant **TROWBRIDGE**

- Knew SAFE TRAVELS' Agreement, as a requirement to define and provide parenting time, in concert with the "plenary" order of protection would cause constitutional deprivations and interfere with Vanessa's civil rights.

- Acted in concert with HARACZ to undermine the (agreed) Allocation Judgment with the "plenary" order of protection, and to suppress or cover-up reported incidents of abuse via SAFE TRAVELS' surveillance services.

116

- Interfered with Vanessa's civil rights in a conspiracy with other defendants, to force, intimidate or threaten her to agree to the constitutional deprivations via SAFE TRAVELS' Agreement to allow for more deprivations of Vanessa.

366.  Defendant **ROSEN**:

- Knew of the foreign judgment and the (agreed) Allocation Judgment, during the period of her assignment in Cook County.

- Acted in excess of her jurisdiction in a conspiracy with other defendants to undermine the Allocation Judgment with the invalid, vacated, and expired "plenary" order of protection, and to abet the suppression/cover-up of reported incidents of abuse via SAFE TRAVELS' surveillance or other such services.

- Acted in reckless disregard of Vanessa's constitutional rights protected by the Allocation Judgment and in concert with other defendants to impede, hinder, obstruct or defeat the due course of justice for Vanessa to (criminally) insulate other defendants for their intentional acts and deprivations of Vanessa.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa under contrived and protracted proceedings at the expense of her prolonged suffering and that of her children.

367.  Defendants **LAVIN, COGHLAN and PUCINSKI**

- Knew of the foreign judgment, the agreed Allocation Judgment and SAFE TRAVELS' Agreement during the period of their assignment to review Cases 1-19-1466, 1-19-1904, 1-19-2454 and 1-19-1544, related to Case 2016 D 9029

- Acted in excess of their jurisdiction to conspire with other defendants to deliberately undermine the (agreed) Allocation Judgment with the invalid (and

now expired) "plenary" Order of Protection.

- Intentionally defeated the due course of justice for Vanessa, in the state appellate court for the invalid "plenary" Order of Protection to deprive Vanessa of the merits of the agreed Allocation Judgment incorporated in the divorce decree and to insulate implicated defendants from prosecution.

- Interfered with Vanessa's civil rights in a conspiracy with other defendants which injured Vanessa under contrived and protracted appellate proceedings at the expense of her prolonged suffering and that of her children.

368. Since 2014 when Vanessa relocated to the Illinois, she has been deprived of any significant period where she has been afforded the merits of the foreign judgment or the (agreed) Allocation Judgment without obstructions. The actions of all defendants sued in this count deprived her of the merits of both judgments, by impeding them from filing and then impeding them from enforcement and then complete defacement.

369. Over one (1) year since the Appellate Mandate issued, the Circuit Court has not found it expedient to issue any ruling in compliance to the mandate or to issue the written order for the concluded hearing on December 16, 2021.

370. Defendant ROSEN's willful abdication of her judicial duties to deny Vanessa a written order for the concluded December 16, 2021 hearing is with willful intent and to cause and is causing interference with Vanessa's civil rights. There is no adequate remedy at law for a state court judge who is bent on abrogation of the federally protected rights of a party and protected from chastisement by the state appellate court, the state supreme court, the Judicial Inquiry Board and thus a law unto herself.

371. All Defendants in this Count caused Vanessa pecuniary losses, loss of consortium,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses on account of their actions or lack thereof.

372.  This count seeks the following relief as authorized under 28 U.S.C. §§ 2201-2202:

- Prospective declaratory relief that Vanessa has suffered and continues to suffer from the conspiracy to interfere with her civil rights to deprive her of the merits of the foreign judgment.

- Prospective declaratory relief that Vanessa has suffered and continues to suffer from the conspiracy to interfere with her civil rights to deprive her of the merits of the agreed Allocation Judgment.

- Prospective declaratory relief that Vanessa is deprived and continues to be deprived by LORI ROSEN of a written order for the concluded December 16, 2021 hearing and the April 22, 2021 issued Appellate Mandate in direct interference with and violation of Vanessa's substantive due process rights.

**C. <u>COUNT III</u>: PROSPECTIVE INJUNCTIVE RELIEF TO ENJOIN DEFENDANTS FROM FURTHER RACIAL ACTS OF TERROR, UNDER COLOR OF STATE LAW, AND FROM DEPRIVING VANESSA OF THE EQUAL PROTECTION OF THE LAWS AFFORDED TO HER BY JUDGMENTS PROTECTED UNDER STATE AND FEDERAL LAWS.**

373.  Vanessa incorporates paragraphs 1 through 372 as if fully set forth herein.

374.  Vanessa brings this count to sue all named defendants under Counts I and II for actions under color of state law, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985.

375.  The Supreme Court takes a functional approach to judicial immunity. The touchstone for a judicial act is the performance of the function of resolving disputes between parties or adjudicating private rights within the boundaries of the law.

376.  Absolute judicial immunity does not protect an official from acts that are (a) in

excess of their jurisdiction, specifically non-judicial acts which are ministerial, administrative, enforcement or policymaking in nature; and (b) in the clear absence of jurisdiction where the official's actions look "like that of a party or investigator [rather] than a judge" *Kowalski v. Boliker*, 893 F.3d 987, 998 (7th Cir. 2018) A judge is amenable to suit for non-judicial acts. *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978))

377.  When a state judge makes *sua sponte* rulings, said judge (under both state and federal law) is acting in the clear absence of jurisdiction as no longer acting in an "adjudicatory capacity" but as a party to rule on their own motions in violation of the parties' procedural due process rights. Said *sua sponte* rulings or orders are void under both state and federal law and subject to federal injunctive relief to enjoin from further such actions that cause constitutional deprivations and continues to cause the constitutional deprivations of Vanessa.

378.  When a state court judge relies on self-constituted rules to adjudicate private rights, said judge is not only acting in a policymaking capacity, in the clear absence of jurisdiction, but the practice creates a forum for unlawful and intentional discriminatory acts, including racial acts of terror, where parties are denied due process of law under the written laws of the land. The practice of relying on unwritten self-constituted rules cannot be affirmed as they cause constitutional injuries and subject to federal injunctive relief to enjoin from further such actions, which can be and is used to lynch parties like Vanessa, in state courts, to perpetuate hate crimes against them.

379.  When a state judge conspires with others to interfere with the civil rights of a party, said judge (under both state and federal law) is acting in a clear absence of jurisdiction

as said actions are unlawful and impose personal discriminatory biases of the adjudicator on parties, in violation of the law which requires an adjudicator to be impartial and prohibits biases based on race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status. Interferences with civil rights, especially those that are racially motivated with the goal to injure a party, are subject to federal injunctive relief to enjoin from further such actions that cause deprivations.

380. When a state judge refuses to execute a key function of their judicial role - issue a written order for his/her ruling, in a conspiracy to interfere with the civil rights of a party, said judge (under both state and federal law) is acting in a clear absence of jurisdiction. Written orders are integral to the judicial process, and to the adjudicator's role to ensure no ambiguity exists as to what was ruled on and to protect the rights of parties to either seek enforcement or seek other legal remedies to which they are entitled by law. Willful negligence of that duty for the sole goal to defeat the due course of justice is sanctionable conduct and subject to federal injunctive relief to enjoin from further such actions that cause deprivations and continue to deprive Vanessa.

381. "The very purpose of §1983 was to interpose the federal courts between the States and the people, as guardian of the people's federal rights, to protect the people from unconstitutional action under color of state law, whether the action be executive, legislative or judicial." *Mitchum v. Foster*, 407 U.S.225, 242 (1972))

382. 42 U.S.C. §1983 was enacted by Congress because "state courts were being used to harass and injure individuals, either because the state courts were powerless to stop the deprivations or were in league with those who were bent upon abrogation of federally protected rights." *Mitchum Id*, at 54

121

383.   Pursuant to Fed. R. Civ P. 65, Vanessa states:

- As a result of the conspiracy to interfere with her civil rights, Vanessa continues to be denied the merits of existing judgments in the case and her substantive due process rights continue to be violated.

- As a result of LORI ROSEN refusal to issue a written order for the December 16, 2021 concluded proceeding and the April 22, 2021 issued Appellate Mandate, Vanessa is being irreparably injured as her substantive due process rights continue to be violated.

- Vanessa is likely to prevail on the merits of her claim to the basic right to a written order from a state court and her basic rights to familial association, autonomy, privacy, integrity and liberty in the absence of any legal basis to continue to denying Vanessa her minority children and vice-versa.

- There is no adequate remedy at law.

384.   This count seeks the following relief as authorized under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ P. 65:

- A Preliminary and Permanent Injunction against all named defendants to cease and desist from further racial acts of terror in violation of Vanessa's civil rights;

- A Preliminary and Permanent Injunction against all named defendants in a conspiracy to interfere with Vanessa's civil rights and to violate her substantive due process rights with unlawful and discriminatory actions.

- A mandatory injunction that LORI ROSEN enter and issue a written order for the December 16, 2021 concluded proceedings and the April 22, 2021 issued

Appellate Mandate as Vanessa and her minority children are deprived of their vested rights under the United States Constitution and the Illinois Marriage and Dissolution of Marriage Act.

**D. <u>COUNT IV</u>: PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF TO ENJOIN DEFENDANTS FROM FUTHER INFRINGING ON VANESSA'S PROTECTED PARENTAL RIGHTS FOR INFORMATION CONCERNING HER MINOR CHILDREN, AS PROTECTED UNDER FEDERAL AND STATE LAWS**

385.    Vanessa incorporates paragraphs 1 through 384 as if fully set forth herein.

386.    Vanessa brings this count to sue named defendants for intentional deprivations related to her denied or lack of access to information about her minority children, under color of state law, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985.

387.    From August 22, 2019, Vanessa has not only been deprived of her substantive due process rights, as a parent, to familial relations with her minority children, but she continues to be denied information concerning their well-being and safety since entry of the invalid "plenary" Order of Protection due to HARACZ *sua sponte* restrictions.

388.    The expiration of the "plenary" Order of Protection has changed nothing for Vanessa; the expired, invalid and vacated "plenary" Order of Protection is still being used as operative against her in the state court and by other third parties.

389.    The Family Educational Rights and Privacy Act ("FERPA") and the Illinois Student Records Act afford parents or guardians certain rights with respect to their children attending state schools, including to access their educational records and the right to inspect and copy their educational records within fifteen (15) school days of the day the School District receives a request for access by the parent.

390.    The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") is

federal law with intent to protect sensitive patient health information from being disclosed, with the Privacy Rule issued by the US Department of Health and Human Services (HHS) to allow disclosure to covered entities, which includes parents.

391.    Defendant **HANNIGAN**:

- Has knowledge of or access to knowledge in Hawthorn School District #73 of the agreed Allocation Judgment, birth certificates of the minority children to know Vanessa is their mother, thus a "parent".

- Has knowledge that the "plenary" Orders of Protection were not only invalid on entry but were vacated and expired on September 9, 2021.

- Has acted and continues to act in willful disregard of the Family Educational Rights and Privacy Act, the Illinois Student Records Act and the Illinois Domestic Violence Act to intentionally deprive Vanessa access to all of her minority children's educational records and information.

- Has acted and continues to act in willful disregard of the Family Educational Rights and Privacy Act, the Illinois Student Records Act and the Illinois Domestic Violence Act to impede, hinder, obstruct or defeat the due course of justice, in concert with other defendants, to prevent discovery of information informing of reported, disclosed, known or suspected incidents of abuse of the minority children and to insulate from prosecution for actions or lack thereof.

392.    Defendant **MARTINEZ**:

- Has knowledge of or access to knowledge in Chicago Public Schools District that Vanessa is the mother of the minority children, thus a "parent".

- Has knowledge that the "plenary" Orders of Protections were not only invalid

on entry but were vacated and expired on September 9, 2021.

- Has acted and continues to act in willful disregard of the Family Educational Rights and Privacy Act, the Illinois Student Records Act and the Illinois Domestic Violence Act to intentionally deprive Vanessa access to all of her minority children's educational records and information.

- Has acted and continues to act in willful disregard of the Family Educational Rights and Privacy Act, the Illinois Student Records Act and the Illinois Domestic Violence Act to impede, hinder, obstruct or defeat the due course of justice, in concert with other defendants, to prevent discovery of information informing of reported, disclosed, known or suspected incidents of abuse of the minority children and to insulate from prosecution for actions or lack thereof.

393. Defendant **YU**:

- Has knowledge of or access to information in Northshore University HealthSystem that Vanessa is the mother of the minority children, thus a "parent".

- Has knowledge that the "plenary" Orders of Protection were not only invalid on entry but were vacated and expired on September 9, 2021.

- Has acted and continues to act in willful disregard of the HIPPA Privacy Rule and the Illinois Domestic Violence Act to intentionally deprive Vanessa access to all of her minority children's medical records and information.

- Has acted and continues to act in willful disregard of the HIPPA Privacy Rule and the Illinois Domestic Violence Act to impede, hinder, obstruct or defeat the due course of justice, in concert with other defendants, to prevent

discovery of information informing of reported, disclosed, known or suspected incidents of abuse of the minority children and to insulate from prosecution for actions or lack thereof.

394.    Defendants **HARACZ** and **ROSEN:**

- Have knowledge of the Family Educational Rights and Privacy Act, the Illinois Student Records Act, HIPPA Privacy Rule and the Illinois Domestic Violence Act and that the "plenary" Orders of Protection expired.

-  Acted and continue to act in willful disregard of Family Educational Rights and Privacy Act, the Illinois Student Records Act, the HIPPA Privacy Rule, and the Illinois Domestic Violence Act to impede, hinder, obstruct or defeat the due course of justice, in concert with other defendants, to prevent discovery of information informing of reported, disclosed, known or suspected incidents of abuse of the minority children and to insulate from prosecution for actions or lack thereof.

395.    Vanessa is denied access to her minority children's information by named defendants for the primary purpose of self-insulating from potential prosecution for (un)conscious actions that prevents or prevented the discovery of an abused or neglected child under their jurisdiction, a criminal offense that also deprives Vanessa and her minority children of the equal protection of or equal privileges under the laws.

396.    Vanessa seeks prospective relief as there is no adequate remedy at law when the very state officials who should enforce the law are abrogating it to self-insulate.

397.    This count seeks the following relief as authorized under 28 U.S.C. §§ 2201-2202:

- Prospective declaratory relief that Vanessa has been deprived and continues

to be deprived of protected rights, as a parent, to have access to educational records and information of her minority children.

- Prospective declaratory relief that Vanessa has been deprived and continues to be deprived of her protected rights, as a parent, to have access to medical records and information of her minority children.

- A Preliminary, and Permanent Injunction against named defendants continuing to violate Vanessa's substantive due process rights to access the medical and educational records of her minority children.

- A mandatory injunction that PETER HANNIGAN, PEDRO MARTINEZ and EMILY YU provide or direct access to all of the minority children's educational and health information records to Vanessa, without alterations/exclusions, pursuant to the vested interests of Vanessa and the minority children under the United States Constitution, as American citizens.

**E. <u>COUNT V</u>: PROSPECTIVE DECLARATORY RELIEF THAT VANESSA HAS SUFFERRED AND CONTINUES TO SUFFER FROM A CONSPIRACY TO INTEFERE WITH HER CIVIL RIGHTS PURSUANT TO THE FRAUDULENT AND UNCONSTITUTIONAL EXERCISE OF THE STATE CHILD SUPPORT STATUTE AND INJUNCTIVE RELIEF TO ENJOIN DEFENDANTS FROM FURTHER INTEFERENCE AND UNCONSTITUTIONAL DEPRIVATIONS UNDER STATE LAW**

398. Vanessa incorporates paragraphs 1 through 397 as if fully set forth herein.

399. Vanessa brings this count to sue named defendants for intentional deprivations related to the fraudulent and unconstitutional exercise of the state's child support statute, 750 ILCS 5/505 pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985.

400. Federal law makes it illegal for an individual to willfully fail to pay child support as ordered by a state court. Consequently the way a state official insulates a favored

party from federal child support enforcement, via the Child Support Recovery Act (CSRA), is to have no state ordered support obligations, i.e. no written order.

401.    In Lake County, Francesco had parenting time, through temporary orders and the agreed Allocation Judgment. No state child support order was entered for his support obligations so there was no way to deter his non-payment or to prosecute him. The defendants that acted in concert, to defraud Vanessa of receiving child support, per the state statute, are: Defendants **SALVI**, **AUSLANDER**, **ALTMAN**, **WEISS-KUNZ**, **BERSSON**, **SCHLESINGER** and **HUGHES.**

402.    In Cook County, Francesco had parenting time, through temporary orders and the agreed Allocation Judgment, once filed. The state child support order was entered, in violation of the statute, with *sua sponte* reservations by Defendant **VEGA**, which were all written off by Defendant **HARACZ** on December 3, 2019, acting in concert with Defendant **DIMITROVA** to defraud Vanessa of receiving owed and retroactive child support and any contributions to child-related expenses, per the state statute.

403.    The fraudulent scheme of Defendants SALVI, VEGA, HARACZ, DIMITROVA, AUSLANDER, ALTMAN, WEISS-KUNZ, BERSSON, SCHLESINGER, HUGHES had the goal to insulate and continues to insulate a white man from prosecution for willful failure to pay child support, per state statute, as part of a fraudulent exercise.

404.    From August 22, 2019, Vanessa has no parenting time on account of the August 1, 2019 *ex parte* order of protection extended until the September 9, 2019 "plenary" Orders of Protection, both entered by Defendant HARACZ.

405.    On December 3, 2019, a state child support order was promptly entered by Defendant HARACZ, in violation of statute - Vanessa's actual gross is inflated by

600% and her employer asserted – after she is barred from testifying based on Defendant DIMITROVA's false allegation that she never received her trial exhibits.

406. The case for testimonial evidence by Vanessa with the (fabricated) lack of her documentary exhibits was lost on HARACZ; the conspiracy to defraud Vanessa meant she had to be impeded from testifying and Defendant DIMITROVA could then assert and inflate her income, in violation of the statute that requires consideration of the financial resources of the parent and the parent's ability to pay, to enter a support order.

407. From December 3, 2019, Vanessa continues to be harassed to pay a state child support order based on income she never earned and still does not earn, with an employer she never worked for whiles denied parenting time with her children, to-date.

408. The appellate court panel, with **COGHLAN** in league with Defendant HARACZ, to abrogate Vanessa's federally protected rights, neglected or ignored her appeal of the fraudulent Child Support Order and the state supreme court decline to review.

409. The Illinois Department of Healthcare and Family Services, joins the fray of conspirators for enforcement activities and more deprivations of Vanessa, where Vanessa is impeded on her every request to modify the fraudulent Child Support Order.

410. The State Attorney's Office of Kimberly Foxx states it will not proceed on a request to modify the fraudulent Child Support Order until in receipt of a written order from Defendant **ROSEN** for the December 16, 2021 concluded hearing. Defendant ROSEN refuses to issue a written order for the December 16, 2021 concluded hearing and so the stalemate ensues *ad infinitum* with no relief or avenue for relief for Vanessa.

411. There is no adequate remedy at law for Vanessa subject to a fraudulent scheme where the foregoing named defendants are working in concert to impede, hinder,

obstruct and defeat, in any manner, the due course of justice in state courts/ departments

412.  This count seeks the following relief as authorized under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ P. 65:

- Prospective declaratory relief that Vanessa has suffered and continues to suffer from the unconstitutional and fraudulent exercise of the state of Illinois' child support statute.

- A Preliminary and Permanent Injunction against all named defendants violating Vanessa's constitutional rights and causing the unconstitutional deprivations of Vanessa through the fraudulent and unconstitutional exercise of the state of Illinois' child support statute.

- A mandatory injunction that LORI ROSEN issue the final written order for the December 16, 2021 concluded hearing.

**F. <u>COUNT VI</u>: COMPENSATORY DAMAGES AND COSTS, PURSUANT TO 42 U.S.C. §1986 and 42 U.S.C. §1988, FROM DEFENDANTS WHO FAILED TO PREVENT THE WRONGDOINGS PERPETUATED AGAINST VANESSA AND CAUSED THE CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. §1983**

413.  Vanessa incorporates paragraphs 1 through 412 as if fully set forth herein.

414.  Vanessa brings this count against defendants having knowledge that any of the wrongs conspired to be done, under 42 U.S.C. § 1985, are about to be committed and having power to prevent or aid in preventing the commission, neglected or refused to do so and for each of the wrongful acts committed, are liable to Vanessa for <u>damages</u> caused by the wrongful acts, pursuant to 42 U.S.C. § 1986.

415.  Vanessa also brings this count against all defendants subject to the enforcement of the provisions of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. §

1985 and 42 U.S.C. § 1986, for <u>costs</u>, including any attorneys' fees, allowed for judicial officers who by an act or omission taken in their judicial capacity, acted in excess of their jurisdiction (or in the clear absence of jurisdiction), pursuant to 42 U.S.C. § 1988.

416.    Defendant **HARACZ** knew and was part of the wrongs conspired to be done against Vanessa, in concert with named and unnamed conspirators. He had the power to stop himself and prevent or aid in preventing the commission and neglected or refused to do so. He knew his willful neglects and refusals, including a stubborn insistence to repeatedly interfere with Vanessa's due process rights will cause and did cause her constitutional deprivations with ongoing damages to her career, her income, her reputation with the invalid Orders of Protection, warrants for her arrest and damages therefrom including the fraudulent exercise of the state's child support statute.

417.    Defendant **ROSEN** knew and was part of the wrongs conspired to be done against Vanessa, in concert with named and unnamed conspirators, to divert culpability of the wrongful acts of those who preceded her onto Vanessa, harmed by them, and to preserve the fraudulent exercise of the state's child support statute. She had the power, to prevent or aid in preventing the commission of the same, upon assignment, with a simple no to the existing conspirators, but neglected or refused to do so leading to more damages and constitutional deprivations for Vanessa and her minority children.

418.    Defendant **TREW** knew and was part of the wrongs conspired to be done against Vanessa, in concert with Defendant ROSEN to refuse address, on November 17, 2021, of Vanessa's request for an order complying with the Appellate Mandate that issued on April 22, 2021 and knew her refusal in addition to the willful negligence of her co-conspirators will lead to more damages and constitutional deprivations of Vanessa.

419.    Defendant **DICKLER** knew and was part of the wrongs conspired to be done against Vanessa, when she assigned Defendant ROSEN, as a replacement to Defendant HARACZ. She had the power to prevent or aid in preventing the commission of the wrongs by judges in her division but neglected or refused to do so. Her willful neglects and refusals, since she was notified by Vanessa in July 2019, has led to more damages and constitutional deprivations of Vanessa and her minority children.

420.    Defendant **LAVIN** knew and was part of the wrongs conspired to be done against Vanessa when he refused her requests to intervene and protect against Defendant HARACZ' demonstrated intent to impede her appeals of the invalid plenary Orders of Protection. He knew his *sua sponte* dismissal, in concert with Defendant HARACZ' wrongful act, will lead to more damages and constitutional deprivations. He had the power to prevent or aid in preventing the commission of more wrongs by ROSEN for the same invalid Order of Protection but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

421.    Defendant **COGHLAN** knew and was part of the wrongs conspired to be done against Vanessa when she, along with other defendants, impeded Vanessa's appeals of the invalid "plenary" Orders of Protection and of the fraudulent Child Support Order. She knew her *sua sponte* dismissal, in concert with Defendant HARACZ' wrongful act, will lead to more damages and constitutional deprivations. She had the power to prevent or aid in preventing the commission of more wrongs on review of the final judgment but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

422.    Defendant **PUCINSKI** knew and was part of the wrongs conspired to be done

against Vanessa when she, along with other defendants, impeded her appeals of the invalid Orders of Protection. She knew her *sua sponte* dismissal, in concert with Defendant HARACZ' wrongful act, will lead to more damages and constitutional deprivations. She had the power to prevent or aid in preventing the commission of more wrongs, including a request to reconsider, but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

423. Defendant **INGERSOLL** knew of the wrongs conspired to be done against Vanessa when she was requested to deter a DCFS investigator's testimonial evidence, on December 16, 2021, for a report showcasing the obstruction of an investigation for a reported incident of abuse or neglect of the minority children. She has and/or the office she represents, has the power to prevent or aid in preventing the commission of further obstructions related to reported incidents of abuse or neglect of minor children, but she chose to participate in the conspiracy to prevent discovery of an abused or neglected child to insulate other persons, named and unnamed defendants from prosecution by the office she represents, leading to or abetting more damages and constitutional deprivations of Vanessa and her minority children.

424. Defendant **FALEN** knew and was part of the wrongs conspired to be done against Vanessa when he received information, directly and indirectly, from Vanessa of her income, employer information and her fiscal state at the time of entry of the child support order and her state of (un)employment. He had the power to progress Vanessa's appeals in HFS to stop the harassments and damages from illicit enforcement activities but refused or neglected to do so and impeded her appeal with HFS, in a conspiracy with others to obstruct any relief to her for the fraudulent Child Support Order, leading

to more damages and constitutional deprivations of Vanessa.

425. Defendant **EAGLESON** knew or should have reasonably known of the wrongs conspired to be done against Vanessa, as the Division of Child Support Enforcement reports into her, including Defendant FALEN. She knew or should have reasonably known of the fraudulent and unconstitutional exercise of the Illinois Child Support Statute as the ease of commission against Vanessa, informs of a well-embedded fraudulent practice that allows HFS to extort federal support dollars for illicit state enforcement activities. She had the power to prevent or aid in preventing the commission of the actions against Vanessa and neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa.

426. Defendant **YU** knew or should have reasonably known of the wrongs conspired to be done, as the Health Information Management Unit, reports into her. Her team had knowledge of the conspirator who served the invalid Order of Protection on her team right around the time of a report of suspected abuse or neglect of the minority children following their primary care visit. She had knowledge Vanessa requested access and copies to her minority children's health information to determine the well-being of her children and to protect them. She had the power to prevent or aid in preventing the commission of the wrongful acts of others trying to prevent discovery of an abused or neglected child to insulate from prosecution and chose to abet their acts, leading to more damages and constitutional deprivations of Vanessa and her minority children.

427. Defendant **HANNIGAN** knew or should have reasonably known of the wrongs conspired to be done, as Hawthorn School District #73 and its schools are under his jurisdiction. He knew Hawthorn School District #73 failed, twice, to prevent the

134

kidnappings of the minority children from its schools and he and his team chose to participate in the wrongful acts, with no legal obligation or right to transfer custody of the minority children, who were submitted to their care, by Vanessa, for the limited purpose of providing educational services. He had knowledge his team transferred custody of the minority children to a person they knew or heard or suspected of abuse. He had the power to prevent or aid in preventing the commission of more wrongful acts, including direct his team to provide access to all educational records and information to Vanessa but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

428.  Defendant **MARTINZZ** knew or should have reasonably known of the wrongs conspired to be done, as Chicago Public Schools are under his jurisdiction. He or his delegate had knowledge Vanessa made a request for educational records and the invalid Orders of Protection expired. He knew or should have reasonably known Vanessa was obstructed from receiving the same by school personnel working in concert with other defendants for the object of preventing discovery of an abused or neglected child. He had the power to prevent or aid in preventing the commission of the wrongful acts to release all of the requested educational records but neglected or refused to do so leading to more damages and constitutional deprivations of Vanessa and her minority children.

429.  Defendant **CASKEY** knew of the planned kidnapping of the minority children on January 14, 2019. He knew that the Vernon Hills Police Department Officers had a sense of the wrong conspired to be done against Vanessa, and the illicit nature of the instrument being used, the *ex parte* immediate relocation order of January 11, 2019 and sought his legal counsel. He has the legal training to determine what elements are

required in a valid order relocating minor children out of the jurisdiction of Illinois versus an order being used as an instrument of terror. He had the power to prevent or aid in preventing the commission of the kidnapping by not endorsing the *ex parte* order and investigate the circumstances leading up to it and the discomfort of the Vernon Hills Police Officers on the ground asked to enforce it, to protect the minority children involved but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

430. Defendant **CASELLI** knew of the wrongs conspired to be done against Vanessa, on receipt of an *ex parte* emergency Order of Protection that alleged Vanessa relocated out of Illinois with the minority children. He had knowledge (a) Vanessa still resided in Vernon Hills; (b) the minority children were still registered to attend schools in Hawthorn School District #73. He had the power to prevent or aid in preventing the commission of the kidnapping but chose to participate in the wrongful act and recruited Defendant BOYD. He knew or should have reasonably known the harm to Vanessa and her minority children subjected to a kidnapping based on false allegations and he, as a representative of Vernon Hills Police Department, neglected or refused to protect the parties being harmed, to insulate white actors from prosecution leading to more damages and constitutional deprivations of Vanessa and her minority children.

431. Defendant **BOYD** knew of the wrongs conspired to be done against Vanessa, on receipt of an *ex parte* emergency Order of Protection that alleged Vanessa relocated out of Illinois with the minority children. He had knowledge the minority children were still registered and attending their schools in Hawthorn School District #73. He had the power to prevent or aid in preventing the commission of the kidnapping but chose to

participate in the wrongful act set in motion by other defendants. He knew and saw the terror of the minority children who fought his removal and he neglected or refused to protect them. He knew or should have reasonably known the harm to Vanessa and her minority children subjected to a kidnapping based on false allegations and he, as a representative of Vernon Hills Police Department, neglected or refused to protect the parties being harmed, to insulate white actors from prosecution leading to more damages and constitutional deprivations of Vanessa and her minority children.

432.    Defendant **DIMITROVA** knew of and has been part of all the wrongs conspired to be done against Vanessa in Cook County, from the two (2) kidnappings, the invalid Orders of Protection, the warrants for Vanessa's arrest, the incarceration based on her false allegations of relocations outside of the US, the fraudulent exercise of the child support statute, the obstructions of the investigations by DCFS for reported incidents of abuse/neglect of the minority children, the obstructions of Vanessa's access to the educational and health information to prevent discovery of abuse or neglect, the conspiracy to interfere with all of Vanessa's appeals and to insulate white actors, including herself, from prosecution. She had the power to prevent or aid in preventing the commission of the wrongful acts but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

433.    Defendant **TROWBRIDGE** knew of and has been profiting from similar wrongs as those conspired to be done against Vanessa in Cook County, with the unconstitutional surveillance of parents, through Defendant SAFE TRAVELS, absent findings of abuse or endangerment. He had knowledge the conspiracy would fuel his fiscal gain at the expense of the constitutional deprivations of Vanessa and her minority

children. He had the power to prevent or aid in preventing the commission of the same by waiving the unilateral appointment by Defendant HARACZ and/or waiving the adhesion contract and/or make a report against state actors misusing the Illinois Domestic Violence to cause constitutional deprivations of others, including Vanessa and her minority children, but neglected or refused to do so and so for each of the wrongful acts committed, where Vanessa was denied her minority children under the pretext of a "plenary" Order of Protection, with parenting time subject to his definition and supervision through SAFE TRAVELS, he is liable to Vanessa for all damages caused from the wrongful acts, that with reasonable diligence, he could have prevented.

434.    Defendant **SAFE TRAVELS** has been part of the conspiracy to commit similar wrongs against parents in Cook County and relies on the knowledge that the wrongs conspired to be done, are about to be committed, as part of its business model, for profitability or viability. SAFE TRAVELS' perpetual and unilateral adhesion contract is the wrongful act that preys on parents' need for their children and coerces agreement for the constitutional deprivations and parents who object or require revision for a bilateral agreement that protects them are punished with no parenting time. SAFE TRAVELS is liable for all the damages caused to Vanessa by conditioning her parenting time to its unilateral and mandatory adhesion contract with no end date.

435.    Defendant **RICE** had knowledge of the kidnappings of the minority children from their schools in Hawthorn School District #73 and knew of the wrongs conspired to be done against Vanessa, after the in-chamber discussions with Defendants HARACZ and DIMITROVA. She had the power to prevent or aid in preventing the commission of the wrongful acts, including submit a complaint or other preventative actions but

neglected or refused to do so and so for each of the wrongful acts committed, where Vanessa has been deprived of her minority children under a non-terminating invalid Order of Protection entered during her representation, she is also liable for the damages caused to Vanessa and the constitutional deprivations to her and her minority children.

436.    Defendant **DOMAN** had knowledge of the kidnapping of the minority children from their school in Hawthorn School District #73 and knew of the wrongs conspired to be done against Vanessa, upon her return from Florida with the minority children. He had the power to prevent or aid in preventing the commission of the wrongful acts but neglected or refused to do and chose to participate in the conspiracy to criminalize Vanessa and insulate white actors, including HARACZ, leading to more damages and constitutional deprivations of Vanessa and her minority children.

437.    Defendant **PLATT** knew of and was part of the wrongs conspired to be done against Vanessa, upon her return from Florida with the minority children. She had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so and chose to participate in the conspiracy to criminalize Vanessa and insulate white actors, including HARACZ, leading to more damages and constitutional deprivations of Vanessa and her minority children.

438.    Defendant **ULLMAN** knew of and was part of all the wrongs conspired to be done against Vanessa when she inserted herself into the state proceedings. She had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so and chose to participate in the conspiracy to criminalize Vanessa with fabricated offenses to insulate white actors, including HARACZ, leading to more damages and constitutional deprivations of Vanessa and her minority children.

439.    Defendant **LIPINSKI** was part of the wrongs conspired to be done against Vanessa in Cook County, during the December 16, 2021 hearing. She had the power to prevent or aid in preventing the commission of the wrongful acts of altering the record of what transpired but neglected or refused to do, contributing to the ongoing damages and constitutional deprivations of Vanessa and her minority children.

440.    Defendant **VEGA** knew of and was part of the wrongs conspired to be done to against Vanessa in Lake County. He had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected/refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

441.    Defendant **REID** knew of and was part of the wrongs conspired to be done to against Vanessa in Cook County. He had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so leading to more damages and constitutional deprivations of Vanessa and her minority children.

442.    Defendant **MEYERS** knew of and was part of the wrongs conspired to be done to against Vanessa in Cook County. She had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so leading to more damages and constitutional deprivations of Vanessa and her minority children.

443.    Defendant **AUSLANDER** knew of and was part of the wrongs conspired to be done to against Vanessa in Lake and Cook County. He had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so leading to more damages and constitutional deprivations of Vanessa and her minority children.

444.    Defendant **BERSSON** knew of and was part of the wrongs conspired to be done to

against Vanessa in Lake and Cook County. He had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so leading to more damages and constitutional deprivations of Vanessa and her minority children.

445.    Defendant **WEISS-KUNZ** knew of and was part of the wrongs conspired to be done to against Vanessa in Lake and Cook County. She had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

446.    Defendant **HUGHES** knew of and was part of the wrongs conspired to be done to against Vanessa in Lake and Cook County. She had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

447.    Defendant **ALTMAN** knew of and was part of the wrongs conspired to be done to against Vanessa in Lake County. She had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her children.

448.    Defendant **SCHLESINGER** knew of and was part of the wrongs conspired to be done to against Vanessa in Lake County. He had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected or refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

449.    Defendant **SALVI** knew of and was part of the wrongs conspired to be done to against Vanessa in Lake County. He had the power to prevent or aid in preventing the commission of the wrongful acts that followed but neglected/refused to do so, leading to more damages and constitutional deprivations of Vanessa and her minority children.

450.    Vanessa has suffered irreparable emotional harm due to not being able to mother her and be with her own children, whom she birthed and took care off, as their primary caregiver, from infancy until their traumatic kidnappings in 2019.

451.    Vanessa has suffered irreparable harm to her career, her employment prospects, lost income and the economic future that would enable her to support the dreams and talents of her children, destroyed by eight (8) years and counting in a state court swamp that refuses to release her and her children so they can heal and live their lives.

452.    Vanessa seeks compensatory damages and losses in an amount not less than $500,000 for each year of her life bound, tortured and terrorized in the state courts by defendants conspiring to interfere with her civil rights and interfering with her civil rights to cause relentless constitutional deprivations that are ongoing. At least sixty-five (65%) of the damages allocated to licensed attorneys and the rest to non-attorneys.

453.    Vanessa also seeks costs, including any reasonable attorneys' fees she may incur to defend this Complaint when it proceeds to a jury trial.

## VII.    PRAYER FOR RELIEF

WHEREFORE, VANESSA WEREKO respectfully request that this Court enter the following judgments and awards on behalf of Vanessa:

(a) Prospective Declaratory Judgment in her favor for Counts 1, II, IV and V.

(b) Emergency, Temporary, Preliminary and Permanent Injunction in her favor for

   Counts III, IV and V.

(c) Compensatory relief, for costs and damages, in her favor for Count VI.

(d) Such other relief as this Court deems just and equitable.

## VIII.   DEMAND FOR JURY TRIAL

WHEREFORE, VANESSA WEREKO respectfully request that this Court:

(e) Demand a jury trial.

Dated:  April 26, 2022

RESPECTFULLY SUBMITED:

/s/ Vanessa Wereko
VANESSA WEREKO
675 Lakeview Pkwy #5035
Vernon Hills, IL 60061
Main No.: 847-637-7142
Email: werekovb@me.com

## VERIFICATION

I, VANESSA WEREKO, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.
2. I have personal knowledge of the facts and allegations, including those set out in the foregoing Verified Complaint for Declaratory, Injunctive and Compensatory Relief, and if called on to testify I would competently testify to the matters stated herein.
3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning the entire subject matter are true and correct.  28 U.S.C. § 1746.

Executed on April 26, 2022.

/s/ Vanessa Wereko
**VANESSA WEREKO**
675 Lakeview Pkwy #5035
Vernon Hills, IL 60061
Main No.: 847-637-7142
Email: werekovb@me.com

# EXHIBIT "A"

## SAFE TRAVELS CHICAGO, LLC

(5 Pages)

From: Brad Trowbridge brad@bradtrowbridge.com

Subject: Safe Travels

Date: September 13, 2019 at 5:36:03 PM

To: Francesco Potenza fpotenza1@gmail.com, VANESSA WEREKO werekovb@me.com, tania@dimitrovalaw.com, Andrea D-541-11 Rice andrea@whdivorceattorney.com

---

All

I am the Director of Safe Travels. I received a referral order from Judge Haracz. I also got a call from Mr. Potenza. As I explained to Mr. Potenza, we currently only have space available on Sundays. I also have attached an Intake Form, Agreement, and a Frequently Asked Questions sheet.

Please let me know if you have any questions.


Thanks
Brad


**Brad Trowbridge**

**The Law Offices of Bradley R. Trowbridge**

**3257 N. Sheffield Suite 104**

**Chicago, IL 60657**

**P: 773-784-9900**

**E: brad@bradtrowbridge.com**


**PRIVACY AND CONFIDENTIALITY NOTICE**

The information contained in this communication is confidential and may be legally privileged. If you are not the intended recipient you are notified that any disclosure, copying, distribution or taking action based on the contents is strictly prohibited. If you received this communication in error, please immediately notify us at (773) 784-9900.



Intake.pdf
92 KB



FAQs.pdf
126 KB



Agreement.pdf
193 KB

# SAFE TRAVELS CLIENT AGREEMENT

By signing this Agreement, you acknowledge that you read, understand, and agree to be bound by the terms of this Agreement.

1. Safe Travels supervisors will provide services per the terms of a court order. However, Safe Travels reserves the right to deny or terminate services for any reason Safe Travels' staff deems necessary.

2. Initiating Services: Services begin with an intake interview of each party and each child of the parties. The intake fee for the intake interview process is $250, must be paid in advance, and is non-refundable. If the case is accepted by Safe Travels, supervised parenting time is scheduled.

3. Parenting Time Rules:

A. Parenting time is scheduled based on the availability of the supervisor, the parents, and the child(ren). The supervisor decides the location and start time of parenting time based on that information;

B. Clients are charged $75 per hour for supervised parenting time for one parent and one child, and $15 per hour for each additional child. Parenting time must be scheduled for a minimum of two hours, but it can be longer if Safe Travels staff is available. All supervised parenting time must be paid in advance of the scheduled parenting time. Parenting time must be canceled by email at info@safetravelschicago.org. If the parenting time is canceled by either parent by email 24 hours in advance, the payment is returned. There is no refund for any parenting time canceled less than 24 hours in advance of the scheduled parenting time, or for any parenting time session missed, except in the case of a child's illness. In such cases, if a doctor's note is provided to Safe Travels, the payment for the supervised parenting time affected by the illness is returned. There also is no "make up" time. If either parent is late for the start of parenting time, the parenting time still ends at the scheduled time;

C. The supervised parent must pay for all costs of a supervisor's admission into an event or entertainment establish;

D. Safe Travels staff may be available to provide services during holidays. Check for availability and rates;

E. Safe Travels will cancel or end any parenting time session if the parent—in the opinion of the supervisor—appears to be under the influence of a substance, may pose a physical or emotional risk to a child, or behaves erratically. As such, no parent is allowed to discuss with a child the litigation or the other parent in a derogatory manner. In addition, no parent is allowed to discuss litigation or the other parent during the parenting time;

F. An adult must accompany the child(ren) to the designated exchange location. Exchanges of the child(ren) are coordinated so the parties do not interact with one another;

G. No weapons are allowed to be in the possession of anyone during the supervised parenting time. No physical discipline shall be used by anyone participating in supervised parenting time. Verbal threats, vulgar or abusive language directed toward anyone present during supervised visitation is not permitted. Any threats of physical violence to anyone present during the supervised parenting time, or any implied threat of kidnapping, will be taken seriously and will result in summoning of law enforcement officers;

H. Only parties identified by court order are allowed to be present during supervised parenting time. No additional family members, significant others, or friends are allowed to be present unless they are listed by name on the court order;

I. The supervisor will try to be as discreet as possible to allow the supervised parent to have a relaxed experience with his/her child(ren). However, all dialogue between the parent and the

child(ren) must be loud enough for the supervisor to hear. The supervisor must be able to see the child(ren) at all times. If the parent does not adhere to the rules of supervised parenting time outlined herein, the supervisor will terminate the parenting time immediately;

J.  The supervised parenting time is not confidential. A brief written report is provided to the court and all attorneys of record after each supervised parenting time session. A supervisor also may be called to testify about what he/she observed or heard during supervised parenting time;

K.  Supervisors are unarmed. They are not trained nor expected to intervene in moments of danger to anyone participating in supervised parenting time. A guaranty that no harm will occur during such court ordered supervised parenting time through Safe Travels is neither inherent nor implied, and while every precaution short of physical intervention will be taken to secure the child(ren) or adult's safety, it cannot be guaranteed. In the event of an emergency, child(ren) may be transported to a safe place until such time as an appropriate custodian can be contacted; and

L.  Safe Travels reserves the right to amend this Agreement in writing if it determines additional safeguards are needed for any particular case.


_____        _____
Parent                                          Date


_____        _____
Parent                                          Date


_____        _____
Safe Travels Staff                              Date

# FAQs about *SAFE TRAVELS*

**What is *Safe Travels?*** *Safe Travels is a private agency that provides supervised parenting time as ordered by the Cook County, Illinois courts.*

**Who supervises the parenting time at *Safe Travels?*** *Every supervisor at Safe Travels has earned, at a minimum, a Master's degree in social work, education, or a similar field of study. They also have had training in important areas, including child development, domestic violence, and substance abuse. They are trained to notice subtle reactions in children that the average parenting time supervisor may not notice.*

**Where does supervised parenting time occur?** *It can take place anywhere except a private home. It can take place in Safe Travels' office, the park, a museum, the zoo, a restaurant, an arcade, or almost anywhere else. However, the specific location is set by Safe Travels based on the date and availability of supervisors.*

**What fees are associated with *Safe Travels'* services?** *There is a non-refundable intake fee of $250 for every case. The intake includes interviewing each parent and each child. If the case is accepted, the supervised parenting time session fee is $75 per supervised parenting hour for one parent and up to two children. It is $90 per supervised parenting hour for one parent and more than two children. Each session is 2-3 hours.*

**When are fees due?** *The intake fee is paid at the time of the intake. All parenting time sessions must be paid 48 hours in advance of the scheduled parenting time.*

**What is *Safe Travels'* cancellation policy?** *If the parenting time session is canceled by either parent by email 24 hours in advance, the payment is returned or applied to the next session. There is no refund for any parenting time canceled fewer than 24 hours in advance of the scheduled parenting time session or for any parenting time session missed. There also is no "make up" time. If either parent is late for the start of a session, the session still ends at the scheduled time.*

**What are *Safe Travels'* rules?** *Each parent will be required to sign Safe Travels' Agreement. The rules are contained in the Agreement. Most importantly, Safe Travels will cancel or end any parenting time session if the parent—in the opinion of the supervisor— appears to be under the influence of a substance, may pose a physical or emotional risk to a child, or behaves erratically. As such, no parent is allowed to discuss with a child the litigation, the judge, the attorneys, or the other parent in a derogatory manner. No parent is allowed to interrogate a child about the other parent or encourage a child to reveal information about the other parent.*

**Will *Safe Travels* submit a report?** *Safe Travels will submit a short, general report to the court and the attorneys of record after each session.*

**Will *Safe Travels* supervisors testify in court?** *No. By accepting services from Safe Travels, each parent waives his/her right to call any person affiliated with Safe Travels to testify.*

**Is *Safe Travels* available on holidays?** *It's possible. It depends on the availability of supervisors and the number of clients already scheduled. Ask about the fees for such sessions in advance.*