# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **VANESSA WEREKO**, in her individual capacity<br>　　　Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **HON. LORI ROSEN**, Associate Judge in Cook County, | ) | |
| | ) | |
| **HON. DAVID E. HARACZ**, Associate Judge in Cook County, | ) | **Case No. 1:22-cv-02177** |
| | ) | |
| **HON. RAUL VEGA,** Retired Judge in Cook County, | ) | **Judge: DOW** |
| | ) | |
| **HON. MARY S. TREW**, Associate Judge in Cook County | ) | **Magistrate: COLE** |
| | ) | |
| **HON. GRACE G. DICKLER**, Judge in Cook County, | ) | |
| | ) | **Demand for Jury Trial** |
| **KATHLEEN P. LIPINSKI**, Licensed Court Reporter, | ) | |
| | ) | |
| **HON. JOSEPH V. SALVI**, Associate Judge in Lake County, | ) | |
| | ) | |
| | ) | |
| **HON. TERRENCE J. LAVIN**, Appointed Justice in the Appellate Court of Illinois, | ) | |
| | ) | |
| | ) | |
| **HON. MARY ELLEN COGHLAN**, Appointed Justice in the Appellate Court of Illinois, | ) | |
| | ) | |
| | ) | |
| **HON. AURELIA MARIE PUCINSKI**, Elected Justice in the Appellate Court of Illinois, | ) | |
| | ) | |
| **SARAH E. INGERSOLL**, Assistant Attorney General, | ) | |
| | ) | |
| **THERESA A. EAGLESON,** Director of the Illinois Department of Healthcare and Family Services, | ) | |
| | ) | |
| **RICHARD FALEN,** Supervisor of Appeals, Illinois Department of Healthcare and Family Services, | ) | |
| | ) | |
| **EMILY YU**, Director of Health Information Management, NorthShore University HealthSystem, | ) | |

1

| | |
|---|---|
| **PETER HANNIGAN**, Superintendent of Hawthorn School District #73, | ) ) | **Case No. 1:22-cv-02177** |
| | ) | |
| **PEDRO MARTINEZ,** Superintendent of Chicago Public Schools, | ) ) | **Judge: DOW** |
| | ) | |
| **RUSSELL CASKEY**, Assistant State Attorney, | ) | **Magistrate: COLE** |
| | ) | |
| **ROBERT CASELLI**, Officer, Vernon Hills Police Dept. | ) | |
| | ) | **Demand for Jury Trial** |
| **ADAM BOYD**, Officer, Vernon Hills Police Dept. | ) | |
| | ) | |
| **TANIA DIMITROVA**, Attorney, | ) | |
| | ) | |
| **BRADLEY R. TROWBRIDGE,** Attorney | ) | |
| | ) | |
| **SAFE TRAVELS CHICAGO, LLC,** Supervision Service | ) | |
| | ) | |
| **MAXINE WEISS-KUNZ**, Attorney, | ) | |
| | ) | |
| **STEWART J. AUSLANDER**, Attorney, | ) | |
| | ) | |
| **KAREN A. ALTMAN**, Attorney, | ) | |
| | ) | |
| **GARY SCHLESINGER**, Attorney, | ) | |
| | ) | |
| **SHAWN D. BERSSON**, Attorney, | ) | |
| | ) | |
| **TIFFANY MARIE HUGHES**, Attorney, | ) | |
| | ) | |
| **RUSSELL M. REID**, Attorney, | ) | |
| | ) | |
| **CANDACE L. MEYERS**, Attorney, | ) | |
| | ) | |
| **MICHAEL P. DOMAN**, Attorney, | ) | |
| | ) | |
| **STACEY E. PLATT**, Attorney, | ) | |
| | ) | |
| **ELIZABETH ULLMAN**, Attorney, | ) | |
| | ) | |
| **ANDREA D. RICE**, Attorney, | | |
|     Defendants. | | |

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT CANDACE L. MEYERS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AS FILED ON JUNE 29, 2022</u>

NOW COMES the Plaintiff VANESSA WEREKO ("Vanessa") pursuant to Rules 12 and 27(a)(3) of the Federal Rules of Civil Procedure and this Court's June 1, 2022 Order (ECF 137) to timely and respectfully move this Court to deny Defendant CANDACE L. MEYERS' ("Meyers"), filing, "Defendant Candace L. Meyer's Motion to Dismiss Plaintiff's Complaint" (ECF 156). In support of her response, "Plaintiff's Memorandum In Support of Her Responses In Opposition to Motions to Dismiss" (ECF 182) is incorporated here, by reference. The grounds for denial are the following:

### <u>BACKGROUND</u>

1.      On June 29, 2022 Defendant Meyers requested dismissal of the Complaint (ECF 1,7) under Rule 12(b)(6) alleging: (a) the claims against her are insufficiently pled (ECF 156 at 5-8); (b) the claims are time-barred under §1983 and 735 ILCS 5/13-214.3(b)  (ECF 156 at 8-11)

2.      On April 27, 2022, this Court received (ECF 1) then "filed" (ECF 7) Vanessa's Complaint, pled in compliance to the pleading standard under Rule 9(b). There are four (4) claims, out of the six (6), germane to Defendant Meyers and requests:

(a) <u>**Count I**</u>: Prospective Declaratory Relief that Vanessa Has Suffered and Continues to Suffer from Racial Acts of Terror and a Conspiracy to Interfere with her Civil Rights that Deprives her of Substantive Due Process Rights to Familial Association, Privacy, Integrity and Autonomy Protected by the I, V, and XIV Amendments of the United States Constitution Pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985 (ECF 7 at 103-107, ¶¶ 334-341)

(b) <u>**Count II**</u>: Prospective Declaratory Relief that Vanessa has suffered and continues to suffer from the conspiracy to intentionally interfere with her civil rights to deprive her of the merits

3

of the foreign judgment and the agreed allocation judgment, protected under state and federal laws (ECF 7 at 108-119, ¶¶ 342-372);

(c) **Count III**: Prospective Injunctive Relief to Enjoin Defendants from Further Racial Acts of Terror, Under the Color of State Law, and from Depriving Vanessa of the Equal Protection of the Laws Afforded to Her By Judgments Protected Under State and Federal Laws (ECF 7 at 119-123, ¶¶ 373-384);

(d) **Count VI**: Compensatory Damages and Costs, Pursuant to 42 U.S.C. § 1986 and 42 U.S.C. § 1988, from Defendants Who Failed to Prevent the Wrongdoings Perpetuated Against Vanessa and Caused the Civil Rights Violation Pursuant to 42 U.S.C. § 1983. (ECF 7 at 130-142, ¶¶ 413-453)

## LEGAL STANDARDS

3.      A court must construe "the complaint in the light most favorable to the plaintiff[], accepting as true all well-pleaded facts, and drawing reasonable inferences in the plaintiff[]'s favor. *Tamayo v. Blagojevich*, 526 F. 3d 1074, 1081 (7th Cir. 2008).

4.      "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case." *Crockwell v. Dart* 2013 WL 6796788 citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)

5.      "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' *Twombly* 550 U.S. at 570, 127 S. Ct. 1955. 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'. *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. 'Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement

4

to relief.' *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)" *McReynolds v. Merrill Lynch & Co.*, 694, F.3d 873 (7th Cir. 2012)

6.     "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court reads the complaint and assesses its plausibility as a whole. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)

## **RESPONSIVE ARGUMENTS IN OPPOSITION TO MOTION**

7.     **Sufficiency of §§ 1983, 1985 Claims**: Defendant Meyers' central argument is that the claims against her are insufficiently pled. Her arguments are buttressed by a derivative of the Compliant dubbed "Well-Pled Facts of Plaintiff's Complaint" (ECF 156 at 2-3) which is effectively stripped of the detailed nuance of the factual allegations in the Complaint pled under Rule 9(b), and strategically poised for her contrived insufficiency assertions.

For the same reason that Vanessa has requested this Court to strike, disregard or hold for naught similarly artful presentations of the Complaint by defendants – who seek to present their alternative facts or permutations of the alleged facts as hers – she makes the same request here. The Rule 12(b)(6) test is not to test the plausibility of the derivatives concocted by defendants in their motions to dismiss; it is to test the plausibility of the Complaint itself, as a whole. *Atkins Id.*

Here, Defendant Meyers does not refer to any specific pleading standard to inform how the Complaint is insufficient; there is no indication of any awareness that there are federal rules that apply and the Complaint was pled under the stringent pleading standard set forth by Rule 9(b) (ECF 7 at 4 ¶4), which applies to "averments of fraud" and applies to any given conspiracy claim if predicated on the defendants' alleged fraud. *Borsellino v. Goldman Sachs Group Inc.,* 477 F.3d 502, 507 (7th Cir. 2017) citing *Gaudie v. Countrywide Home Loans, Inc.,* 683 F. Supp. 2d 750, 760

(N.D. Ill. 2000)("Because the underlying tort of the conspiracy is fraud, Rule 9(b)'s heightened pleading requirements apply to this claim.")

By definition, a conspiracy must have an agreement by two or more parties to accomplish some goal or goals. (See *Cooney v. Casaday*, 735 F.3d 514, 519 (7th Cir. 2013). A conspiracy premised upon fraudulent conduct must be pled with the same specificity as a fraud claim. *Borsellino Id.* "To satisfy Rule 9(b), the plaintiff must describe the time, place, particular contents of the false representations, the identity of the party making the misrepresentation, and the consequence of the misrepresentation" *Ray v. Karris*, 780 F.2d 636 (7th Cir. 1985) "A complaint is not sufficient if it does not specify the nature of the predicate acts to a degree which will allow the defendants to comprehend the specific acts to which they are required to answer…The allegations [] must…comply with notice of pleading requirements; pure assertions of a statutory violation alone are not sufficient." *Id.* at 645

Here, the fraud claims rely on the theory that a defendant, Defendant Meyers, aided and abetted other defendants in defrauding Vanessa. Aiding and abetting is a viable theory of fraud liability under Illinois law. See *Hefferman*, 467 F.3d at 601 ("aiding and abetting is a theory holding the person who aids and abets liable for the tort itself"); *Eastern Trading Co. v. Refco. Inc.*, 229 F.3d 617, 624 (7th Cir. 2000) ("[o]ne who aids and abets a fraud is guilty of the tort of fraud"); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982)("[a]nyone who would be guilty in a criminal proceeding of aiding and abetting a fraud would be liable under tort law as a participant in the fraud.") "Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury; (2) the defendant was aware of his role when he provided the assistance; and (3) the defendant knowingly and substantially assisted the violation." *Hefferman*, 467 F.3d at 601 (citing

*Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 2003))

Defendant Meyers was retained as counsel for Vanessa, in the second state action after a prior attorney, Defendant Bersson withdrew and alleged as participating in a "conspiracy to intentionally interfere with [Vanessa's] civil rights" in both state actions, "to deprive her of the merits of the foreign [legal separation] judgment and the agreed allocation judgment protected under state and federal laws" (ECF 7 at 108 Count II ¶¶ 346, 350), in concert with others (ECF 7 at 24 ¶ IV ¶ A ¶ 1), through the unconstitutional subjugation of several state statutes (ECF 7 ¶¶ 344-345; ECF 7 at 127 Count V ¶¶ 401, 403). The "agreed allocation judgment" is synonymous to "agreed custody judgment" filed 2 months prior to the second state action. (ECF 7 ¶¶71, 77, 78)

Same as in the first state action, Vanessa sought an attorney with no social ties with incumbent state actors to overcome a conspiracy that had already caused deprivations and ongoing harm. (ECF 7 ¶¶54,55,88,89) The Complaint specifically alleges that, just like Defendant Bersson, Defendant Meyers "refused to file a motion to enroll/enter the Allocation Judgment and the foreign [legal separation] judgment it referenced, preferring to draft a new Allocation Judgment and stripping out any mention of the foreign judgment to cover-up the failings of [Defendant] Auslander." (ECF 7 ¶90) Defendant Auslander, the discharged *guardian ad litem* ("GAL") from the first state action, is alleged to have inserted himself in the second state action, with no legal standing, to aid and abet more deprivations after obstructing the foreign legal separation judgment in the former action, with conspirators including Defendant Bersson. (ECF 7¶¶ 53,55,72,93,) It is said Defendant Auslander that Defendant Meyers is alleged to have also aided and abetted coverup his wrongful acts, participating in the same "conspiracy to intentionally interfere with [Vanessa's] civil rights to deprive her of the merits of the foreign [legal separation] judgment and the agreed allocation judgment protected under state and federal laws" by subjugation of said laws. (ECF 7

7

at 108 Count II ¶¶ 356) The second state action had an appointed *guardian ad litem*, Defendant Reid, similarly aligned to deprive Vanessa of the merits of both judgments to force for a "new" ruling in favor of the non-custodial parent, a fellow "white" man. (ECF 7¶¶ 91) The Complaint alleges "from April 2017 until November 2017, before [Defendant] Vega recused himself for bias against Vanessa, two attorneys loitered in the case influencing proceedings – a discharged GAL from [the first state action] and an appointed GAL [for the second state action] – both striving for dominance and perpetuating their discriminatory biases against Vanessa and her children and both conspiring with a judicial officer [Defendant Vega] to interfere with her civil rights." (ECF 7 ¶ 93)

Defendant Meyers did not just aid and abet a discharged GAL unlawfully situated in a new state action enforce his animus based on race and gender (ECF 7 ¶51), as alleged; the allegations include she aided and abetted state actors and curried favor by aligning "to the biases of [] guardian ad litem [Defendant] Reid, an attorney of Hoffenberg & Block that has a partner with social ties to [Defendant] Meyers" (ECF 7 ¶90); and abetting his concealment of the non-custodial parent's domicile when with the minority children, before it all culminated in the first kidnapping out-of-state to an undisclosed address. (ECF 7 ¶¶ 90,114,121,123) Across the Complaint is found the ubiquitous nature of the alleged social ties that sustained the conspiracy of defendants or peers at the expense of depriving Vanessa, and her minority children of their equal rights and protections under the law for which Defendant Meyers is also sued. (ECF 7 ¶¶ 6, 55, 66, 69, 90, 215, 312)

**(a) Conspiracy at the Pleading Stage**: Defendant Meyers argues, after the foregoing is stripped from or adroitly avoided in her derived introduction, that "plaintiff failed to allege the existence of an actionable conspiracy." (ECF 156 at 4); needless to say, that is patently false relative to the well-pled and unaltered facts in the Complaint. The Seventh Circuit has stated unequivocally that "there is no requirement in federal suits of pleading the facts or the elements

8

of a claim...[and that] it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what [s]he is charged with." *Walker v. Thompson* 288 F.3d 1005, 1007 (7th Cir. 2022). The Complaint exceeds with named parties, purpose, exact/approximate dates; the sufficiency requirement for pleading a conspiracy predicated on fraud is resoundingly met, relative to Defendant Meyers.

**(b) Acting Under Color of State Law**: Defendant Meyers posits that "as a private attorney engaged in the representation of a private client in civil litigation [a]s a matter of settled law, Meyers' alleged conduct does not subject her to liability under section 1983" (ECF 5). Said argument is meritless; outside the fact that it is implausible her alleged acts served Vanessa, private attorneys who willfully engage in unconstitutional subjugation of state and federal law are liable. The Supreme Court has held that for an action to qualify as a "state action", it requires *both* an alleged constitutional deprivation caused by acts taken pursuant to state law and that the allegedly unconstitutional conduct can be fairly attributable to the State. *American Mfrs. Mut. Ins. Co. v. Sullivan* 526 U.S. 40 119 S.Ct. 977 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937). A private actor cannot be held to constitutional standards unless there is a sufficiently close nexus between the State and the challenged action so that the latter may be fairly treated as that of the State itself. *Id.* Here, the challenged action is Defendant Meyers' acting in concert with state actors to cause and/or coverup unlawful conducts by unconstitutional subjugation of state law to cause and/or coverup constitutional deprivations; her alleged acts can be "fairly treated as that of the State" or of the state actors that she aided and/or abetted cause and/or cover up deprivations and interfere with Vanessa's civil rights under § 1985. The two-step test is met for Defendant Meyers.

It is plausible to infer that Defendant Meyers' alleged acts also served her private interests via a *quid pro quo* scheme with state actors, be it a state judicial officer and/or a person oft appointed as *guardian ad litem* like Defendants Auslander and Reid, to facilitate favorable rulings

in her other/future cases with fiscal gains therefrom to justify disposing Vanessa off to (further) abrogation of her protected rights, and instead of defending her, aided/abetted more deprivations.

Notably, when Defendant Meyers had to defend Vanessa against Defendant Auslander's fraudulent bid for his dismissed *guardian ad litem* fees from the first state action, she withdrew *instanter* abandoning a non-attorney client to unlawful acts to fiscally extort from her, when said client was still suffering from alleged deprivations caused by acts of the defendant. (ECF 7 ¶92)

**(c) Racial Animus**: Defendant Meyer asserts Vanessa did not allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action. [citation]" (ECF 156 at 6) Said assertion is patently false and the privilege of those who blind themselves to such biases in life, even when defined in the allegations of a Complaint, as if doing so makes them disappear for persons who deal with animus not just based on their race, but gender and ethnic origin, which drove the conspirators' actions here. (ECF 7 ¶1) Defendant Meyers overlooks that in the case she cited, *Griffin v. Breckinridge*, 403 U.S. 88, 91, S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that women constitute one of the classes "that have been previously recognized as possibly supporting a § 1985 (3) claim" *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985) Even though the Supreme Court held that a plaintiff must prove "some racial, or perhaps otherwise class-based, invidiously discriminatory animus", because the conspiracy in *Griffin* was aimed against a group classified as "black", a minority, the Supreme Court declined to decide whether a conspiracy motivated by invidious discriminatory intent other than racial bias would be actionable. *Id.* at 102 n. 9, 91 S.Ct. at 1798 n.9. In interpreting *Griffin*, most courts, have indicated that § 1985 covers conspiracies involving animus other than racial bias such as animus based on an ethnic origin, sex, religion or political loyalty. *Munson*, 754 F.2d at 695; *Murphy v. Mount High School*, 543 F.2d 1189, 1191 n.1 (7th Cir. 1976). See also *Life Insurance Company of North America v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) (finding "women"

a class within the protective ambit of 42 U.S.C. § 1985 (3)). Vanessa categorically alleged the invidious discriminatory animus against her is "on the basis of [her] race, gender and/or cultural/ethnic origins" (ECF 7 at 6 ¶10) as a minority woman with "cultural/ethnic origins in the West African country of Ghana" (ECF 7 at 8 ¶1) The conspirators' actions are alleged to favor and insulate "white" actors, including themselves, from prosecution related to their unlawful conducts by depriving Vanessa and her children from equal protection, privileges and immunities under the law, consistent with Defendant Meyers alleged acts; said racial, gender and cultural/ethnic origins bias underpins claims against her and others under § 1985 (ECF 7 at 37 ¶B ¶2; ECF 7 ¶¶339,340)

Count I, adroitly avoided by Defendant Meyers, specifies several "racial acts of terror" in which she is alleged to have participated. (ECF 7 ¶ 338) where her alleged acts in concert with others align with "the repeat prosecution of a single, minority woman for the same fabricated offenses by white actors, conspiring to deny her due process of law, in a court of law"; "the repeat deprivation of a single, minority woman of her minority children, her parental rights, by white actors, for no legal reason"; "the repeat obstruction of justice for a single minority by white actors conspiring to insulate themselves and a white man, a former spouse [of Vanessa], from prosecution of crimes done against her and her children", to list a few. (ECF 7 ¶338) Counts I and II are brought under the Anti-Lynching Bill to allege the invidious acts by Defendant Meyers and others are racially-motivated; "lynching" is a term, not confined to a noose and a tree in open fields of southern US states; it includes the excessive methods and/or depraved acts by an established majority terrorizing a minority woman or protected class for subjugation of their basic human rights, with no due process of law. Defendant Meyers missed that pointing to Vanessa's assertion that she acted for fiscal gain, "at the expense of [her and her minority children's] pain and suffering" (ECF 7 ¶356) does not negate her racial animus; it only informs how extreme/aberrant her alleged actions were – that she could fiscally extort from Vanessa, fiscally-bled out from

11

protracted actions rife with deprivations, whiles willfully denying her the merits of her remunerations to her to aid/abet her "white" peers, a licensed "mob" of attorneys, to harm her even further without hope of reprieve despite retaining her, as legal counsel.

8. **Statute of Limitations**: On the off chance that this Court finds the Complaint's claims are indeed plausible and/or sufficiently pled, Defendant Meyers prepares for that eventuality with a statute of limitations argument to opine "any complaints regarding Meyers' alleged conduct in 2017 are time-barred" to two years under §§ 1983 and 1985 and Illinois statutes for claims "against attorneys and actions for personal injuries" (ECF 156 at 8).  Recognizing that an affirmative defense is not one of Fed. R. Civ. P. 12(b) lists of seven (7) defenses that may and must be brought before a responsive pleading is filed, she argues it is allowed under Rule 12(b)(6) "if the factual allegations in the Complaint establish its untimeliness." (ECF 156 at 8) The factual allegations of the Complaint do not establish it is untimely when decision-making in the second state action concluded in 2022; as with other defendants who pled affirmative defenses in their motions to dismiss rather than file responsive pleadings in compliance to the pleading rules, Vanessa makes the same request to this Court to strike the related argument or hold it for naught. Vanessa is not required to anticipate affirmative defenses in her Complaint nor did she plead herself out of court, by complying with Rule 9(b); she never established defendants in the case are entitled to a statute of limitations defense. (See *United States v. Northern Trust Co.*, 372 F. 3d 886, 888 (7th Cir. 2004*), United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). By introducing the argument here, a tactic employed by several defendants, Vanessa cannot escape by saying nothing.

It is unclear how Defendant Meyers assertions of "insufficiently pled" claims allowed her to make an affirmative defense, based on the alleged insufficient facts, that claims against her are time-barred or conclude that the claims only relate to actions in 2017. If the alleged facts against

12

Defendant Meyers are indeed insufficient for a reasonable inference that she is liable for the alleged misconduct, that can be easily cured by adding more facts to the 149-page Complaint against thirty-four (34) defendants; it is not grounds for dismissal of the claims that do implicate her regardless of her seeming quest to avoid the alleged association with state actors that informs that though her participation in the conspiracy may have started in 2017, it is implausible that it concluded when she immediately withdrew to obstruct the due course of justice against Defendant Auslander, whose bias/influence in state actions (that she is alleged to have aligned with) does not end because he is discharged or not appointed in a state action. (ECF 7 ¶¶ 51, 67, 68, 93,171) Though the factually alleged actions include those in 2017, the Complaint does not set forth what is stated are the *only* acts nor that *all* damages accrued in 2017 for the alleged constitutional deprivations Defendant Meyers aided and abetted. All Vanessa is required to do with her Complaint is "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) She is not required to state *all* facts; the "factual allegations [she provides] must be enough to raise a right to relief above the speculative level" *Bell Atl. Corp. v Twombly*, U.S. 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). As aforestated, Vanessa's conspiracy claims premised on fraud allow for no time bars at all; if a statute of limitations has to be applied, the Illinois Fraudulent Concealment Statute (735 ILCS 5/13-215) provides that no statute of limitations period applies if a tortious injury is fraudulently concealed. (*Schweihs v. Burdick* 96 F.3d 917 (7th Cir. 1996))

(a) **§§ 1983 and 1985 Claims**: Congress, in its wisdom, did not include a statute of limitations in §§ 1983 and 1985, which is reasonable considering the artful impediments, as those alleged in the Complaint, that were outside of Vanessa's control and left her traipsing in the state courts for seven (7) years; Vanessa could not expedite state actions/outcomes which, by

rule/statute, had to be expedited/immediate but the reverse ensued with state judicial officers refusing to issue written orders for oral rulings or secretly enforcing "ghost" orders - never entered or never publicly accessible - in direct interference with her civil rights and obstruction of discovery and/or address of the misconducts causing deprivations. (ECF 7 ¶¶ 228-229, 238, 241, 251-256, 330) Vanessa could not control the alleged fraud, deception and harassment that impeded her passage to this Court or the *sua sponte* dismissal (attempts) alleging "ongoing" state proceedings for "concluded" ones to (attempt to) derail/bar her claims *ad nauseum*. (ECF 7 ¶¶ 8, 36, ECF 12) Any filing by Vanessa in this Court was barred until decision-making in the second state action concluded for filings by the parties to prevent a similar "unmistakable impression", as in *J.B. v. Woodward*, that she "seeks a favorable federal court judgment so that [s]he can use that judgment to influence ongoing state court decision making" *Id.*at 10. Another constraint imposed on Vanessa is when this Court has ruled to exercise its jurisdiction to "[u]nless and until the state courts have proven unwilling to address [plaintiffs'] alleged constitutional claims" (See ECF 182), a condition inimical to any time bars as reliant on the subjective performance of state courts, which are not time-bound. And yet, a legal conclusion by the Seventh Circuit for § 1983 claims in a case that found the state's "personal injury" statute of limitations of 2 years was the most analogous to factual elements in that case is argued by Defendant Meyers as applicable for *all* § 1983 claims. Said argument disregards that the Supreme Court held that a court "must borrow and apply to all § 1983 claims the one most analogous state statute of limitations" (emphasis added) *Owens v. Okure*, 488 U.S. 235, 240-41 (1989) for the case in question, which related to a beaten man who sustained physical injuries; Vanessa is not complaining of physical injuries. The most analogous statute of limitations for conspiracy claims predicated on fraud, if the Supreme Court paradigm is to be upheld, is "fraud". In conclusion, until/unless federal courts can compel or hold state courts

accountable to timely and properly conclude state actions in a fixed time, any attempt to impose a fixed time on *all* §1983 constitutional claims abets an increasingly hostile federal court environment to plaintiffs, so regulated to seemingly defeat their constitutional claims with antithetical constraints and conditions that concurrently abet defendants trying to escape liability who never argue or prove state courts' willingness to address or ever addressed plaintiffs' claims. Vanessa's claims are not time-barred under § 1983, nor hopelessly time-barred to preclude relief.

> **(b) State Statute of Limitations for Claims Against Attorneys**: Here, Defendant Meyers argues that claims against her are also barred on account of her role/title as a private attorney and cites to 735 ILCS 5/13-214.3(b). (ECF 156 at 9). As already addressed earlier herein, Defendant Meyers is not being sued as a "private attorney"; she is being sued for acting under color of state law to cause constitutional deprivations; she met the two-point test for a "state action" (See "Acting Under Color of State Law" at 9). She is not being sued "for an act or omission in the performance of professional services" as reasonably defined under an attorney-client contract. Though a reasonable inference can be made that she violated the professional code conduct and/or willfully neglectful in her professional obligation, all of which fall under the remit of an Attorney Registration and Disciplinary Commission, claims under §§ 1983, 1985 and 1986 are not against her role/position but her *alleged acts*. But another way, if Defendant Meyers were not an attorney, she would still be sued and liable under §§ 1983, 1985 in her individual capacity; her role/position is incidental to the alleged acts, not the cause of them to justify use of a statute of limitations specific to her official role. Said argument by Defendant Meyers should be dismissed/denied.

> <u>**CONCLUSION**</u>

> Rule 12(b)(6) tests for the facial plausibility of the Complaint, as a whole. *Atkins Id.* Defendant Meyers never argues the Complaint, as a whole, is implausible. She does not argue the

Complaint is not well-pled; she anchors her arguments to a section dubbed "Well Pled Facts of Plaintiff's Complaint" which misleads that thereunder, she has aggressively stripped down the details of her alleged acts, pled under Rule 9(b), omitted the named defendants she is alleged to have aided and abetted, to argue insufficiency of the claims against her. Her tale that the Complaint is simply that of an unhappy former client is woven into her assertions that she did not act under color of state law; that no conspiracy is alleged between her and other defendants; no racial animus is alleged or attributable to her alleged acts and the §§ 1983, 1985 claims are nothing more than a suit against a private attorney time-barred under Illinois statute. The well-woven tale fails because it is a tale. Defendant Meyers, sued in her individual capacity (ECF 7¶¶ 29,340,356,442), never acknowledges the Complaint pleads the essential elements of the individual capacity claim; namely, that she had *knowledge* and *consciously disregarded* a serious risk and *participated* in the wrongful acts of the conspiracy with other defendants or her peers. She never pleads that the Complaint fails to allege that she had *knowledge* and *disregarded* a serious risk to allow for any plausible inference by this Court that she lacked "personal involvement" in the alleged act(s).

VANESSA WEREKO prays that this Court enter an order to deny "Defendant Candace L. Meyers Motion to Dismiss Plaintiff's Complaint" (ECF 156) as filed on June 29, 2022 in consideration of the foregoing responsive arguments in opposition, to allow this case progress to discovery for the well-pled, factual content for all six (6) claims, including the four (4) claims germane to Defendant CANDACE L. MEYERS given fair notice of what she has to defend.

Dated:  July 15, 2022                    RESPECTFULLY SUBMITED:

/s/ Vanessa Wereko
VANESSA WEREKO
675 Lakeview Pkwy #5035
Vernon Hills, IL 60061
Main No.: 847-637-7142
Email: werekovb@me.com

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies pursuant to 28 U.S.C. §1746 that she filed "Plaintiff's Response to Defendant Candace L. Meyers' Motion to Dismiss Plaintiff's Complaint As Filed on June 29, 2022" using the Clerk of Court's Electronic Case Filing system on this **15th day of July, 2022** which provides notification of same to the above-referenced parties of record when there has been an appearance filed.

/s/ Vanessa Wereko

VANESSA WEREKO
675 Lakeview Pkwy #5035
Vernon Hills, IL 60061
Main No.: 847-637-7142
Email: werekovb@me.com

17