**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VANESSA WEREKO, | |
| Plaintiff, | No. 22 C 02177 |
| v. | Judge Thomas M. Durkin |
| LORI ROSEN, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vanessa Wereko brought this action against 34 defendants for various alleged violations of constitutional rights in connection with yearslong contentious divorce and custody proceedings in Illinois state court. Defendants Russell Caskey, Robert Caselli, Adam Boyd, Tiffany Marie Hughes, Stewart J. Auslander, Candace L. Meyers, Russell M. Reid, Stacey E. Platt, Elizabeth Ullman, Peter Hannigan, Gary Schlesinger, Theresa Eagleson, Richard Falen, the Honorable Aurelia Marie Pucinski, the Honorable Mary Ellen Coughlan, the Honorable Terrence J. Lavin, the Honorable Joseph V. Salvi, the Honorable Grace G. Dickler, the Honorable David E. Haracz, the Honorable Lori Rosen, the Honorable Mary S. Trew, the Honorable Raul Vega, Kathleen Lipinski, Sarah E. Ingersoll, Pedro Martinez, Shawn D. Bersson, Michael P. Doman, Andrea D. Rice, Maxine Weiss-Kunz, Emily Yu, Karen A. Altman, Bradley Trowbridge, and Safe Travels Chicago LLC filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* R. 146, 151, 153, 154,

156, 157, 158, 159, 162, 164, 166, 167, 169, 188, 221, 223, 243, 284. This Court concludes that dismissal is warranted on abstention grounds.[1]

## Background

Vanessa Wereko ("Wereko") is a minority woman with two minor children. R. 7 ("Complaint") at 1. Her 149-page complaint alleges a vast conspiracy to interfere with her civil rights, namely her rights under the First, Fifth, and Fourteenth Amendments and several federal and state statutes, in the course of yearslong, contentious divorce and custody proceedings in Illinois state court. Wereko names as Defendants participants in the proceedings, including: current and former state court judges, her and her ex-husband's attorneys, guardians ad litem, school superintendents, police officers, a child representative, a court reporter, a court-appointed firm, an assistant Illinois attorney general, an assistant state's attorney, a director of a health system, and Illinois Department of Healthcare and Family Services ("HFS") officials. All facts in this section, unless otherwise noted, come from Wereko's 149-page complaint.

*Foreign Judgment and Agreed Allocation Judgment*

---

[1] Wereko has an appeal pending with the Seventh Circuit related to her emergency motion for a preliminary injunction to enjoin Defendants from tampering with, destroying, or altering records within the scope of the factual allegations of the Complaint. *See Wereko v. Rosen et al.*, No. 22-3168 (7th Cir. 2022). In denying her motion to stay pending that appeal, the Seventh Circuit held, "The district court remains free to rule on any aspect of the case not properly brought before this court, including but not limited to any portions of appellant's motion for a preliminary injunction still pending in the district court." R. 341 at 1. The Court rules on the pending motions to dismiss, which are unrelated to her motion for a preliminary injunction, on that basis.

In March 2014, after two domestic violence incidents, Wereko and her ex-husband, Francesco Potenza ("Potenza") legally separated in Switzerland. Complaint ¶ 37. The foreign judgment established the marital history and the custody arrangement restricting Potenza's parenting time. After moving to Illinois, in March 2015, Wereko sought entry of the foreign judgment in the Circuit Court of Lake County, which certain Defendants allegedly thwarted. *Id.* ¶¶ 44, 45, 48–85. In July 2016, Wereko and Potenza entered into a new custody agreement ("Allocation Judgment") that referenced the foreign judgment and assigned Wereko sole custody. *Id.* ¶ 71. Months later, as a result of motions by her and Potenza's attorneys, the Lake County case was dismissed before a marital settlement agreement was reached. *Id.* ¶ 77.

*Cook County Case*

Hours after dismissal of the Lake County case, Potenza filed a new action in the Circuit Court of Cook County, omitting reference to the prior proceedings and foreign judgment. *Id.* ¶ 78. In January 2017, the Lake County court denied Wereko's motion to vacate the dismissal but ruled that the Allocation Judgment should be entered in the Cook County case. *Id.* ¶¶ 80, 82, 83. The Cook County court refused to do so unless the parties again agreed to the terms. *Id.* ¶¶ 88–90. In June 2017, the court ordered Potenza to pay child support, and in December, the judge recused himself, which Wereko alleges was for bias. *Id.* ¶¶ 89, 95.

One year later, the new judge, Defendant Haracz, entered a dissolution order referencing the Allocation Judgment and foreign judgment and set the issues of

3

retroactive child support and child-related expenses for trial. *Id.* ¶¶ 94, 95, 98. In the months that followed, the court suspended the trial, Wereko told the court that Potenza violated the parenting time terms, Potenza moved to modify the Allocation Judgment to request sole custody in Florida, and Wereko made a motion for a new judge based on alleged racial and other bias, which was denied. *Id.* ¶¶ 99–104.

In December 2018, the court granted Potenza parenting time in Florida indefinitely and ordered transfer of the children with police assistance. *Id.* ¶¶ 108–13. While Wereko and her children were vacationing out of state, the police visited her home and questioned her neighbors based on Potenza's allegation that she had absconded to Switzerland or Ghana with the children. *Id.* In January 2019, after the court ordered the immediate relocation of the children and issued a warrant for Wereko's arrest for her contempt of the court's orders, Potenza and police allegedly "abducted" the children from school. *Id.* ¶¶ 114–31. Weeks later, on Wereko's requests for reconsideration, the court ordered her to pick up and return her children to Illinois, which she did. *Id.*

In early 2019, the court ordered Wereko to give the children's passports to the new child representative and then to the court, prohibited the parties from taking the children out of the country, and gave her name to Immigration and Naturalization Services. *Id.* ¶¶ 134–38, 141. She thereafter sought to vacate the orders and to relocate for a job opportunity. *Id.* ¶¶ 141–45. And in July 2019, following an allegedly false accusation that she took the children out of the country without telling Potenza,

the court held Wereko in contempt, placed her in jail for the day, and ordered turnover of the children to Potenza. *Id.* ¶¶ 145–48.

In August 2019, the court entered a protective order granting Potenza custody of the children based on his allegedly false allegations that she was hiding the children out of state and denying him visitation. *Id.* ¶¶ 159–64. With police assistance, the children were again allegedly "kidnapped" from school and transferred to Potenza. *Id.* ¶¶ 165–66. Wereko refused to agree to supervised visitation, and the court extended the protective order several times. *Id.* ¶¶ 167–70. On September 9, 2019, the court entered a plenary order of protection ("plenary order"), restricting her parenting time to weekly supervised visitation, her contact with her children, and her access to their records. *Id.* ¶¶ 171–73. Wereko was required to sign a supervised visitation agreement with additional terms. *Id.* ¶¶ 177–78. Weeks later, after Wereko refused to identify her employer in a financial affidavit, the court relieved Potenza's child support obligations. *Id.* ¶¶ 176, 183, 184.

Throughout the above events, Wereko's attorneys (Defendants in this case) rejected her requests to take various actions, withdrew or were fired, and some withheld her legal file pending the payment of fees. *E.g.*, *id.* ¶¶ 54, 58, 59, 62, 63, 69, 70, 90, 92, 97, 135, 141, 179, 187.

### *Appeals of Custody and Child Support Orders*

Wereko filed an interlocutory appeal of the plenary order and requested to stay proceedings, both of which were denied. *Id.* ¶¶ 180, 190–91, 198–208. At the December 3, 2019 trial, the court struck all her pleadings related to parenting time,

Potenza's violations of the Allocation Judgment, and unpaid child support and barred her from testifying and offering exhibits. *Id.* ¶¶ 192–96. The court entered a final judgment with a new child support order ("child support order") based on allegedly inflated financials and her lack of parenting time. *Id.* Wereko appealed the final judgment and prior orders and sought to stay the enforcement of the child support order. *Id.* ¶¶ 197, 293.

In April 2020, Potenza moved to modify the Allocation Judgment consistent with the plenary order. *Id.* ¶ 210. And in June, the court denied Wereko's motion to stay enforcement of the child support order, issued a warrant for her arrest, and allowed subpoenas for financial information about her. *Id.* ¶¶ 213–14. She then filed an emergency motion for a supervisory order regarding the allegedly intentional delay of the appeal, the trial court's orders in the interim, and purported social ties between Defendant Haracz and one of the appellate judges (Defendant Lavin), which was denied by the Illinois Supreme Court. *Id.* ¶¶ 215–16. The court subsequently continued her motions to quash the arrest warrant and stay proceedings. *Id.* ¶¶ 212, 217–23. Additionally, HFS continued enforcing the child support order, and later denied Wereko's requests for modification and reconsideration. *Id.* ¶¶ 295–300, 309. Wereko also filed a modify or vacate the child support order. *Id.* ¶ 217.

In December 2020, the Illinois Appellate Court vacated, in part, the plenary order, upholding Potenza's status as the temporary custodial parent and ordering the trial court to expeditiously conduct a new custody hearing, and affirmed the child support order. *See In re Marriage of Potenza and Wereko*, 2020 IL App (1st) 192454,

¶¶ 1, 57; Complaint ¶¶ 224–30, 305.[2] Wereko petitioned the Illinois Supreme Court for clarification, which was denied.  Complaint ¶ 231.

*First Federal Suit*

Wereko filed a federal suit in March 2021, alleging that Defendants Haracz, Trowbridge, and Safe Travels violated her constitutional right to familial association by entering the plenary order, restricting her parenting time, and coordinating her visitation. *See Wereko v. Haracz*, 857 Fed. App'x 250, 250–51 (7th Cir. Aug. 26, 2021). She sought a declaration that the plenary order violated her constitutional rights and an injunction barring its enforcement and requiring Defendant Haracz to implement a new custody order. *Id.* at 251. The district court dismissed her suit for lack of subject matter jurisdiction under the domestic relations exception, and the Seventh Circuit affirmed in August 2021. *Id.*

*Post-Appeal Circuit Court Proceedings*

In May 2021, Wereko petitioned for a new judge, which was denied based on a failure to show prejudice and actual bias. *Id.* ¶¶ 311–15. Wereko also sought unrestricted temporary parenting time and to quash the arrest warrant, which the

---

[2] Wereko alleges that the Illinois Appellate Court did not opine on the child support order. Complaint ¶¶ 224–30, 305. But the appellate court affirmed the December 3, 2019 order after explaining that while Wereko argued that the trial court improperly relied on hearsay about her income when determining child support, she forfeited her hearsay objections by failing to raise them at trial. *In re Marriage*, 2020 IL App (1st) 192454, ¶¶ 64, 67. This Court can "take judicial notice of matters of public record, including court filings and documents from the ongoing state court proceedings incorporated into the federal complaint." *J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021) (citing *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019)).

court continued after obtaining Wereko's address. *Id.* ¶ 319. Thereafter, "surveillance" allegedly began at Wereko's home. *Id.* ¶ 320. The court also continued the Cook County State's Attorney's Office's ("SAO") petition for a reduction of child support petition, and HFS issued a child support lien. *Id.* ¶¶ 316, 322, 326.

In August 2021, after terminating Wereko's upcoming temporary parenting time, Defendant Haracz recused himself, and Defendant Rosen was assigned. *Id.* ¶¶ 233–38, 251, 323. At a hearing in September, Potenza's counsel made purported fabrications about Wereko, and Defendant Rosen allegedly denied Wereko the opportunity to respond, continued Wereko's request for reversal of the parenting time termination, and denied that she had received the motion to modify or vacate the child support order noticed for that day. *Id.* ¶¶ 240–42.

Wereko alleges that although the plenary order allegedly expired in September, the court continued enforcing it, and the appellate court denied her petition for clarification on its status. *Id.* ¶¶ 242, 249, 251–56. Ahead of the custody hearing ordered by the appellate court, the court quashed Wereko's subpoenas to school personnel, police, DCFS, therapists, and social workers, and subsequently denied her motions to compel access to her children's health and school records. *Id.* ¶¶ 246–50, 258–65.

Moreover, between August and November 2021, Wereko renewed her motion to modify or vacate the child support order and was subject to several enforcement activities for not paying, including denial of a renewed passport and suspension of her driver's license. *Id.* ¶ 326.

*Custody Hearing*

The custody hearing began on December 16, 2021 and continued through January 2022. *Id.* ¶¶ 266–78, 316, 327. According to Wereko, during the hearing, the court granted the Illinois Attorney General Office's request to bar DCFS testimony pursuant to state statute; Defendant Rosen interrupted Wereko's witnesses, struck testimony, and asked witnesses for alternate responses if certain Defendants were implicated; Potenza's counsel cross-examined witnesses beyond the scope of direct examination; and Potenza requested supervised visitation due to Wereko's ethnic background and the risk that she would abscond to Ghana with their children. *Id.* ¶¶ 269–80. The court also barred Wereko from making a closing statement, and the court reporter omitted witnesses from the transcript. *Id.* In addition, the SAO stated that they would proceed with their petition after the court dealt with all other pleadings. *Id.* ¶¶ 271; 327.

On March 10, 2022, the court orally ruled, granting Potenza's motion to modify the Allocation Judgment based on the same alleged fabrications that led to the plenary order. *Id.* ¶ 283. The court stated that it had already ruled on Wereko's motion to modify or vacate the child support order and continued other child support pleadings. *Id.* ¶¶ 283–84. The court later denied Wereko's motion for a written order on the custody hearing and her motion to modify or vacate the child support order, and no written order on either has issued to date. *Id.* ¶ 280. According to Wereko, the SAO's petition is still pending and will remain so until the SAO receives a written order on her motion to modify or vacate the child support order. *Id.* ¶¶ 328–29.

*Second Federal Suit*

On April 29, 2022, Wereko brought this suit, seeking:

(1) "prospective declaratory relief" that she "has suffered from and continues to suffer from racial acts of terror and a conspiracy to interfere with her civil rights that deprives her of substantive due process rights to familial association, privacy, integrity, and autonomy" under the First, Fifth, and Fourteenth Amendments (Count I)

(2) "prospective declaratory relief" that she "has suffered from and continues to suffer from the conspiracy to intentionally interfere with her civil rights to deprive her of the merits of the foreign judgment and the agreed allocation judgment, protected under state and federal laws" (Count II)

(3) "prospective injunctive relief" to enjoin Defendants from "further racial acts of terror, under color of state law" and from "depriving [her] of the equal protection of the laws afforded to her by judgments protected under state and federal laws" (Count III)

(4) "prospective declaratory and injunctive relief" to enjoin Defendants from "further infringing on [her] protected parental rights for information concerning her minor children, as protected under federal and state laws" (Count IV)

(5) "prospective declaratory relief" that she "has suffered and continues to suffer from a conspiracy to interfere with her civil rights pursuant to the fraudulent and unconstitutional exercise of the state child support statute" and "injunctive relief" to enjoin Defendants from "further interference and unconstitutional deprivations under state law" (Count V); and

(6) compensatory damages in the amount of $500,000 for each year she has allegedly been "bound, tortured and terrorized in the state courts by defendants" and for attorneys' fees and costs incurred at trial (Count VI).

*Id.* ¶¶ 333, 341, 372, 384, 397, 412, 452, 453.

Wereko also requests "mandatory injunctions" requiring (1) Defendant Judge Rosen to enter and issue a written order for the concluded custody hearing (Counts III, V); and (2) Defendants Hannigan (Superintendent, Hawthorn School District #73), Martinez (Superintendent, Chicago Public Schools), and Yu (Director of Health

Information Management, NorthShore University Health Systems) to give her access to all of her children's school and health records (Count IV). *Id.* ¶¶ 384, 397, 412.

Defendants offer several grounds for dismissal. As a threshold matter, many of the Defendants argue that this Court lacks subject matter jurisdiction or should abstain from exercising it. Defendants alternatively contend that even if the case is properly in federal court, the Complaint fails to state a claim under Rule 12(b)(6).

## Legal Standard

When ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation omitted). The Court may also "take judicial notice of matters of public record, including court filings and documents from the ongoing state court proceedings incorporated into the federal complaint." *Woodard*, 997 F.3d at 717.

## Analysis

I.     Subject Matter Jurisdiction

Several Defendants argue that the Court lacks subject matter jurisdiction because of the domestic relations exception and the *Rooker-Feldman* doctrine.

A.  Domestic Relations Exception

The domestic relations exception to federal jurisdiction covers "a narrow range of domestic relations issues involving the granting of divorce, decrees of alimony, and

11

child custody orders." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 701–02 (1992)). The Seventh Circuit has explained that this "narrow range" includes only claims that "request direct entry of a child custody [or support] order." *Woodard*, 997 F.3d at 723. Wereko's first federal case fell within this exception because it sought to bar the enforcement of the plenary order and mandate the entry of a new custody order. *See Wereko*, 857 Fed. App'x at 251. Here, however, Wereko "seeks a judgment against defendants whose actions allegedly paved the way for the state court's orders." *See Woodard*, 997 F.3d at 723. She is not asking the Court to issue a child custody or child support order, but rather alleges that Defendants violated her constitutional rights throughout the state court proceedings. Therefore, the domestic relations exception does not divest this Court of jurisdiction over her suit.

### B. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine precludes federal jurisdiction "no matter how erroneous or unconstitutional the state court judgment may be" because the Supreme Court is the only federal court with jurisdiction to review a state court judgment. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000).

The Seventh Circuit has set forth a two-step analysis for determining whether the *Rooker-Feldman* doctrine bars jurisdiction:

> First, we consider whether a plaintiff's federal claims are "independent" or, instead, whether they "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019). If they are "independent" claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them. But if they "directly" challenge or are "inextricably intertwined" with a state-court judgment, then we move on to step two. At step two, we determine "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction.

*Andrade v. City of Hammond, Indiana*, 9 F.4th 947, 950 (7th Cir. 2021). For a claim to be "inextricably intertwined" with a state court judgment, "there must be no way for the injury complained of by the plaintiff to be separated from the state court judgment." *Id.* (citing *Jakupovic*, 850 F.3d at 903).

The *Rooker-Feldman* doctrine "applies to procedural state rulings as well as substantive ones." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016). And "interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*." *Bauer v. Koester*, 951 F.3d 863, 867 (7th Cir. 2020) (citation omitted). Moreover, a plaintiff "cannot get around *Rooker–Feldman* simply by couching [her] grievance as a constitutional claim." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008).

At the first step, the Court turns to the alleged injuries. Wereko asserts violations of her rights to familial association, privacy, autonomy, and integrity through "racial acts of terror." As far as the Court can tell, all of the "racial acts of

terror" are actions taken by Defendants in enforcing or acting pursuant to state court orders, such as the police visits, allegedly "kidnapping" her children from school, the "warrant to arrest" her, and her "incarceration." Complaint ¶ 338. She also asserts violations of her rights to equal protection of the laws through the refusal of Defendants to recognize the foreign judgment and Allocation Judgment and violations of her parental rights through her lack of access to her children's health and school records. She asserts further injuries through the exercise of the state child support statute and the withholding of a written order on custody, and finally asserts emotional harm and harm to her career, income, and reputation.

At first glance, her alleged injuries seem to flow from the state court's decisions on custody and child support and other parties' actions consistent with those orders. *See Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356, 362 (7th Cir. 2010) (holding that *Rooker-Feldman* applied to § 1983 claims against child representative based on biased advocacy because the alleged harms "flow[ed] directly from the fruit of [the defendant's] efforts: state-court custody orders favorable to [plaintiff's ex-spouse]"); *see also Johnson*, 551 F.3d at 568 ("[Plaintiff] is complaining because the defendants are following the circuit court's order."). To the extent that Wereko claims injuries from alleged misconduct that precipitated the state court's decisions, such as Defendants making false accusations about Wereko's conduct to the state court, that too would fall within the confines of *Rooker-Feldman. See Kelley v. Med-1 Solutions*, 548 F.3d 600, 605 (7th Cir. 2008) (*Rooker-Feldman* applied where plaintiff argued

14

that attorneys' fraudulent misrepresentations that led to an order, not the order, caused her injury).

The Seventh Circuit, however, has explained that "[t]he claim that a defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker-Feldman* doctrine." *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006) (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)). In *Loubser*, a *pro se* plaintiff brought a § 1983 suit alleging a yearslong conspiracy involving over 40 individuals, including state court judge, lawyers, court reporters, and others, to violate her due process and equal protection rights by corrupting divorce proceedings, which ended in a judgment that purportedly deprived her of property to which she was entitled. 440 F.3d at 440. The Seventh Circuit held that the district court erred by dismissing the case on *Rooker-Feldman* grounds because the plaintiff not only sought to modify the order allocating marital property but also sought "damages for the harassment to which the defendants allegedly subjected her enroute to the judgment." *Id.* at 442.

This case closely resembles *Loubser*. Wereko alleges a conspiracy among 34 Defendants to violate her civil rights at nearly every turn of her proceedings through several state courts. Defendants include state court judges at the trial court and appellate levels, attorneys, child representatives, law enforcement, school districts and health system executives, a court reporter, a court-appointed firm, an assistant Illinois attorney general, an assistant state's attorney, and HFS officials. And in addition to equitable remedies, she seeks damages "for each year of her life bound,

15

tortured and terrorized in the state courts by defendants conspiring to interfere with her civil rights[,]" citing harm to her career, employment prospects, and reputation. Complaint ¶ 452.

In short, Wereko's allegation of a "widespread conspiracy [that] undermined the entirety of the state-court proceedings," falls within the *Loubser* exception to *Rooker-Feldman*. *Cf. Bauer*, 951 F.3d at 867 (distinguishing case from *Loubser* because plaintiff "merely challenge[d] the state court's decisions regarding the supposedly forged exhibit and the citation to discover assets"); *see also Anderson v. Anderson*, 554 Fed. App'x 529, 530–31 (7th Cir. 2014) (applying exception where the plaintiff alleged fraud and collusion by his wife, her attorneys, and the state court judge in a divorce case); *Hadzi-Tanovic v. Johnson*, No. 20 C 03460, 2021 WL 5505541, at *4 (N.D. Ill. Nov. 24, 2021) (applying *Loubser* in holding that *Rooker-Feldman* doctrine did not apply where plaintiff alleged that the state court judge, guardian ad litem, and ex-spouse conspired to deprive her of her right to familial association). Wereko does not cite *Loubser*. But subject matter jurisdiction is in the Court's purview, and according to *Loubser*, *Rooker-Feldman* does not deprive the Court of jurisdiction over Wereko's claims.

II.    Abstention

Several Defendants argue in the alternative that this Court should abstain from exercising jurisdiction under *Younger* and *Woodard*.

A.    *Younger* Abstention Doctrine

*Younger* "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state proceedings." *Woodard*, 997 F.3d at 722. But it "applies in only three limited categories of cases . . . where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *Id*. "If one of these three types of proceedings is involved, then the court must consider three additional factors: whether the state proceeding is ongoing, involves important state interests, and provides an adequate opportunity to raise constitutional challenges." *Doe v. Lindell*, No. 22-1666, 2023 WL 196467, at \*2 (7th Cir. Jan. 17, 2023) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)). And if a case meets all three criteria, a federal court should abstain unless there are "extraordinary circumstances, such as bad faith, harassment, or a patently invalid state statute." *Id.*

*Woodard* made clear that *Younger* abstention is not an exact fit for a due process challenge to an ongoing family court custody dispute. 997 F.3d at 722. However, the Supreme Court has long recognized *Younger*'s application to civil contempt proceedings. *See Juidice v. Vail*, 430 U.S. 327, 334 (1977). And here, a few months after Wereko filed this suit, the state court declared her to be in indirect civil contempt for her failure to pay child support and issued a body attachment two months later. *See* R. 222 at 19; Case Information for Case Number 2016D009029, Online Case Search, Clerk of the Circuit Court of Cook County,

17

https://casesearch.cookcountyclerkofcourt.org/CivilCaseSearchAPI.aspx ("Cook County Electronic Docket for Case No. 2016D009029"). Several Defendants argue that the Court should abstain under *Younger* on that basis. *See, e.g.*, R. 222 at 7–8, 258 at 3.[3]

Wereko did not specifically challenge the contempt proceeding in her complaint, because it had not happened yet. But that does not automatically rule out *Younger* where, as here, the federal suit was in its early stages (only one Defendant had filed a motion to dismiss) when the contempt proceeding arose. *See Doe*, 2023 WL 196467, at *3 (affirming abstention under *Younger* in case alleging conspiracy to corrupt divorce and custody proceedings because when the contempt petition was filed, the federal case had not "progressed beyond the embryonic stage").

Here, that contempt proceeding appears to be ongoing. The state court docket indicates that the attachment order is outstanding. Cook County Electronic Docket for Case No. 2016D009029. Indeed, one of Wereko's primary complaints is the ongoing "harassment" she faces due to her child support obligations. *E.g.*, Complaint ¶ 407. Additionally, the contempt proceeding implicates important state interests. "Proceedings related to granting a divorce, child support, or spousal maintenance are areas of 'significant state concern from which the federal judiciary should generally abstain under *Younger*.'" *Ehlers v. Gallegos*, No. 16 C 5092, 2020 WL 43010, at *9

---

[3] Wereko asserts that this Court cannot consider the contempt order because it is beyond the four corners of her complaint. *See* R. 238 at 9–10. But in evaluating a Rule 12(b)(1) motion, this Court may "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long*, 182 F.3d at 554.

(N.D. Ill Jan. 3, 2020) (quoting *Parejko v. Dunn Cty. Circuit Court*, 209 Fed. App'x 545, 546 (7th Cir. 2006)). By seeking equitable relief concerning the ongoing enforcement of the child support order, a federal ruling risks interference with the contempt proceeding.

Finally, Wereko has an adequate opportunity to raise constitutional challenges. She could seek appellate review of the contempt proceedings, contempt order, or Defendant Rosen's ruling denying her motion for a written order on her motion to modify or vacate child support. In fact, Wereko appealed the child support order, though it is unclear whether she raised constitutional challenges in the course of that appeal. "Subsequent judicial review is a sufficient opportunity[.]" *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998). The state court's doors were open to Wereko's constitutional claims and remain so today.

Wereko's argument that exceptional circumstances of bad faith and harassment make *Younger* abstention inappropriate is unavailing. She has not "alleged specific facts to support [those] inferences[.]" *Crenshaw v. Supreme Ct. of Indiana*, 170 F.3d 725, 729 (7th Cir. 1999) (explaining that a plaintiff "must present more than mere allegations and conclusions"). Her allegations of gender-, race-, and ethnic origin-based animus by those involved in the child support proceedings are nonspecific and conclusory. Likewise, her allegations that the presiding state court judge, Defendant Rosen, is biased against her are "unadorned speculation." *Doe v. Lake Cnty., Ill.*, No. 21-CV-3262, 2022 WL 874651, at *8 (N.D. Ill. Mar. 23, 2022), *aff'd sub nom. Doe*, 2023 WL 196467. And her allegations of "harassment" amount to

complaints about the enforcement of what she deems "invalid" or "fraudulent" state court orders. At bottom, she has alleged a series of unfavorable rulings. And those, standing alone, are insufficient. *Doe*, 2023 WL 196467, at *3.

Accordingly, given the ongoing contempt proceeding, *Younger* requires this Court to abstain as to Wereko's claims for equitable relief concerning the enforcement of her child support obligations.

III.    General Abstention Principles

The Seventh Circuit has recognized, in the context of a domestic relations proceeding, that even where other abstention doctrines do not perfectly fit the case, "[t]o insist on literal perfection . . . risks a serious federalism infringement." *Woodard*, 997 F.3d at 723.

In *Woodard*, the Seventh Circuit held that abstention was proper where the plaintiff brought procedural and substantive due process claims arising out of an ongoing child custody battle in state court. *Id.* Even though the plaintiff did not ask for the entry of a child custody order, "the entire design of his federal action [was] to receive a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings," which was reinforced by his requests for declaratory and injunctive relief. *Id.* The suit thus "threaten[ed] interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Id.* Moreover, dismissal, rather than a stay, was appropriate because the state

20

court's oversight of child custody matters would continue until the children turned 18, and the Seventh Circuit was "unwilling to require th[e] case to sit on the district court's docket for more than a decade." *Id.* at 725.

The same is true here. It is difficult to see how the broad, prospective equitable relief Wereko requests would serve any purpose other than to influence the underlying custody and child support proceedings. *See id.* ("[G]ranting declaratory or injunctive relief would provide [the plaintiff] with an offensive tool to take to state court to challenge that judge's orders."); *Doe*, 2023 WL 196467, at *3 (noting that plaintiff alleging a conspiracy to "defraud or corrupt the state judicial proceedings" seeks to "unravel the state judge's custodial and visitation rulings").

Further, by naming the judges as defendants and asking this Court to order a state court judge to enter a written order, principles of comity apply with even greater force than in *Woodard*. *See Hadzi*, 2021 WL 5505541, at *6 (explaining that the case for abstention was even stronger than in *Woodard* because "by naming the judge as a defendant, Hadzi-Tanovic presents a direct challenge to the legitimacy of the state court's actions"); *see also Bush v. Carr*, No. 20 C 6634, 2021 WL 4552555, at *1 (N.D. Ill. Oct. 5, 2021) (explaining that abstention was "surely [] warranted here, where Bush sues [the judge] himself and asks this court to directly decide the constitutionality of the judge's rulings and actions").

The reasons for abstention equally apply to Wereko's request for damages, which inevitably requires the establishment of a constitutional violation. That violation could be used as a tool to interfere with the ongoing state court proceedings

on custody and child support. *See Woodard*, 997 F.3d at 724; *Doe*, 2023 WL 196467, at *4; *Hadzi*, 2021 WL 5505541, at *7.

Wereko contends that *Woodard* is inapposite because the state court proceedings are not ongoing. While there is no pending appeal like there was in *Woodard*, the state court's oversight of custody matters will continue until her children turn 18. *See Woodard*, 997 F.3d at 725. And as previously discussed, the enforcement and oversight of child support is indisputably ongoing. Indeed, it is the ongoing nature of the proceedings that underpins her request for prospective relief.

Wereko's complaint makes plain that she arrives at federal court seeking an "offensive tool" to "challenge judge's orders" regarding custody and child support. As in *Woodard*, "federal adjudication of [Wereko's] claims would reflect the lack of respect for the state's ability to resolve the issues properly before its courts." *Id.* at 724 (citing *SKS & Assocs. Inc. v. Dart*, 619 F.3d 674 678–80 (7th Cir. 2010)). Principles of federalism and comity require this Court to "stay on the sidelines," *id.* at 723, and decline to exercise jurisdiction.

Further, consistent with circuit precedent, the Court finds that dismissal rather than a stay is appropriate. The issues of child custody and child support will remain subject to state court oversight until at least 2028. *See In re Marriage*, 2020 IL App (1st) 192454, ¶ 3; Complaint ¶ 42. It is not practicable for this case to linger on this Court's docket for the next five years. *Woodard*, 997 F.3d at 725; *see also Doe*, 2023 WL 196467, at *4.

IV.    Other Grounds

22

In concluding that abstention is the proper course, the Court does not reach the merits of Defendants' other grounds for dismissal, including immunity, statutes of limitations, and the plausibility of Wereko's claims.

## Conclusion

For the foregoing reasons, the Court abstains from exercising jurisdiction over Wereko's claims. Her complaint is dismissed without prejudice as to all Defendants. This ruling is not intended to prevent Wereko from asserting any of her claims in state court, and the Court expresses no opinion on the merits of such claims. The motions to dismiss filed by Defendants Hughes, Auslander, Meyers, Hannigan, Schlesinger, Eagleson, Falen, Pucinski, Coghlan, Lavin, Salvi, Dickler, Haracz, Rosen, Trew, Vega, Lipinski, Ingersoll, Martinez, Bersson, Doman, Weiss-Kunz, Yu, Altman, Trowbridge, and Safe Travels are granted on abstention grounds and denied as moot on all other grounds. The motions to dismiss filed by Defendants Caskey, Caselli, Boyd, Reid, Ullman, Platt, and Rice are denied as moot. Additionally, because the basis for dismissal applies equally to claims against Defendant Tania Dimitrova, she need not file a separate motion to dismiss.

ENTERED:

_Thomas M Durkin_

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: February 27, 2023

23